**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| CITY OF SOUTH MIAMI; FLORIDA IMMIGRANT COALITION, INC.; THE FARMWORKER ASSOCIATION OF FLORIDA INC.; FAMILY ACTION NETWORK MOVEMENT, INC.; QLATINX; WECOUNT!, INC.; WESTMINSTER PRESBYTERIAN CHURCH UNITED OF GAINESVILLE, FLORIDA INC.; AMERICANS FOR IMMIGRANT JUSTICE, INC.; THE GUATEMALAN-MAYA CENTER, INC.; AND HOPE COMMUNITY CENTER, INC., | Civil Action File No. |
| Plaintiffs, | 1:19-cv-22927 |
| v. | |
| RON DESANTIS, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF FLORIDA AND ASHLEY MOODY, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF FLORIDA, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

I.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.................................... 1

  A.  SECTIONS 908.105(1), 908.104(4), AND 908.106 ARE PREEMPTED BY FEDERAL LAW ........ 1
    1.   The INA Occupies the Fields of "When and By Whom an Individual Can Be Arrested and Detained for a Civil Immigration Violation" and "How State and Local Law Enforcement are Authorized to Carry Out the Functions of Federal Immigration Agents.".. 2

    2.   Section 908.105(1), Which Mandates Arrests for Civil Immigration Violations, is Preempted. ............................................................................................................... 6
      a.   Section 908.105(1) is Field Preempted .................................................................. 6
      b.   Section 908.105(1) is Conflict Preempted ............................................................ 6

    3.   Section 908.104(4), Which Allows for Transport Across State Lines, Is Preempted. ... 8
      a.   Section 908.104(4) is Field Preempted .................................................................. 8
      b.   Section 908.104(4) is Conflict Preempted ............................................................ 8

    4.   Section 908.106, Which Requires Contracts with the Federal Government for Reimbursement, Conflicts With Federal Law. ................................................................ 9

  B.  SECTIONS 908.104(1), 908.103, AND 908.102(6) ARE UNCONSTITUTIONALLY VAGUE..... 10
    1.   The Term "Best Efforts" in Section 908.104(1) is Unconstitutionally Vague. ............ 10
      a.   Section 908.104(1) Fails to Provide People of Ordinary Intelligence a Reasonable Opportunity to Understand What Conduct it Prohibits.................................................... 10

      b.   Section 908.104(1) Encourages Arbitrary and Discriminatory Enforcement........... 12

      c.   The Vagueness of the "Best Efforts" Clause of Section 908.104(1) Is Exacerbated by the Bill Title. ............................................................................................................. 13

    2.   The Term "Impede" in Section 908.102(6) and, by Reference, Section 908.103 is Unconstitutionally Vague. ............................................................................................. 14

II.  PLAINTIFFS WILL SUFFER IRREPARABLE HARM IF SB 168 IS NOT PRELIMINARILY ENJOINED ................................................................................. 15

III. THE BALANCE OF HARMS STRONGLY FAVORS THE ISSUANCE OF AN INJUNCTION ................................................................................................................ 17

IV.  A PRELIMINARY INJUNCTION IS IN THE PUBLIC INTEREST .......................... 18

V.   PLAINTIFFS SHOULD NOT BE REQUIRED TO POST A BOND............................ 18

## I.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

Plaintiffs seek to enjoin sections 908.102(6), 908.103, 908.104(1), 908.104(4), 908.105(1), and 908.106 of Chapter 908 of the Florida Statutes ("SB 168") on constitutional grounds. Plaintiffs further seek to enjoin SB 168 in its entirety because SB 168's legislative intent would not be accomplished with the remaining incomplete sections. *See Wollschlaeger v. Governor, Fla.*, 848 F.3d 1298, 1317–1318 (11th Cir. 2017); *State v. Catalano*, 104 So.3d 1069, 1080–81 (Fla. 2012) ("the key determination is whether the overall legislative intent is still accomplished without the invalid provisions"); *Jones v. Smith*, 474 F. Supp. 1160, 1169 (S.D. Fla. 1979).

### A.  Sections 908.105(1), 908.104(4), and 908.106 Are Preempted by Federal Law

Sections 908.105(1), 908.104(4), and 908.106 of SB 168 are preempted by federal immigration law. Under the Supremacy Clause of the U.S. Constitution, federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, anything in the Constitution or Laws of any state to the Contrary notwithstanding." Art. VI, cl. 2. It is "[a] fundamental principle of the Constitution . . .  that Congress has the power to preempt state law." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000) (citations omitted). The Supreme Court has found that Congress has the power to preempt state law attempting to regulate in the area of immigration. *Arizona v. United States,* 567 U.S. 387, 399 (2012). Preemption "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977) (citations omitted).

SB 168 contains multiple provisions that are implicitly preempted on both field and conflict preemption grounds. A state law is preempted "[w]hen Congress intends federal law to 'occupy the field.'" *Crosby*, 530 U.S. at 372. "Where Congress occupies an entire field ... even complementary state regulation is impermissible… [T]he basic premise of field pre-emption [is]

that States may not enter, in any respect, an area the Federal Government has reserved for itself."

*Arizona*, 567 U.S. at 401-2.  Sections 908.105(1) and 908.104(4) of SB 168 are unlawful under a

field preemption theory.

Preemption also occurs when "state laws … conflict with federal law. Conflict preemption

occurs "when it is physically impossible to comply with both the federal and the state laws" or

"when the state law stands as an obstacle to the objective of the federal law." *Florida State*

*Conference of N.A.A.C.P. v. Browning,* 522 F.3d 1153, 1167 (11th Cir. 2008); *see also Utah*

*Coalition de la Raza v. Herbert*, 26 F.Supp.3d 1125, 1146 (D. Utah 2014) (enjoining preempted

state law requiring arrests on the basis of immigration detainers or notice of action); *Buquer v. City*

*of Indianapolis*, 797 F. Supp. 2d 905, 919 (S.D. Ind. 2011) (same) (citing *Fid. Fed. Sav. & Loan*

*Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982) (internal quotations and citations omitted)) ;

*Buquer v. City of Indianapolis*, 2013 WL 1332158 (post-*Arizona v. U.S.* permanent injunction

reaching same result as 2011 decision). Sections 908.105(1), 908.104(4), and 908.106 of SB 168

are conflict preempted.

### 1. The INA Occupies the Fields of "When and By Whom an Individual Can Be Arrested and Detained for a Civil Immigration Violation" and "How State and Local Law Enforcement are Authorized to Carry Out the Functions of Federal Immigration Agents."

Congress, through its enactment of the Immigration and Nationality Act ("INA"), has

chosen to occupy the fields of 1) when and by whom an individual can be arrested and detained

for a civil immigration violation; and 2) how state and local law enforcement may be authorized

to carry out the functions of federal immigration agents. 8 U.S.C. § 1101 *et seq.* As explained

below, the INA provides three, limited circumstances under which state or local law enforcement

are permitted to make a civil immigration arrest and detention.

Field preemption "occurs when a congressional legislative scheme is 'so pervasive as to

make the reasonable inference that Congress left no room for the states to supplement it.'" *Georgia Latino All. for Human Rights v. Governor of Georgia*, 691 F.3d 1250, 1262 (11th Cir. 2012) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230 (1947)). Field preemption also occurs where there is a "federal interest . . . so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Arizona,* 567 U.S. at 399 (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230 (1947)) (internal quotations omitted); *see also English v. Gen. Elec. Co.,* 496 U.S. 72, 79 (1990)). To determine the boundaries that Congress sought to occupy within the field, courts look to "'the federal statute itself, read in the light of its constitutional setting and its legislative history.'" *Id.* at 1262 (citing *De Canas v. Bica,* 424 U.S. 351, 360 n. 8 (1976) (quoting *Hines v. Davidowitz,* 312 U.S. 52, 78–79 (1941) (Stone, J., dissenting)). When determining whether Congress has preempted a field, "'the purpose of Congress is the ultimate touchstone in every preemption case.'" *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (quoting *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485 (1996)).

The INA has established a "'comprehensive federal statutory scheme for regulation of immigration and naturalization' and set 'the terms and conditions of admission to the country and the subsequent treatment of aliens lawfully in the country.'" *Chamber of Commerce of U.S. v. Whiting,* 563 U.S. 582, 587 (2011) (quoting *De Canas v. Bica,* 424 U.S. 351, 353, 359 (1976)). The INA grants authority to federal agencies, including Immigration and Customs Enforcement ("ICE"), the Department of Homeland Security ("DHS"), the Department of Justice ("DOJ"), and the Department of State, to administer and enforce immigration law.

Congress' "comprehensive framework" dictates who can perform which immigration enforcement functions and under which circumstances. *Georgia Latino,* 691 F.3d at 1263-64; *see Arizona*, 567 U.S. at 407-08 ("The federal statutory structure instructs when it is appropriate to

arrest an alien during the removal process."). The power to make an arrest on the basis of a civil immigration violation, as codified in 8 U.S.C. §§ 1226, 1357(a), is chief among these functions and is reserved for trained, federal immigration officers. *See Arizona*, 367 U.S. at 407-08.[1] Similarly, the power to transport individuals across state lines after an arrest is another explicit power exclusive to trained, federal immigration agents. 8 C.F.R. § 287.5(c)(6); *see* 8 U.S.C. § 1357(g)(1).

"Federal law specifies limited circumstances in which state officers may perform the functions of an immigration officer." *Arizona,* 567 U.S. at 408. Congress has enacted only three, limited circumstances when state or local policy are permitted to make a civil immigration arrests and detention. *Id.* (listing 8 U.S.C. §§ 1357(g), 1103(a)(10), 1252c).[2] Under the first exception, 8 U.S.C. § 1357(g)(1), state and local governments can apply for specified officers to be trained and deputized as immigration agents authorized to make civil immigration arrests and to detain and transport "aliens across state lines to detention centers." These are known as "287(g) Agreements."

The second exception, 8 U.S.C. § 1103(a)(10), permits the Attorney General to delegate enforcement authority to local law enforcement in the case of a mass immigration influx, but only "with the consent of the head of the department, agency, or establishment under whose jurisdiction

---

[1] Consistent with the statute, the immigration regulations list the *federal* officials authorized to make warrantless arrests and arrests based on warrants. 8 C.F.R. §§ 287.5(c), 287.5(e)(3). As the Supreme Court held in *Arizona v. United States*, states and localities lack inherent authority to enforce civil immigration law and therefore must be authorized by federal law to make arrests and take custody of someone for the purpose of transportation. 567 U.S. 387 (2012). "Courts 'have universally ... interpreted *Arizona v. United States* as precluding local law enforcement officers from arresting individuals solely based on known or suspected civil immigration violations.'" *Roy v. County of Los Angeles,* 2018 WL 914773, at *23 (C.D. Cal. Feb. 7, 2018), *reconsideration denied,* 2018 WL 3439168 (C.D. Cal. July 11, 2018); *see also Melendres v. Arpaio*, 695 F.3d 990, 1000–01 (9th Cir. 2012)*.*

[2] *Arizona* also references 8 U.S.C. § 1324(c), which provides authority for certain criminal immigration arrests, which are not at issue in this case. 367 U.S. at 408.

the individual is serving."[3]  No such authorization has been issued to state or local law enforcement in Florida.

The third exception, 8 U.S.C. § 1252c(a), grants authority to state and local law enforcement to make civil immigration arrests of 1) convicted felons, 2) who were deported after the felony conviction, and 3) who illegally reentered the United States. But arrests under this exception can occur only "after confirmation from the Immigration and Naturalization Service of the status of such individual."

In enacting this statutory scheme, Congress "has clearly expressed more than a 'peripheral concern'" with when and by whom an individual can be arrested and detained for a civil immigration violation and how state and local law enforcement may be authorized to carry out the functions of federal immigration agents. *Georgia Latino,* 691 F.3d at 1264 (citing *De Canas,* 424 U.S. at 360–61)). Absent the specific authorizations under the INA, state and local law enforcement have *no* authority to carry out the arrest or transport of people suspected of a civil immigration violation. Because the INA leaves no room for additional pathways for local and state law enforcement to make immigration arrests, Florida has no power to create its own statutory scheme that dictates when state and local officers can arrest and transport for civil immigration purposes. "Congress [has] not sanctioned concurrent state legislation "on the subject covered by the challenged state law," *Id.* at 1265.

---

[3] Like 287(g) agreements, delegation of immigration authorities under § 1103(a)(10) to local law enforcement requires a written agreement, designation of specific officers to perform the immigration functions, the requisite training, amongst other requirements. 28 C.F.R. § 65.84.

## 2.   Section 908.105(1), Which Mandates Arrests for Civil Immigration Violations, is Preempted.

Section 908.105(1) requires that, upon receipt of an immigration detainer request,[4] state and local law enforcement arrest individuals once the basis for their criminal custody has come to an end. Prolonging the detention of a person after criminal custody expires constitutes a new arrest that must be authorized by law. *See Morales v. Chadbourne*, 793 F.3d 208, 217 n.3 (1st Cir. 2015).

### a.   Section 908.105(1) is Field Preempted

As discussed above, the INA occupies the fields of when and by whom an individual can be subjected to a civil immigration arrest and detention and how state and local law enforcement are authorized to carry out the functions of federal immigration agents, delineating only three circumstances under which state and local law enforcement are authorized to carry out the functions of federal immigration agents. Because section 908.105(1) authorizes all Florida law enforcement to make civil immigration arrests, it operates in these fields. To make an immigration arrest, even at the request of immigration authorities, state and local law enforcement must have proper authorization under the INA. SB 168 cannot confer this authority.

### b.   Section 908.105(1) is Conflict Preempted

Because Section 908.105(1) poses an obstacle to the system of enforcement authorization that Congress designed, it is also conflict preempted. Through 287(g) Agreements, Congress has

---

[4] Immigration detainer requests are not judicial warrants, but voluntary requests that the law enforcement agency "advise [DHS], prior to release of the alien, in order for [DHS] to arrange to assume custody." 8 C.F.R. § 287.7(a). ICE issues immigration detainer requests based solely on database matches with fingerprints submitted by state and local law enforcement in the normal course of booking an arrested individual. However, these databases are unreliable and often lead to the wrongful detention. An immigration detainer asks state or local law enforcement to hold an individual for up to 48 hours after there is no longer any basis to hold the person under state law— because the person posts bond, charges are dropped, or they otherwise resolve their state charges. The detainer request is conveyed through a check-box form that ICE fills out remotely and emails.

set up a scheme by which local law enforcement can have broad immigration authority. Section 908.105(1) circumvents that process by authorizing *all* law enforcement in Florida to make arrests irrespective of a 287(g) Agreement, in conflict with the INA. Moreover, Section 908.105(1) mandates that state and local law enforcement exercise broader power to make warrantless arrests than federal immigration agents themselves have under 8 U.S.C. §§ 1252(c) & 1357(a)(2). Under 8 U.S.C. § 1357(a)(2), a federal officer can only make a warrantless arrest if there is a likelihood of escape before a warrant can be obtained for the arrest. In contrast, Section 908.105(1)'s mandate does not require any flight risk assessment.[5] *See Buquer*, 797 F. Supp 2d at 920 (enjoining as preempted a state law which "in fact, authorizes a much broader warrantless arrest power than even federal officers are given under federal law." (internal citations omitted)); *Buquer v. City of Indianapolis*, 2013 WL 1332158 (same).

Section 908.105(1) does not allow officers to decline a detainer when evidence of U.S. citizenship or legal permanent residency is presented. Nor does SB 168 limit its mandate to actions consistent with federal law or civil rights protections. In *Georgia Latino All. for Human Rights*, the Eleventh Circuit relied on these protections in a Georgia statute to reject preemption claims. 691 F.3d at 1268 (finding statute to have the "same three built-in limitations as the Arizona statute" that was not preempted). Mere presence inside the United States without federal immigration status

---

[5] "ICE's statutory authority to make warrantless arrests, including by issuing immigration detainers, is bestowed and limited by 8 U.S.C. § 1357(a)(2), which permits ICE to dispense with a warrant only when one cannot be obtained before the subject will likely escape. ... Moreover, Defendants acknowledge that, "[a]s part of the process of issuing immigration detainers, ICE's policies and practices do not require any individualized determination that a class member is 'likely to escape before a warrant can be obtained for his arrest.'" ... Defendants further admit that, in fact, 'ICE agents *do not make any determination at all* that the class member is 'likely to escape before a warrant can be obtained for his arrest.'" *Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1005–1006 (N.D. Ill. 2016).

is not a criminal offense. Rather, it is a civil violation under federal immigration law. The Texas statute at issue in *El Cenizo*, unlike the Florida statute, also made a clear exception for instances where proof of citizenship or lawful immigration status were present. 890 F.3d 164 (5th Cir. 2018). SB 168 lacks any safeguards for U.S. citizens or others who can provide documentation of legal presence. Nor does it limit its mandate to actions consistent with federal law or civil rights protections.[6]

### 3.   Section 908.104(4), Which Allows for Transport Across State Lines, Is Preempted.

#### a.   Section 908.104(4) is Field Preempted

As discussed above, the INA occupies the fields of when and by whom an individual can be subjected to a civil immigration arrest and detention; and how state and local law enforcement are authorized to carry out the functions of federal immigration agents, including transportation across state lines. Section 908.104(4) authorizes state and local correctional officers to transport civil immigration arrestees across state lines through state judicial authorization. Under 8 U.S.C. § 1357(g)(1), local and state officials can only carry out the "the transportation of such aliens across State lines to detention centers" pursuant to a 287(g) Agreement. Because Section 908.104(4) authorizes transportation absent a 287(g) Agreement, it regulates a preempted field.

#### b.   Section 908.104(4) is Conflict Preempted

Section 908.104(4) is also conflict preempted because it interferes with federal control of the transport of immigration arrestees and the use of immigration detention space. The provision authorizes state and local law enforcement to transport people and drop them off at federal detention centers, including across state lines with state judicial authorization. While section

---

[6] SB 168 provides a nominal prohibition on discrimination. *See* 908.109

8

908.104(4) only applies to the transportation of people with detainers, it does not require federal authorization of transportation. Because only state authorization is required, local law enforcement can leave people at the doorstep of immigration authorities, even over the objection of ICE. As the Supreme Court has recognized, "[a] principal feature of the removal system is the broad discretion exercised by immigration officials." *Arizona,* 567 U.S. at 396. This discretion is necessary because it "involve[s] policy choices that bear on this Nation's international relations." *Id.* Whether or not to take a person into custody and the location of detention are decisions entrusted only to federal immigration authorities. Because Section 908.104(4) interferes with these decisions and the operation of ICE's transportation and detention duties, it poses an obstacle to federal law and is preempted.

### 4.   Section 908.106, Which Requires Contracts with the Federal Government for Reimbursement, Conflicts With Federal Law.

Section 908.106, entitled "Reimbursement of Costs," states that county correctional facilities "shall enter into an agreement … for the payment of the costs of housing persons who are the subject of immigration detainers." This section is preempted because it conflicts with federal law. By requiring reimbursement, it mandates that the federal government enter into contracts with every Florida law enforcement agency for detention. This mandate poses an obstacle to the federal scheme, which grants the federal government discretion regarding detention contracts. *See* 8 U.S.C. § 1103(a)(11).  Moreover, 8 U.S.C. § 1357(g)(1) states that state and local law enforcement officers authorized under a 287(g) Agreement to carry out the functions of federal immigration agents must do so "at the expense of the State or political subdivision." Section 908.106 is thus an obstacle to fulfilling Congress' intent to not be liable for costs associated with 287(g) Agreements.

**B.   Sections 908.104(1), 908.103, and 908.102(6) Are Unconstitutionally Vague.**

A law "can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Wollschlaeger*, 848 F.3d at 1319–1320 (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000) (citing *City of Chicago v. Morales*, 527 U.S. 41, 56–57 (1999))). Provisions of SB 168 are unconstitutionally vague on both accounts.

**1.   The Term "Best Efforts" in Section 908.104(1) is Unconstitutionally Vague.**

Under SB 168, law enforcement agencies are required to "use *best efforts* to support the enforcement of federal immigration law." 908.104(1) (emphasis added). In the context of contracts, a much lower stakes arena, "courts have found 'best efforts' clauses to be void and unenforceable for vagueness unless 'there are objective criteria present by which to judge whether the proper effort has been made.'" *Gates v. Johnson Worldwide Associates, Inc.*, 00 C 7612, 2002 WL 663586, at *4 (N.D. Ill. Mar. 28, 2002) (internal citations omitted); *see also Kraftco Corp. v. Kolbus*, 274 N.E.2d 153, 156 (Ill. App. Ct. 1971) ("The mere allegation of best efforts is too indefinite and uncertain to be an enforceable standard"); *Rahal Letterman Racing, LLC v. Scott Sharp Sports, LLC,* 2008 WL 11407196, at *9 (S.D. Fla. Feb. 12, 2008) (the "best efforts standard is too vague by which to accurately judge either side"); *Chen v. Cayman Arts, Inc.*, 2011 WL 3903158, at *11 (S.D. Fla. Sept. 6, 2011). No such criteria or further guidance is provided in SB 168.

      **a.   Section 908.104(1) Fails to Provide People of Ordinary Intelligence a Reasonable Opportunity to Understand What Conduct it Prohibits**

          **i.   Law Enforcement**

Law enforcement agencies cannot interpret with any certainty what "best efforts" require or prohibit. *See* Ex. 1, Philip Stoddard Decl. ¶¶ 9-12, 22-23. It is far from clear what it takes for agencies to "use best efforts to support the enforcement of federal immigration law." For example, a police officer who focuses on a murder investigation, neighborhood outreach, or parking enforcement rather than immigration violations has no way of knowing if they are in violation of SB 168. Police departments lack clarity about whether a departmental custom of prioritizing criminal investigations over immigration work violates SB 168. *See* Ex. 1, ¶¶ 13, 14, 18.

Section 908.104(1) places law enforcement in a bind. On the one hand, when sheriffs and frontline officers decide that "best efforts" does *not* include a particular action, policy or custom, they face an enforcement action by Defendants and threat of suspension from office. On the other, when they engage in immigration enforcement, they erode public trust, violate oaths, and expose themselves to litigation. For example, law enforcement agencies that permit deputies to participate in ICE actions only after training, or only with prior approval and under a supervisor's review, may run afoul of the statute's "best efforts" clause. Officers who decline to carry out the functions of immigration agents in hurricane shelters, hospitals, schools, places of worship, colleges, court houses, or homeless shelters, may also violate the law.

### ii.   Individuals

This lack of clarity also fails to provide everyday Floridians a reasonable opportunity to understand what conduct is prohibited and enforceable by their local police department. *See* Ex. 2, Maria Rodriguez Decl. ¶¶ 6-8, 11; Ex. 3, Antonio Tovar Decl. ¶¶ 6, 10; Ex. 4, Marleine Bastien Decl. ¶ 21; Ex. 5, Frank O'Loughlin Decl. ¶¶ 8-9; Ex. 6, Christopher J. Cuevas Decl. ¶¶ 6, 8; Ex. 7, Jonathan Fried Decl. ¶ 14; Ex. 8, Reverend Larry Green Decl. ¶ 9; Ex. 9, Cheryl Little Decl. ¶¶ 6, 13; Ex. 10, Ann Kendrick Decl. ¶ 13.

### b.   Section 908.104(1) Encourages Arbitrary and Discriminatory Enforcement

Section 908.104(1)'s "best efforts" clause fails to set out the standard of conduct that is required of law enforcement. A "law is impermissibly vague if it . . . does not provide sufficiently explicit standards for those who will apply it, thereby encouraging arbitrary and discriminatory enforcements." *Smith v. Avino*, 866 F. Supp. 1399, 1405 (S.D. Fla. 1994) (internal citations omitted).

### i.   Law Enforcement

By failing to provide a reasonably clear standard for prohibited conduct, SB 168 opens the door to arbitrary enforcement and enforcement based on invidious or partisan political grounds. Law enforcement will face arbitrary and discriminatory enforcement from Defendants. Because of 908.104(1)'s vague provisions and harsh penalties, law enforcement officials, and the government officials under which they work, will risk suspension by the Governor. *See* Ex. 1, ¶¶ 15, 26, and 27.

### ii.   Individuals

With sixty-seven counties, hundreds of local departments, and thousands of officers all trying to divine the meaning of "best efforts," arbitrary and inconsistent enforcement is inevitable. *See* Ex. 1, ¶¶ 9, 11-12; Ex. 2, ¶¶ 5, 11; Ex. 3, ¶¶ 7, 10, 12; Ex. 4, ¶ 21; Ex. 5, ¶ 12; Ex. 6, ¶ 15; Ex. 7, ¶ 17; Ex. 8, ¶ 10. This patchwork of enforcement will result in arbitrary, unauthorized, and unlawful enforcement of immigration laws against the public. Given the high stakes, some agencies and officers will interpret this mandate to mean that they should question every immigrant, or person who appears to be an immigrant, about their immigration status. Anyone

within Florida's large immigrant community,[7] and anyone perceived to be a member of this community, is at risk of profiling and harm due to the vague mandate that law enforcement use their "best efforts" in the enforcement of federal immigration law. Plaintiff organizations' members will become the victims of arbitrary and unlawful immigration stops, arrests, and detentions. *See* Ex. 2, ¶ 5; Ex. 3, ¶¶ 6, 10- 12; Ex. 4, ¶¶ 22, 24; Ex. 5, ¶¶ 10-11; Ex. 6, ¶¶ 15-16; Ex. 7, ¶ 17.

> ### c.    The Vagueness of the "Best Efforts" Clause of Section 908.104(1) Is Exacerbated by the Bill Title.

It is unclear whether the "best efforts" mandate of Section 908.104(1) is directed towards state entities, local governmental entities, and law enforcement agencies, or just towards law enforcement agencies.   The Bill Title states: "An act relating to federal immigration enforcement … requiring state *entities*, local governmental *entities*, and law enforcement *agencies* to use best efforts to support the enforcement of federal immigration law." (emphasis added). Section 908.104(1) is ostensibly limited to law enforcement agencies, but goes on, however, to state that "[t]his subsection applies to an official, representative, agent, or employee of the *entity* or *agency*…". (emphasis added). In SB 168, the word "entity" is only used when discussing a state

---

[7] Florida has the fourth-largest foreign-born population in the United States. *See* Jynnah Radford and Abby Budiman, "Facts on U.S. Immigrants, 2016," Pew Research Center (Sept. 24, 2018), http://www.pewhispanic.org/2018/09/14/facts-on-u-s-immigrants-current-data/;
In City of South Miami alone, 43.1% of the City identifies as Latino, 17.8% as Black, and 4.8% identifies as Asian. (Ex. 1 at ¶ 4). More than 4.3 million foreign-born people live in Florida, and they make up nearly 21% of the state's total population. *See* Migration Policy Institute, "Florida," https://www.migrationpolicy.org/data/state-profiles/state/demographics/FL (last accessed July 14, 2019). Over half of Florida immigrants are naturalized U.S. citizens. *See* American Immigration Council, "Fact Sheet: Immigrants in Florida" (Oct. 4, 2017), https://www.americanimmigrationcouncil.org/research/immigrants-florida.   An additional 2.5 million people in Florida—one in eight Floridians, or 12.5% of the population—is a native-born American with at least one immigrant parent. *Id*. In all, one in three Floridians is an immigrant or member of an immigrant family. *Id.*

or local governmental "entity." Law enforcement is referred to only as an "agency." Confusion caused by this vague language will result in arbitrary enforcement against and by local government entities, who are not equipped, authorized, or even interested in enforcing federal immigration law. *See* Ex. 1, ¶ 9.

The lack of clarity around these terms exacerbates the vagueness of the "best efforts" mandate. *See Johnson v. United States*, 135 S. Ct. 2551, 2560 (2015) ("Each of the uncertainties in the residual clause may be tolerable in isolation, but their sum makes a task for us which at best could be only guesswork.") (citation and quotes omitted); *Int'l Soc'y for Krishna Consciousness*, 601 F.2d at 832 (holding that "hamper or impede" was vague in the context of multiple additive terms); *Rahal Letterman Racing, LLC,* 2008 WL 11407196 at *9 (quoting *First Nat. Bank of Lake Park v. Gay*, 694 So.2d 784, 788 (Fla. 4th DCA 1997)) ("The definition of 'best efforts' may vary depending upon the factual circumstances surrounding the transaction and intent of the parties in entering into the transaction.").

### 2. The Term "Impede" in Section 908.102(6) and, by Reference, Section 908.103 are Unconstitutionally Vague.

Like "best efforts," the term "impede" is impermissibly vague because it does not convey what conduct it prohibits. SB 168 forbids a "state entity, law enforcement agency, or local governmental entity" from adopting "a sanctuary policy." § 908.103. Under the definition of a "sanctuary policy," state and local government entities cannot adopt or allow a "custom" that "prohibits[] or *impedes* a law enforcement agency from complying with 8 U.S.C. § 1373."[8] §

---

[8] 8 U.S.C. § 1373 deals with communication between state and local governments and ICE regarding the immigration or citizenship status of individuals. Three federal district courts have found 8 U.S.C. § 1373 unconstitutional under the Tenth Amendment, and another characterized it as "highly suspect." *See City and County of San Francisco v. Sessions*, 372 F. Supp. 3d 928 (N.D. Cal. Mar. 04, 2019); *City of Chicago v. Sessions*, 321 F. Supp. 3d 855, 872 (N.D. Ill. July 27,

908.102(6) (emphasis added). The term "impede" is vague because it gives no guidance to cities and counties regarding the scope of prohibited actions relating to regulating communication with immigration authorities. *See Int'l Soc'y for Krishna Consciousness v. Eaves*, 601 F.2d 809, 832 (5th Cir. 1979); *Ciccarelli v. City of Key W.*, 321 So. 2d 472, 473 (Fla. 3d DCA 1975) (striking down a loitering statute proscribing behavior that 'impede[s] or tend[s] to impede passage').

Government officials will be left to hazard guess, with the threat of enforcement actions and suspension from office hanging over their heads, whether quality control measures, some mandated by the INA itself, violate SB 168. For example, it is unclear whether Plaintiff City of South Miami's policy to refer communications from ICE to county police breaches Section 908.102(6) and will trigger enforcement actions against the city. *See* Ex. 1, ¶¶ 12, 15. South Miami and other localities have no idea whether their policies and customs that protect immigrants in sensitive locations, such as schools, hurricane shelters, colleges, hospitals, or homeless shelters, impede compliance with 8 U.S.C. § 1373. *Id.* at ¶ 8, 10. SB 168 provides no meaningful guidance, but gives Defendants immense power to target officials and agencies.

## II.   PLAINTIFFS WILL SUFFER IRREPARABLE HARM IF SB 168 IS NOT PRELIMINARILY ENJOINED

Plaintiffs will suffer irreparable harm if SB 168 is not enjoined. "An injury is 'irreparable' if it cannot be undone through monetary remedies." *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987). "[T]he alleged injury is irreparable if damages would be 'difficult or impossible to calculate.'" *Scott v. Roberts*, 612 F.3d 1279, 1295 (11th Cir. 2010); *see, e.g.*, *Georgia Latino*, 691 F.3d at 1269; *Buquer*, 797 F. Supp. at 924-25.

---

2018); *City of Philadelphia v. Sessions*, 309 F. Supp. 3d 289 (E.D. Pa. June 6, 2018); *United States v. California*, 314 F. Supp. 3d 1077 (E.D. Cal, July 5, 2018).

Plaintiff organizations represent a diverse group of members and clients across Florida who will be disproportionately impacted and injured by the implementation of SB 168. *See* Ex. 2, ¶¶ 1, 5; Ex. 3, ¶¶ 2, 6, 10, 12; Ex. 4,. ¶¶ 4-7, 21-22; Ex. 5, ¶¶ 6, 8, 10; Ex. 6, ¶¶ 2, 6, 10-11; ¶¶__; Ex. 7, ¶¶ 2, 4, 15; Ex. 8, ¶¶ 2, 3, 8; Ex. 9, ¶¶ 2, 11; Ex. 10, ¶ 2. If SB 168 goes into effect, members of Plaintiff organizations will face an actual and imminent threat of irreparable constitutional injury from racial and ethnic profiling, and unlawfully prolonged stops, arrests, and detentions on suspicion of civil immigration violations by unauthorized state and local law enforcement. *See* Ex. 2, ¶ 5; Ex. 3, ¶¶ 6, 11-12; Ex. 4, ¶¶ 21-22; Ex. 5, ¶¶ 10-11; Ex. 6, ¶¶ 11, 15-16; ¶¶__; Ex. 7, ¶ 17. SB 168 will undermine public safety by causing members of Plaintiff organizations to fear contact with local law enforcement and to avoid reporting crimes and acting as witnesses. *See* Ex. 3, ¶ 12; Ex. 4, ¶ 23; Ex. 6, ¶¶ 13, 16; ¶¶__; Ex. 7, ¶ 15. This uncertainty has and will continue to discourage members from accessing essential healthcare and government services, including shelter during a hurricane, enforcing their legal rights, including in cases of domestic violence, and applying to and enrolling in public schools and universities. *See* Ex. 3, ¶¶ 6, 10-11; Ex. 4, ¶ 25; Ex. 5, ¶ 12; Ex. 6, ¶15; Ex. 7, ¶15. Plaintiff City of South Miami and members of Plaintiff organizations are unable to determine what conduct is prohibited by SB 168. *See* Ex. 1, ¶¶ 9, 10, 11, 12; Ex. 2, ¶¶ 6, 11; Ex. 3, ¶¶ 6, 10; Ex. 5, ¶¶ 8-9; Ex. 6, ¶ 8; Ex. 7, ¶ 14; Ex. 8, ¶ 9; Ex. 9, ¶¶ 6, 13; Ex. 10, ¶ 13. Plaintiff City of South Miami's leadership fears suspension from office and exposure to legal liability for violating individuals' civil rights as a result of SB 168. *See* Ex. 1, ¶15, ¶24.

All of these harms are inherently unquantifiable and cannot be undone through monetary remedies after the fact. *See, e.g., Hispanic Interest Coalition v. Governor of Ala.*, 691 F.3d 1236, 1249 (11th Cir. 2012) ("[T]he interference with the educational rights of undocumented children is not a harm that can be compensated by monetary damages.").

Additionally, Plaintiffs organizations have and will suffer irreparable harm, because they are required to divert organizational resources away from core mission activities to educate members, beneficiaries, and the public about SB168, to address questions and concerns about SB168, and to assist those affected by SB168.  *See* Ex. 2, ¶¶ 5, 6, 7, 8, 10, 11; Ex. 3, ¶¶ 9, 13-18; Ex. 4, ¶¶ 15-16, 19-20; Ex. 5, ¶¶ 6-9; Ex. 6, ¶¶ 8, 12, 14-15; Ex. 7, ¶¶ 11-13, 16, 18; Ex. 8, ¶¶ 6, 9, 11; Ex. 9, ¶¶ 6-7, 9, 11, 14, 16; Ex. 10, ¶¶ 10-12. Plaintiff organizations will also face diminished membership and beneficiaries if SB 168 goes into effect.  *See* Ex. 4, ¶ 24; Ex. 10, ¶ 12; *see also Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994) ("... the threat of a permanent loss of customers . . .also support a finding of irreparable harm."). The missions of Plaintiff organizations have been, and will continue to be, frustrated as members and clients are discouraged from convening in public places, attending public marches and meetings, pursuing legal claims, and engaging in advocacy and organizing activities that might increase contact with local law enforcement. *See* Ex. 2, ¶¶ 1, 7, 10; Ex. 3, ¶¶. 2, 3, 7, 17-19; Ex. 4, ¶¶ 3, 23-24; Ex. 6, ¶¶ 3, 5-7, 11, 13-15; ; Ex. 7, ¶¶ 3, 14; Ex. 8, ¶¶ 2, 5, 7, 9, 12-13; Ex. 9, ¶¶ 2, 6, 11, 13-16; Ex. 10, ¶¶ 2, 11-14

## III.   THE BALANCE OF HARMS STRONGLY FAVORS THE ISSUANCE OF AN INJUNCTION

Plaintiffs ask merely for the status quo to be maintained, causing no harm to Defendants, while serious questions about the law's constitutionality are adjudicated. This is precisely the purpose of a preliminary injunction. *See Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1101 n.13 (11th Cir. 2004) ("a preliminary injunction . . . [is] issued to preserve the status quo and prevent allegedly irreparable injury until the court ha[s] the opportunity to decide whether to issue a permanent injunction"). The equities tip sharply in favor of granting an injunction while the constitutionality of SB 168 is decided.  *See Scott*, 612 F.3d at 1297; *KH Outdoor*, 458 F.3d at 1272.

17

## IV.   A PRELIMINARY INJUNCTION IS IN THE PUBLIC INTEREST

The public interest is not served by allowing an unconstitutional law to take effect. *See Scott*, 612 F.3d at 1297; *KH Outdoor*, 458 F.3d at 1272. Particularly where civil rights are at stake, an injunction serves the public interest because it "protect[s] the public interest by protecting those rights to which it is too entitled." *Nat'l Abortion Fed'n. V. Metro. Atlanta Rapid Transit Auth.*, 112 F. Supp. 2d 1320, 1328 (N.D. Ga. 2000). And courts have specifically held that enjoining a state statute that is preempted by federal law serves the public interest. *See Chamber of Commerce v. Edmonson*, 594 F.3d 742, 771 (10th Cir. 2010); *GLAHR*, 793 F. Supp. 2d 1317, 1340; *Villas at Parkside Partners v. City of Farmers Branch*, 701 F. Supp. 2d 835, 859 (granting permanent injunction). For all of these reasons, weigh heavily in favor of issuing a preliminary injunction while the Court fully considers the constitutionality of SB 168.

## V.   PLAINTIFFS SHOULD NOT BE REQUIRED TO POST A BOND

This Court has the discretion to issue a preliminary injunction without requiring Plaintiff to post bond. *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 539 (6th Cir. 1978). This is especially true where, as here, plaintiffs seek only to vindicate their federal statutory and constitutional rights, this case implicates the public interest and the balance of hardships tips sharply in favor of plaintiffs. *See Campos v. I.N.S.* 70 F.Supp.2d 1296, 1310 (S.D. Fla. 1998).

## CONCLUSION

Plaintiffs have met all of the four factors for the issuance of a preliminary injunction and respectfully request this Court grant their Motion for a Preliminary Injunction and enjoin: (a) Sections 908.105(1), 908.104(4), and 908.106 because these sections are preempted by federal law in violation of the Supremacy Clause of Article VI, Section 2, of the U.S. Constitution; (b) Section

908.104(1), 908.102(6), and 908.103 because they violate the Fourteenth Amendment to the U.S.

Constitution; and (c) SB 168 in its entirety.


Respectfully submitted this 16th day of July, 2019.

Anne Janet Hernandez Anderson (Fla. Bar No. 0018092)
E-mail: aj.hernandez@splcenter.org
Paul R. Chavez*
E-mail: paul.chavez@splcenter.org
Mich Gonzalez*
E-mail: mich.gonzalez@splcenter.org
SOUTHERN POVERTY LAW CENTER
P.O. Box 370037
Miami, FL 33137-0037
Telephone: (786) 810-5673
Fax: (786) 237-2949

Alana Greer (Fla. Bar No. 92423)
Email: alana@communityjusticeproject.com
Oscar Londoño (Fla. Bar No. 1003044)
E-mail: oscar@communityjusticeproject.com
COMMUNITY JUSTICE PROJECT, INC.
3000 Biscayne Blvd. Suite 106
Miami, Florida 33145
Tel.: (305) 907-7697 ext. 1

**By: /s/ Rebecca Sharpless**

Rebecca Sharpless (Fla. Bar No. 0131024 )
E-mail: rsharpless@law.miami.edu
IMMIGRATION CLINIC
UNIVERSITY OF MIAMI SCHOOL OF LAW
1311 Miller Drive, E273
Coral Gables, FL 33146
Tel.: (305) 284-6092
Fax: (305) 284-6093

*Attorneys for Plaintiffs*

\* Application for admission pro hac vice forthcoming