# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

**CITY OF SOUTH MIAMI**, *et al.*

      *Plaintiffs*,

vs.

CASE NO. 1:19-cv-22927

**RON DESANTIS, IN HIS OFFICIAL
CAPACITY AS GOVERNOR OF THE
STATE OF FLORIDA**, *et al.*

      *Defendants*.

_____/

## DECLARATION OF SHERIFF GUALTIERI

I, Robert Gualtieri, hereby declare:

1. I am the duly elected Sheriff of Pinellas County, Florida.  I have personal knowledge of the facts set forth in this Declaration, unless the facts are set forth as information and belief, in which case I believe them to be true.  If called to testify under oath as to the facts in this Declaration, I could and would do so completely.

2. As the Sheriff for Pinellas County, I have constitutional and statutory authority and am tasked with the general supervision, administration, and management of the Pinellas County Sheriff's Office ("PCSO") including the jail run by PCSO.  I am tasked with enforcing the laws of the State of Florida.  I took an oath to uphold the laws and constitutions of the United States of America and the State of Florida.

3. I began my law enforcement and public service career as a detention deputy working in the PCSO jail in 1982.  After attending the police academy, I joined the Dunedin Police Department as a patrol officer and later rejoined the PCSO as a law enforcement deputy. Over the next 15 years, I served in many different components of the PCSO, including several years

1

2

conducting domestic and international drug trafficking investigations as part of a Drug Enforcement Administration task force.

4. I earned a bachelor's degree from Eckerd College in St. Petersburg and my law degree from Stetson University College of Law. After graduating from Stetson and being admitted to the Florida Bar, I entered private practice in Tampa, specializing in labor and employment defense.

5. I returned to the Pinellas County Sheriff's Office in 2006 as its general counsel and was appointed chief deputy in 2008. I served in the dual role of general counsel and chief deputy until I became Sheriff in 2011. I was duly elected Sheriff in 2012 by the voters and was reelected to another four-year term in 2016 which I now am serving.

6. I am President of the Florida Sheriffs Association ("FSA"). FSA is made up of the 67 sheriffs of Florida, plus approximately 70,000 citizens, business leaders, and law enforcement officers throughout the state. I am also a member of the International Association of Chiefs of Police; the Police Executive Research Forum; the National Sheriffs' Association; the Major County Sheriffs' of America; and Executive Fellow for the Police Foundation. I am admitted to the bars of the United States Supreme Court; the Northern, Middle, and Southern Districts of Florida; the U.S. Eleventh Circuit Court of Appeals; and as an active member of the Florida Bar, all Florida courts.

7. As Sheriff, I am familiar with the relationship between the federal government and the sheriffs' offices with respect to the Immigration and Nationality Act, the enforcement of immigration laws, and the federal agencies enforcing those laws, the Department of Homeland Security ("DHS"), and its components, Customs and Border Protection ("CBP") and Immigration and Customs Enforcement ("ICE"). The Immigration and Nationality Act authorizes cooperation between DHS, CBP, ICE, and state, local, and tribal governments.

8. Statewide, inmates are no longer booked at municipal jails (even if the municipality

2

3

makes the arrest), only temporarily held until the inmate is transported to a county jail. When an inmate is booked at a county jail, the inmate's fingerprints are automatically shared with law enforcement partners, including the Federal Bureau of Investigation and ICE. Only inmates who have been arrested on state criminal charges are booked at these facilities and thus only inmates who have been arrested on state criminal charges for a criminal offense in the exercise of the agency's independent arrest authority have their fingerprints shared with ICE.

9. State, local, or tribal law enforcement agencies are not authorized to issue an immigration detainer. That authority and responsibility resides solely with DHS/ICE. In fact, all immigration law enforcement authority resides only with DHS/ICE unless the state, local, or tribal law enforcement agency had prior authorization to perform certain immigration functions under Section 287(g) of the Immigration and Nationality Act. Section 287(g) Agreements, as they are called, required the state, local, or tribal law enforcement agency to send their personnel to a 120-hour accreditation and training process at an ICE facility in South Carolina for each agency member designated to perform these certain immigration functions, including the function of *investigating, making probable cause arrests,* and *executing* immigration detainers. The local agency is required to pay all costs of "backfilling" their personnel's positions while they are away at this training. Due to the requirement that Section 287(g) certification is specific to an agency employee, many state and local detention facilities face operational challenges in sending personnel to this elongated training. Approximately six counties in the State of Florida thus entered into Section 287(g) Agreements.

10. Once ICE or the Section 287(g) designee determine that there is probable cause to believe that the inmate arrested on state criminal charges and in state, local, or tribal custody is an alien subject to removal from the United States, an "Immigration Detainer – Notice of Action" (Form I-247A) is issued by ICE to the state, local, or tribal agency at the jail. I am familiar with

3

4

this form and ICE Policy Number 10074.2 effective April 2, 2017 concerning the policy and procedures regarding the issuance of civil immigration detainers to federal, state, local, and tribal law enforcement agencies. Copies are attached as Exhibit A-1 and A-2, respectively. Under this policy, an immigration detainer shall not be issued for an alien who has been temporarily stopped or detained, but not arrested by a state, local, or tribal agency. If the alien is the victim of a crime or cooperating with an agency, the agency can request from ICE that the alien not be removed pursuant to the immigration detainer. ICE can interview any inmate in custody after arrest concerning their immigration status.

11. ICE and the Section 287(g) designees enforce civil immigration laws. The immigration detainer is only a request from the federal government to the state, local, or tribal agency, not a mandate. The detainer specifically provides that the mere existence of an immigration detainer should not impact decisions about the alien's bail, rehabilitation, parole, release, diversion, custody classification, work, quarter assignments, or other matters.

12. Effective April 2, 2017, all Form I-274A immigration detainers must be accompanied by either a "Warrant of Arrest of Alien" (Form I-200) or a "Warrant of Removal/Deportation" (Form I-205). I am familiar with both of these forms and copies are attached as Exhibit A-3 and A-4, respectively. The immigration detainer (Form I-247A), together with a warrant of arrest (Form I-200) or warrant of removal (Form I-205), are placed in the alien's jail record and "follow" the alien, whether that be to court, to the hospital, to another facility, or to another law enforcement agency for proceeding or investigation.

13. These immigration forms must be personally served on the alien and may be served any time prior to the alien's release from state or local custody. The immigration detainer (Form I-247A), warrant of arrest (Form I-200), and warrant of removal (Form I-205), require certification by serving the forms and articulating that the alien was served, as well as the method, the date, and

4

5

the identity of the serving officer.

14. The immigration detainer (Form I-274A) which is served on the alien, provides a "Notice to the Detainee" in six languages. In bold, the notice states that the detainer is only for 48 hours and if ICE does not take the alien into custody, the alien should be released. In bold, the notice provides a toll-free number for the alien to call if the alien claims to be a United States citizen or the victim of a crime. In cases where the fingerprints in the National Crime Information Center (NCIC) or Federal Crime Information Center (FCIC) database are erroneously linked to the wrong person, the Florida Department of Law Enforcement has a process to correct the error.

15. ICE must promptly assume custody of the alien who is subject to an immigration detainer as close to the possible time at which the alien would otherwise have been released by the agency, but in no circumstances more than 48 hours after such time. If ICE cannot assume custody of the alien within the 48 hours, ICE must immediately cancel the immigration detainer and hold and the alien is to be released from the county jail. Taking the alien into ICE custody prior to the alien being released from the county jail provides greater safety to the public from possible flight and violence by the alien. Further, making arrests on the street is inherently dangerous; therefore, ICE taking custody of the alien in the secure and controlled jail environment, as opposed to on the street after release, ensures the safety of the ICE officers.

16. Due to the fiscal and other restraints found in the Section 287(g) certification process, I worked with ICE and DHS to establish Basic Ordering Agreement ("BOA") illegal alien housing agreements. These agreements provide that state, local, and tribal detention facilities may house illegal aliens subject to immigration detainers without the need for that facility to meet all the standards of a federal detention facility or for local agency personnel to be designated under Section 287(g). The BOA for PCSO is attached as Exhibit A-5. In addition to the BOA, some county jails house illegal aliens subject to immigration detainers under an Intergovernmental

5

6

Services Agreement (IGSA). The BOA and IGSA function in a similar manner (housing agreements) as it relates to the immigration detainer process.

17. There are 67 county jails in Florida; sheriffs operate 57 jails and 10 are operated by county governments or a contractor. In addition to Section 287 (g) facilities, BOA, and IGSA facilities, all 57 sheriff operated jails, and some county operated jails, have entered into a Memorandum of Understanding with ICE/DHS establishing a Warrant Service Officer ("WSO") training and certification. The WSO is granted limited authority under Section 287(g) to service the arrest warrant (I-200 or I-205). The WSO Memorandum of Agreement for PCSO is attached as Exhibit A-6. The WSO designation requires only eight (8) hours of federal training done at the local level. The WSO may act as a federal immigration agent for the limited purposes of serving the arrest warrant and serving the immigration forms, but not issuing the detainer, making probable cause arrests, or investigating the case. The WSO Memorandum of Agreement requires DHS to provide the immigration detainer (Form I-247A), warrant of arrest (Form I-200) or warrant of removal (Form I-205), and Form I-203 for each alien. Form I-203 allows for the reimbursement of costs associated with housing the aliens as part of the BOA or IGSA.

18. In response to litigation in other states, I supported SB 168, codified at Chapter 908, Fla. Stat., which clearly outlined state authority and the duties and limitations of state involvement in federal immigration enforcement. Because of the extensive use of federal forms and both Section 287(g), BOA, IGSA, and WSO training, from my own personal knowledge and upon belief and information, state, local, and tribal law enforcement agencies have a detailed description of exactly how, in what manner, and to what extent are the duties and limitations of state involvement in the exercise of federal civil enforcement, which builds upon the policies and practices in existence between state and federal cooperation for years.

19. Further, SB 168 prohibits "sanctuary policies" whereby the local political entity directs its

6

7

law enforcement agency to decline to work with DHS/ICE in the enforcement of federal immigration enforcement. This is important for the safety of ICE officers and local police officers. Working collaboratively and sharing de-confliction information prevents officer safety issues and potentially "blue-on-blue" (officer-on-officer) situations. Further, if ICE officers call for help a local police officer should not be precluded from providing assistance. Additionally, prohibiting cooperation by county jail personnel and knowingly releasing aliens subject to an outstanding immigration detainer not only places individual officers in conflict between choosing to uphold their sworn duties under State and Federal law or choosing to uphold local ordinances or other directives, risking possible disciplinary action, it puts fellow law enforcement officers and members of the public at greater risk of flight, violence, and interference if an attempt is made to arrest the alien on the streets, one of the main reasons behind the need for a 48 hour detainer. Thus prohibiting "sanctuary policies" services a fundamental and important public and policing policy for the entire State of Florida.

I declare, under penalty of perjury pursuant to Title 28, United States Code, Section 1746, that the foregoing is true and correct to the best of my knowledge, information, and belief.

ROBERT GUALTIERI
SHERIFF, PINELLAS COUNTY

Dated: August 9th, 2019

7

8

# EXHIBIT A-1

# ICE GUIDANCE FOR COMPLETING FORM I-247A

1.    **Form I-247A (Immigration Detainer – Notice of Action).** Effective April 2, 2017, the Department rescinded Form I-247D (Immigration Detainer – Request for Voluntary Action), Form I-247N (Request for Voluntary Notification of Release of Suspected Priority Alien), and Form I-247X (Request for Voluntary Transfer), and replaced them with a consolidated detainer form, the Form I-247A (Immigration Detainer – Notice of Action). The Form I-247D, Form I-247N, and Form I-247X may not be issued after April 2, 2017. Detainers issued on prior versions of the detainer form remain active and need not be replaced with a Form I-247A.

2.    **Form I-247A, Box 1.**

   1) When Box 1 is checked, Form I-247A requests that the receiving LEA: (1) notify DHS as early as practicable, at least 48 hours, if possible, before a removable alien is released from criminal custody; and (2) maintain custody of the alien for a period not to exceed 48 hours beyond the time he or she would otherwise have been released to allow DHS to assume custody for removal purposes.

   2) Prior to issuing an immigration detainer to an LEA, immigration officers must have probable cause to believe that the individual they seek to detain is a removable alien.

   3) The Form I-247A advises that a copy of the form must be served on the alien in order for the detainer to take effect.

3.    **Form I-247A, Box 2.**

   1) When a federal, state, local, or tribal LEA requests that ICE transfer an alien detained in ICE custody for a proceeding or investigation, the immigration officer will check Box 2 on Form I-247A.

   2) If using Box 2, the immigration officer should not complete Box 1.

   3) Immigration officers who transfer an alien into the custody of another federal, state, local, or tribal LEA must serve a copy of the completed detainer form on the alien before transfer.

   4) When Box 2 is checked, Form I-247A requests that the receiving LEA: (1) notify DHS as early as practicable, at least 48 hours, if possible, before a removable alien is released from criminal custody; and (2) maintain custody of the alien for a period not to exceed 48 hours beyond the time he or she would otherwise have been released to allow DHS to assume custody for removal purposes.

**Page 1 of 1**

10

DEPARTMENT OF HOMELAND SECURITY
## IMMIGRATION DETAINER - NOTICE OF ACTION

| | |
|---|---|
| Subject ID:<br>Event #: | File No:<br>Date: |

| | |
|---|---|
| TO: (Name and Title of Institution - OR Any Subsequent Law Enforcement Agency) | FROM: (Department of Homeland Security Office Address) |

Name of Alien: _____

Date of Birth: _____  Citizenship: _____  Sex: _____

**1. DHS HAS DETERMINED THAT PROBABLE CAUSE EXISTS THAT THE SUBJECT IS A REMOVABLE ALIEN. THIS DETERMINATION IS BASED ON (complete box 1 or 2).**

☐ A final order of removal against the alien;

☐ The pendency of ongoing removal proceedings against the alien;

☐ Biometric confirmation of the alien's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the alien either lacks immigration status or notwithstanding such status is removable under U.S. immigration law; and/or

☐ Statements made by the alien to an immigration officer and/or other reliable evidence that affirmatively indicate the alien either lacks immigration status or notwithstanding such status is removable under U.S. immigration law.

**2. DHS TRANSFERRED THE ALIEN TO YOUR CUSTODY FOR A PROCEEDING OR INVESTIGATION (complete box 1 or 2).**

☐ Upon completion of the proceeding or investigation for which the alien was transferred to your custody, DHS intends to resume custody of the alien to complete processing and/or make an admissibility determination.

**IT IS THEREFORE REQUESTED THAT YOU:**

- **Notify DHS** as early as practicable (at least 48 hours, if possible) before the alien is released from your custody. Please notify DHS by calling ☐ U.S. Immigration and Customs Enforcement (ICE) or ☐ U.S. Customs and Border Protection (CBP) at _____. If you cannot reach an official at the number(s) provided, please contact the Law Enforcement Support Center at: (802) 872-6020.

- **Maintain custody** of the alien for a period **NOT TO EXCEED 48 HOURS** beyond the time when he/she would otherwise have been released from your custody to allow DHS to assume custody. The alien **must be served with a copy of this form** for the detainer to take effect. This detainer arises from DHS authorities and should not impact decisions about the alien's bail, rehabilitation, parole, release, diversion, custody classification, work, quarter assignments, or other matters

- Relay this detainer to any other law enforcement agency to which you transfer custody of the alien.

- Notify this office in the event of the alien's death, hospitalization or transfer to another institution.

☐ If checked: please cancel the detainer related to this alien previously submitted to you on _____ (date).

_____     _____
(Name and title of Immigration Officer)          (Signature of Immigration Officer) (Sign in ink)

> **Notice:** If the alien may be the victim of a crime or you want the alien to remain in the United States for a law enforcement purpose, notify the ICE Law Enforcement Support Center at (802) 872-6020. You may also call this number if you have any other questions or concerns about this matter.

**TO BE COMPLETED BY THE LAW ENFORCEMENT AGENCY CURRENTLY HOLDING THE ALIEN WHO IS THE SUBJECT OF THIS NOTICE:**

Please provide the information below, sign, and return to DHS by mailing, emailing or faxing a copy to _____ .

Local Booking/Inmate #: _____  Estimated release date/time: _____

Date of latest criminal charge/conviction: _____  Last offense charged/conviction: _____

This form was served upon the alien on _____ , in the following manner:

☐ in person    ☐ by inmate mail delivery    ☐ other (please specify): _____

_____     _____
(Name and title of Officer)                    (Signature of Officer) (Sign in ink)

DHS Form I-247A (3/17)                                           Page 1 of 3

## NOTICE TO THE DETAINEE

The Department of Homeland Security (DHS) has placed an immigration detainer on you. An immigration detainer is a notice to a law enforcement agency that DHS intends to assume custody of you (after you otherwise would be released from custody) because there is probable cause that you are subject to removal from the United States under federal immigration law. DHS has requested that the law enforcement agency that is currently detaining you maintain custody of you for a period not to exceed 48 hours beyond the time when you would have been released based on your criminal charges or convictions. **If DHS does not take you into custody during this additional 48 hour period, you should contact your custodian** (the agency that is holding you now) to inquire about your release. **If you believe you are a United States citizen or the victim of a crime, please advise DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.**

## NOTIFICACIÓN A LA PERSONA DETENIDA

El Departamento de Seguridad Nacional (DHS) le ha puesto una retención de inmigración. Una retención de inmigración es un aviso a una agencia de la ley que DHS tiene la intención de asumir la custodia de usted (después de lo contrario, usted sería puesto en libertad de la custodia) porque hay causa probable que usted está sujeto a que lo expulsen de los Estados Unidos bajo la ley de inmigración federal. DHS ha solicitado que la agencia de la ley que le tiene detenido actualmente mantenga custodia de usted por un periodo de tiempo que no exceda de 48 horas más del tiempo original que habría sido puesto en libertad en base a los cargos judiciales o a sus antecedentes penales. **Si DHS no le pone en custodia durante este periodo adicional de 48 horas, usted debe de contactarse con su custodio** (la agencia que le tiene detenido en este momento) para preguntar acerca de su liberación. **Si usted cree que es un ciudadano de los Estados Unidos o la víctima de un crimen, por favor avise al DHS llamando gratuitamente al Centro de Apoyo a la Aplicación de la Ley ICE al (855) 448-6903.**

## AVIS AU DETENU OU À LA DÉTENUE

Le Département de la Sécurité Intérieure (DHS) a placé un dépositaire d'immigration sur vous. Un dépositaire d'immigration est un avis à une agence de force de l'ordre que le DHS a l'intention de vous prendre en garde à vue (après cela vous pourrez par ailleurs être remis en liberté) parce qu'il y a une cause probable que vous soyez sujet à expulsion des États-Unis en vertu de la loi fédérale sur l'immigration. Le DHS a demandé que l'agence de force de l'ordre qui vous détient actuellement puisse vous maintenir en garde pendant une période ne devant pas dépasser 48 heures au-delà du temps après lequel vous auriez été libéré en se basant sur vos accusations criminelles ou condamnations. **Si le DHS ne vous prenne pas en garde à vue au cours de cette période supplémentaire de 48 heures, vous devez contacter votre gardien (ne)** (l'agence qui vous détient maintenant) pour vous renseigner sur votre libération. **Si vous croyez que vous êtes un citoyen ou une citoyenne des États-Unis ou une victime d'un crime, s'il vous plaît aviser le DHS en appelant gratuitement le centre d'assistance de force de l'ordre de l'ICE au (855) 448-6903**

## NOTIFICAÇÃO AO DETENTO

O Departamento de Segurança Nacional (DHS) expediu um mandado de detenção migratória contra você. Um mandado de detenção migratória é uma notificação feita à uma agência de segurança pública que o DHS tem a intenção de assumir a sua custódia (após a qual você, caso contrário, seria liberado da custódia) porque existe causa provável que você está sujeito a ser removido dos Estados Unidos de acordo com a lei federal de imigração. O DHS solicitou à agência de segurança pública onde você está atualmente detido para manter a sua guarda por um período de no máximo 48 horas além do tempo que você teria sido liberado com base nas suas acusações ou condenações criminais. **Se o DHS não leva-lo sob custódia durante este período adicional de 48 horas, você deve entrar em contato com quem tiver a sua custódia** (a agência onde você está atualmente detido) para perguntar a respeito da sua liberação. **Se você acredita ser um cidadão dos Estados Unidos ou a vítima de um crime, por favor informe ao DHS através de uma ligação gratuita ao Centro de Suporte de Segurança Pública do Serviço de Imigração e Alfândega (ICE) pelo telefone (855) 448-6903.**

DHS Form I-247A (3/17)

**THÔNG BÁO CHO NGƯỜI BỊ GIAM**

Bộ Nội An (DHS) đã ra lệnh giam giữ di trú đối với quý vị. Giam giữ di trú là một thông báo cho cơ quan công lực rằng Bộ Nội An sẽ đảm đương việc lưu giữ quý vị (sau khi quý vị được thả ra) bởi có lý do khả tín quý vị là đối tượng bị trục xuất khỏi Hoa Kỳ theo luật di trú liên bang. Sau khi quý vị đã thi hành đầy đủ thời gian của bản án dựa trên các tội phạm hay các kết án, thay vì được thả tự do, Bộ Nội An đã yêu cầu cơ quan công lực giữ quý vị lại thêm không quá 48 tiếng đồng hồ nữa. Nếu Bộ Nội An không đến bắt quý vị sau 48 tiếng đồng hồ phụ trội đó, quý vị cần liên lạc với cơ quan hiện đang giam giữ quý vị để tham khảo về việc trả tự do cho quý vị. Nếu quý vị là công dân Hoa Kỳ hay tin rằng mình là nạn nhân của một tội ác, xin vui lòng báo cho Bộ Nội An bằng cách gọi số điện thoại miễn phí 1(855) 448-6903 cho Trung Tâm Hỗ Trợ Cơ Quan Công Lực Di Trú.

## 被拘留者通知書

國土安全部(Department of Homeland Security，簡稱DHS)已經對你發出移民拘留令。移民拘留令為一給予執法機構的通知書，闡明DHS意欲獲取對你的羈押權(若非有此羈押權，你將會被釋放)；因為根據聯邦移民法例，並基於合理的原由，你將會被遞解離美國國境。DHS亦已要求現正拘留你的執法機構，在你因受到刑事檢控或定罪後，而在本應被釋放的程序下，繼續對你作出不超過四十八小時的監管。若你在這附加的四十八小時內，仍未及移交至**DHS**的監管下，你應當聯絡你的監管人(即現正監管你的機構)查詢有關你釋放的事宜。若你認為你是美國公民或為罪案受害者，請致電**ICE**執法部支援中心**(Law Enforcement Support Center)**知會**DHS**，免費電話號碼(855)448-6903。

# EXHIBIT A- 2

## U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT

**Policy Number 10074.2:**    **Issuance of Immigration Detainers by ICE Immigration Officers**

**Issue Date: March 24, 2017**
**Effective Date: April 2, 2017**
**Superseded:** Interim Policy No. 10074.1: *Detainers* (Aug. 2, 2010)
**Federal Enterprise Architecture Number:** 306-112-002b

1.    **Purpose/Background.** This Directive establishes U.S. Immigration and Customs Enforcement (ICE) policy and procedures regarding the issuance of civil immigration detainers to federal, state, local, and tribal law enforcement agencies (LEAs). ICE issues detainers to federal, state, local, and tribal LEAs to provide notice of its intent to assume custody of a removable alien detained in federal, state, local, or tribal custody. The Department of Homeland Security's (Department or DHS) detainer authority, codified in section 287.7 of title 8 of the Code of Federal Regulations (C.F.R.), arises from the Secretary of Homeland Security's power under section 103(a)(3) of the Immigration and Nationality Act (INA) to provide regulations "necessary to carry out his authority," and from ICE's general authority to arrest and detain aliens subject to removal or removal proceedings, pursuant to sections 236, 241, and 287 of the INA. The use of immigration detainers, however, long pre-dates any reference to detainers in the statute or regulations.[1] In fact, the former Immigration and Naturalization Service first used the Form I-247 as early as 1952.

Detainers enable ICE to judiciously deploy its investigative, detention, and removal resources consistent with the immigration enforcement priorities of the Department and the executive branch of the U.S. Government. Detainers also allow ICE immigration officers to avoid the risks to public safety and officer safety associated with arrests outside the custodial environment.

2.    **Policy.** It is ICE policy to ensure that ICE immigration officers exercise detainer authority in a manner consistent with all legal requirements and in a manner that ensures ICE's LEA partners may honor detainers.

2.1.    The consolidated detainer form, Form I-247A (Immigration Detainer – Notice of Action), attached to this Directive shall be used as of the effective date of this Directive. Form I-247D (Immigration Detainer – Request for Voluntary Action), Form I-247N (Request

---

[1] *See, e.g., Chung Young Chew v. Boyd*, 309 F.2d 857 (9th Cir. 1962); *Rinaldi v. United States*, 484 F. Supp. 916 (S.D.N.Y. 1977); *Slavik v. Miller*, 89 F. Supp. 575 (W.D..Pa. 1950), *aff'd*, 184 F.2d 575 (3d Cir. 1950), *cert. denied*, 340 U.S. 955 (1951); *Matter of Lehder*, 15 I&N Dec. 159 (BIA 1975).

1

for Voluntary Notification of Release of Suspected Priority Alien), and Form I-247X (Request for Voluntary Transfer), may no longer be issued. Detainers issued on prior versions of the detainer form remain active and need not be replaced with a Form I-247A. *See* Attachment 8.4 for guidance on how to complete the Form I-274A.

2.2. Only ICE immigration officers, including designated officers of a state or political subdivision of a state authorized to perform certain immigration officer functions under section 287(g) of the INA, may issue immigration detainers.

2.3. Regardless of whether a federal, state, local, or tribal LEA regularly cooperates with DHS immigration detainers, ICE immigration officers shall issue a detainer to the LEA for an alien in the LEA's custody after the alien is arrested for a criminal offense and the officer has probable cause to believe that the subject is an alien who is removable from the United States.

2.4. ICE immigration officers must establish probable cause to believe that the subject is an alien who is removable from the United States before issuing a detainer with a federal, state, local, or tribal LEA. Further, as a matter of policy, all detainers issued by ICE must be accompanied by either: (1) a properly completed Form I-200 (Warrant for Arrest of Alien) signed by an authorized ICE immigration officer; or (2) a properly completed Form I-205 (Warrant of Removal/Deportation) signed by an authorized ICE immigration officer.[2]

2.5. Except for circumstances in which the alien is detained in ICE custody at the time the detainer is issued, an ICE immigration officer shall not issue an immigration detainer to an LEA unless the LEA has arrested the alien for a criminal offense in an exercise of the LEA's independent arrest authority.[3] ICE Immigration officers shall not issue an immigration detainer for an alien who has been temporarily detained or stopped, but not arrested, by another LEA. This does not preclude the LEA from temporarily detaining an alien while an ICE immigration officer responds to the scene.

2.6. An ICE immigration officer may not issue a detainer based upon the initiation of an investigation to determine whether the subject is a removable alien. An ICE immigration officer may not establish probable cause of alienage and removability, for purposes of detainer issuance, solely based on evidence of foreign birth and the absence of records in available databases ("foreign-born-no match").

---

[2] Although ICE maintains that this is not legally required, ICE is implementing this warrant measure as a nationwide policy in light of one district court's ruling that detention pursuant to an ICE detainer constitutes a warrantless arrest and that section 287(a)(2) of the INA only authorizes a warrantless arrest if there is reason to believe the alien will escape before an arrest warrant can be secured. *See Moreno v. Napolitano*, --- F. Supp. 3d ---, 2016 WL 5720465, at *8 (N.D. Ill. Sept. 30, 2016).

[3] Box 2 on Form I-247A (Immigration Detainer – Notice of Action) is used by ICE to ensure that an alien detained in ICE's custody is returned to ICE custody after being transferred to another LEA for a proceeding or investigation. Such detainers may be issued prior to the other LEA assuming custody of the subject of the detainer.

2

2.7.   ICE immigration officers must promptly assume custody of an alien who is the subject of an immigration detainer. Further, ICE immigration officers should assume custody of an alien subject as soon as practicable, and as close as possible to the time at which the alien would otherwise have been released by the relevant LEA, but in no circumstances more than 48 hours after such time. If it becomes apparent that ICE cannot assume custody of the alien within 48 hours of when he or she would otherwise be released, the ICE immigration officer should immediately cancel the detainer.

2.8.   In some cases, after issuing an immigration detainer for an individual in the custody of a federal, state, local, or tribal LEA, ICE may determine that it will not assume custody of the subject. In these cases, the ICE immigration officer must cancel the immigration detainer as soon as such determination is made.

2.9.   As a matter of law, ICE cannot assert its civil immigration enforcement authority to arrest and/or detain a U.S. citizen.[4]

3.     **Definitions.** The following definitions apply only for purposes of this directive.

3.1.   **Detainer.** A notice that ICE issues to a federal, state, local, or tribal LEA to inform the LEA that ICE intends to assume custody of a removable alien in the LEA's custody.

3.2.   **ICE Immigration Officer.** The term "ICE immigration officer" means Enforcement and Removal Operations (ERO) deportation officers and Homeland Security Investigations (HSI) special agents, including supervisory and managerial personnel who are responsible for supervising authorized immigration officers, as well as designated officers of a state or political subdivision of a state authorized to perform certain immigration officer functions under section 287(g) of the INA. *See* 8 C.F.R. § 287.7(b).

3.3.   **Probable Cause.** The facts and circumstances within the officer's knowledge and of which they have reasonably trustworthy information that are sufficient in themselves to warrant a person of reasonable caution in the belief that an individual is a removable alien.

4.     **Responsibilities.**

4.1.   **All ICE employees** are responsible for complying with the policy and procedures set forth in this Directive.

4.2.   **ICE immigration officers,** including designated immigration officers of a state or political subdivision of a state authorized to perform certain immigration officer functions under section 287(g) of the INA, are responsible for issuing and executing

---

[4] ICE immigration officers must comply with requirements of ICE Policy No. 16001.2, *Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE* (Nov. 10, 2015), when issuing detainers. In particular, footnote 1 of that policy specifically applies to prior versions of the detainer "and/or any successor form serving the same or substantially similar" purpose.

3

immigration detainers in accordance with the policy and procedures set forth in this Directive.

4.3. **ICE ERO Assistant Directors, Deputy Assistant Directors, Field Office Directors (FODs), and the Directors of the National Criminal Analysis and Targeting Center, the Pacific Enforcement Response Center, and the Law Enforcement Support Center,** and their designees, as well as the **ICE HSI Assistant Director for Domestic Operations** and **ICE HSI Special Agents in Charge (SACs)** and their designees, are responsible for disseminating and ensuring compliance with this Directive.

5. **Procedures.**

5.1. **Establishing Probable Cause.**

As a matter of policy, a detainer must be supported by probable cause based upon one of the following four categories of information:

1) A final order of removal against the alien;

2) The pendency of ongoing removal proceedings against the alien, including cases in which DHS has issued a charging document and served the charging document on the alien;

3) Biometric confirmation of the alien's identity and a records match in federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the alien either lacks lawful immigration status or, notwithstanding such status, is removable under U.S. immigration law; and/or

4) Statements made voluntarily by the alien to an ICE immigration officer and/or other reliable evidence that indicate the alien either lacks lawful immigration status or, notwithstanding such status, is removable under U.S. immigration law.

An ICE immigration officer may not issue a detainer prior to establishing probable cause to believe that the subject is a removable alien. Further, an ICE immigration officer may not issue a detainer based upon the initiation of an investigation to determine whether the subject is a removable alien. The pendency of ongoing removal proceedings refers to cases in which DHS has issued a charging document and served the charging document on the alien. As a matter of policy, an ICE immigration officer may not establish probable cause of alienage and removability, for purposes of detainer issuance, solely based on evidence of foreign birth and the absence of records in available databases ("foreign-born-no match").

5.2. **Issuing an Immigration Detainer and Administrative Warrant.** All immigration detainers (Form I-247A Immigration Detainer – Notice of Action) must be accompanied by either Form I-200 (Warrant for Arrest of Alien) or Form I-205 (Warrant of Removal/Deportation).

4

18

1) If the subject of the detainer is a removable alien who is not yet subject to a final order of removal, the ICE immigration officer who issues the detainer shall attach a Form I-200 (Warrant for Arrest of Alien) to the detainer.

   a. The Form I-200 shall be issued by any of the supervisory immigration officials listed at 8 C.F.R. § 287.5(e)(2).

2) If the subject of the detainer is also the subject of a final order of removal, including where the alien is subject to reinstatement of removal under section 241(a)(5) of the INA, the ICE immigration officer who issues the detainer shall attach a Form I-205 (Warrant of Removal/Deportation) to the immigration detainer.

   a. The Form I-205 shall be issued by any of the supervisory immigration officials listed in 8 C.F.R. § 241.2(a)(1).

**5.3.** **Declined Immigration Detainers.** When ICE becomes aware that an LEA failed to honor an immigration detainer issued by ICE, the ICE immigration officer shall document the declined detainer in the ENFORCE Alien Removal Module (EARM) through the use of the detainer lift code of "A – Declined by LEA."

**5.4.** **Cancelling an Immigration Detainer.** If after issuing an immigration detainer ICE determines that it will not assume custody of the subject, the ICE immigration officer must cancel the immigration detainer.

1) Form I-247A shall be issued to the relevant LEA requesting cancellation of the detainer; and

2) All cancelled detainers shall be documented in EARM through the use of the detainer lift code of "L - Lifted", or using another case-specific lift code requiring the cancellation of the detainer (e.g. "D – Died", "N – Alien not subject to deportation").

**6.** **Recordkeeping.** ICE maintains records generated pursuant to this policy, specifically Forms I-247A (Immigration Detainer-Notice of Action), Forms I-200 (Warrant for Arrest of Alien) and Forms I-205 (Warrant of Removal/Deportation) in the Alien File.

**7.** **Authorities/References.**

**7.1.** Immigration and Nationality Act of 1952, Pub. L. No. 82-414, as amended (codified at 8 U.S.C. §§ 1101 *et seq.*).

**7.2.** 8 C.F.R. §§ 236.1, 241.2, 287.3, 287.5, 287.7.

**7.3.** *Moreno v. Napolitano*, --- F. Supp. 3d ---, 2016 WL 5720465 (N.D. Ill. Sept. 30, 2016).

**7.4.** Executive Order 13768, *Enhancing Public Safety in the Interior of the United States* (Jan. 25, 2017).

5

7.5.   Memorandum from DHS Secretary John Kelly, *Enforcement of the Immigration Laws to Serve the National Interest* (Feb. 20, 2017).

7.6.   ICE Policy No. 16001.2, *Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE* (Nov. 10, 2015).

7.7.   ICE Policy No. 13001.1, *State Personnel Designated to Act as Immigration Officers for Immigration Enforcement Purposes* (Dec. 4, 2008).

**8.     Attachments.**

**8.1.**   Form I-247A (Immigration Detainer – Notice of Action).

**8.2.**   Form I-200 (Warrant for Arrest of Alien).

**8.3.**   Form I-205 (Warrant of Removal/Deportation).

**8.4.**   ICE Guidance For Completing the Form I-247A.

**9.     No Private Right Statement.**  This document provides only internal ICE policy guidance, which may be modified, rescinded, or superseded at any time without notice.  It is not intended to, does not, and may not be relied upon to create or diminish any rights, substantive or procedural, enforceable at law or equity by any party in any criminal, civil, or administrative matter.  Likewise, no limitations are placed by this guidance on the otherwise lawful enforcement or litigative prerogatives of ICE.

Thomas D. Homan
Acting Director
U.S. Immigration and Customs Enforcement

6

**20**

# EXHIBIT A- 3

**U.S. DEPARTMENT OF HOMELAND SECURITY**       **Warrant for Arrest of Alien**

File No. _____

Date: _____

**To:**     **Any immigration officer authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations**

I have determined that there is probable cause to believe that _____ is removable from the United States.  This determination is based upon:

☐ the execution of a charging document to initiate removal proceedings against the subject;

☐ the pendency of ongoing removal proceedings against the subject;

☐ the failure to establish admissibility subsequent to deferred inspection;

☐ biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law; and/or

☐ statements made voluntarily by the subject to an immigration officer and/or other reliable evidence that affirmatively indicate the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law.

**YOU ARE COMMANDED** to arrest and take into custody for removal proceedings under the Immigration and Nationality Act, the above-named alien.

_____
(Signature of Authorized Immigration Officer)

_____
(Printed Name and Title of Authorized Immigration Officer)

<div style="border:1px solid">

**Certificate of Service**

I hereby certify that the Warrant for Arrest of Alien was served by me at _____
                                                                                                                          (Location)

on _____ on _____, and the contents of this
            (Name of Alien)                                      (Date of Service)

notice were read to him or her in the _____ language.
                                                              (Language)

_____             _____
Name and Signature of Officer                            Name or Number of Interpreter (if applicable)

</div>

Form I-200 (Rev. 09/16)

**22**

# EXHIBIT A- 4

DEPARTMENT OF HOMELAND SECURITY
U.S. Immigration and Customs Enforcement

## WARRANT OF REMOVAL/DEPORTATION

**File No:** _____

**Date:** _____

**To any immigration officer of the United States Department of Homeland Security:**

_____
(Full name of alien)

who entered the United States at _____ on _____
                                              (Place of entry)                        (Date of entry)

is subject to removal/deportation from the United States, based upon a final order by:

☐ an immigration judge in exclusion, deportation, or removal proceedings

☐ a designated official

☐ the Board of Immigration Appeals

☐ a United States District or Magistrate Court Judge

and pursuant to the following provisions of the Immigration and Nationality Act:

I, the undersigned officer of the United States, by virtue of the power and authority vested in the Secretary of Homeland Security under the laws of the United States and by his or her direction, command you to take into custody and remove from the United States the above-named alien, pursuant to law, at the expense of:

_____
(Signature of immigration officer)

_____
(Title of immigration officer)

_____
(Date and office location)

ICE Form I-205 (8/07)                                                                                                          Page 1 of 2

24

To be completed by immigration officer executing the warrant: Name of alien being removed:

_____

**Port, date, and manner of removal:** _____

Photograph of alien
removed

Right index fingerprint
of alien removed

_____
(Signature of alien being fingerprinted)

_____
(Signature and title of immigration officer taking print)

Departure witnessed by: _____
                                    (Signature and title of immigration officer)

If actual departure is not witnessed, fully identify source or means of verification of departure:

_____

_____

_____

If self-removal (self-deportation), pursuant to 8 CFR 241.7, check here.  ☐

Departure Verified by: _____
                                (Signature and title of immigration officer)

ICE Form I-205 (8/07)

Page 2 of 2

# EXHIBIT A- 5

BOA No. 70CDCR18G00000001

## GENERAL TERMS AND CONDITIONS

This Basic Ordering Agreement (BOA) is governed by the following terms and conditions:

The Service Provider shall provide U.S. Immigration and Customs Enforcement (ICE) with reasonable access to all detainees or inmates for purposes of interviewing such individuals for immigration enforcement related purposes.

SERVICES: The Service Provider shall house detainees pursuant to the issuance and acceptance of Form I-203 (Order to Detain or Release Alien) accompanied by Form I-247A (Immigration Detainer – Notice of Action) and either a Form I-200 (Warrant for Arrest of Alien) or Form I-205 (Warrant of Removal), consistent with Section 287.7(d) and (e) of Title 8 of the Code of Federal Regulations.

ORDERS: Only ICE purchase card holders have the authority to order against this BOA. Under no circumstance shall an order exceed $2,500.00.

COMMENCEMENT OF SERVICES: Services will commence at the time of the alien's scheduled release from State custody after issuance and acceptance of Form I-203 (Order to Detain or Release Alien) accompanied by Form I-247A (Immigration Detainer – Notice of Action) and Form I-200 (Warrant for Arrest of Alien) or Form I-205 (Warrant of Removal) issued by ICE. Services end when properly identified ICE personnel remove the alien from the Service Provider's facility or issue another Form I-203 (Order to Detain or Release Alien), or after 48 hours of detention, whichever occurs first.

RATES: For any order issued under this BOA, the rate will be fixed at $50.00 for up to 48 hours of detention. No payment will be made for any detention beyond 48 hours, and the Service Provider will not house the alien for longer than 48 hours under this BOA.

ALTERATIONS: Any changes to the terms and conditions of this BOA will be done by written modification and signed by the Contracting Officer. Changes or amendments to any orders issued pursuant to this BOA shall not be accepted.

PAYMENT: Payments shall be made by Purchase Card (P-Card). The Service Provider's Taxpayer Identification Number (TIN) and DUNS number must be registered in the Systems for Award Management (www.sam.gov) prior to issuance of an order.

PUBLIC DISCLOSURES: Information obtained or developed as a result of this BOA is under the control of ICE and is subject to public disclosure only pursuant to the provisions of applicable federal laws, regulations, policies, and executive orders or as ordered by a court. Insofar as any documents created by the Service Provider contain information developed or obtained as a result of this BOA, such documents shall be subject to public disclosure only pursuant to the provisions of applicable federal laws, regulations, policies, and executive orders or as ordered by a court. If the Service Provider receives a request for such information, including pursuant to state law, the Service Provider will refer the request to ICE for appropriate action. To the extent the Service Provider intends to release the BOA or any information relating to, or exchanged under, this BOA, the Service Provider agrees to coordinate with the ICE Contracting Officer prior to such release. The Service Provider may, at its discretion, communicate the substance of this BOA when requested. ICE

27

BOA No. 70CDCR18G00000001

understands that this BOA will become a public document when presented to the Service Provider's governing body for approval if required.

_____
Sheriff Bob Gualtieri
Pinellas County Sheriff's Office

_____  2/16/18
William J Quigley
Unit Chief-Contracting Officer
US Immigration and Customs Enforcement

# MEMORANDUM OF AGREEMENT

## I. PARTIES

This Memorandum of Agreement (MOA) constitutes an agreement between U.S. Immigration and Customs Enforcement (ICE), a component of the Department of Homeland Security (DHS), and the Pinellas County Sheriff's Office (PCSO), pursuant to which ICE delegates to nominated, trained, certified, and authorized PCSO personnel the authority to perform certain immigration enforcement functions as specified herein. The PCSO and ICE enter into this MOA in good faith and agree to abide by the terms and conditions contained herein.

## II. PURPOSE

The purpose of this collaboration is to promote public safety by facilitating the custodial transfer of specific aliens in PCSO's jail/correctional facilities to ICE for removal purposes at the time of the alien's scheduled release from criminal custody. This MOA sets forth the terms and conditions pursuant to which selected PCSO personnel (participating PCSO personnel) will be nominated, trained, and approved by ICE to perform certain limited functions of an immigration officer within the PCSO's jail/correctional facilities. Nothing contained herein shall otherwise limit the jurisdiction and powers normally possessed by participating PCSO personnel as members of the Pinellas County Sheriff's Office. However, the exercise of the immigration enforcement authority delegated under this MOA to participating PCSO personnel shall occur only as provided in this MOA.

## III. AUTHORITY

Section 287(g) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1357(g) (1996), as amended by the Homeland Security Act of 2002, Pub. L. No. 107-296, authorizes the Secretary of DHS to enter into written agreements with a State or any political subdivision of a State so that qualified personnel can perform certain functions of an immigration officer. Such authority has been delegated by the Secretary to ICE, and this MOA constitutes such a written agreement.

## IV. RESPONSIBILITIES

The Pinellas County Sheriff's Office is expected to pursue to completion all criminal charges that caused the alien to be taken into custody and over which it has jurisdiction. ICE will assume custody of an alien only after said individual has been released from PCSO custody.

### A. DESIGNATION OF AUTHORIZED FUNCTIONS

Approved participating PCSO personnel will be authorized to perform only those immigration officer functions set forth in the Standard Operating Procedures (SOP) in Appendix A.

### B. NOMINATION OF PERSONNEL

The Pinellas County Sheriff's Office will use due diligence to screen and nominate candidates for ICE training and approval under this MOA. All candidates must be United States citizens, have knowledge of and have enforced laws and regulations pertinent to their law enforcement activities and their jurisdictions, and have been trained on maintaining the security of PCSO's facilities, and have enforced rules and regulations governing inmate accountability and conduct.

ICE reserves the right to conduct an independent background check for each candidate. This background check requires all candidates to complete a background questionnaire. The questionnaire requires, but is not limited to, the submission of fingerprints, a personal history

1

29

questionnaire, and the candidate's disciplinary history (including allegations of excessive force or discriminatory action). ICE reserves the right to query any and all national and international law enforcement databases to evaluate a candidate's suitability to participate in the enforcement of immigration authorities under this MOA. Upon request by ICE, the Pinellas County Sheriff's Office will provide continuous access to disciplinary records of all candidates along with a written authorization by the candidate allowing ICE to have access to his or her disciplinary records.

Any expansion in the number of participating PCSO personnel or scheduling of additional training classes is subject to all the requirements of this MOA and the accompanying SOP.

## C. TRAINING OF PERSONNEL

Before participating Pinellas County Sheriff's Office personnel receive authorization to perform immigration officer functions under this MOA, they must successfully complete initial training provided by ICE on relevant administrative, legal, and operational issues tailored to the immigration enforcement functions to be performed.

Each PCSO nominee must pass a final examination with a minimum score of 70 percent to receive certification. If a PCSO nominee fails to attain a 70-percent rating on the examination, he or she will have one opportunity to review the testing material and re-take a similar examination. Failure to achieve a 70-percent rating upon retaking the final examination will result in the disqualification of the PCSO nominee and discharge of the nominee from training.

ICE will review the training requirements annually, reserves the right to amend them, and may require additional training as needed.

## D. CERTIFICATION AND AUTHORIZATION

Upon successful completion of initial training, PCSO personnel shall be deemed "certified" under this MOA.

ICE will certify in writing the names of those PCSO personnel who successfully complete training and pass all required test(s). Upon receipt of the certification, the ICE Field Office Director (FOD) in The Miami Field Office will provide the participating PCSO personnel a signed authorization letter allowing the named PCSO personnel to perform specified functions of an immigration officer. ICE will also provide a copy of the authorization letter to the Pinellas County Sheriff's Office. ICE will also execute ICE Form 70-006, Designated Immigration Officer. Only those certified PCSO personnel who receive authorization letters and ICE Form 70-006 issued by ICE and whose immigration enforcement efforts are overseen by ICE may conduct immigration officer functions described in this MOA.

Along with the authorization letter and ICE Form 70-006, ICE will issue the certified PCSO personnel official immigration officer credentials. Participating PCSO personnel shall carry their ICE-issued credentials while performing immigration officer functions under this MOA. Such credentials provided by ICE shall remain the property of ICE and shall be returned to ICE upon termination of this agreement, when a participating PCSO employee ceases his/her participation, or when deemed necessary by the FOD in The Miami Field Office.

2

30

Authorization of participating PCSO personnel to act pursuant to this MOA may be withdrawn at any time and for any reason by ICE and must be memorialized in a written notice of withdrawal identifying an effective date of withdrawal and the personnel to whom the withdrawal pertains. Such withdrawal may be effectuated immediately upon notice to the Pinellas County Sheriff's Office. The PCSO and the FOD in The Miami Field Office will be responsible for notification of the appropriate personnel in their respective agencies. The termination of this MOA shall constitute immediate revocation of all immigration enforcement authorizations delegated hereunder.

The Pinellas County Sheriff's Office will make every attempt, where practicable, to provide ICE with a 90 day notice if participating PCSO personnel cease their participation in the program, so that appropriate action can be taken in accordance with ICE policies, including inventorying and retrieval of credentials, and training replacement personnel as needed.

### E. COSTS AND EXPENDITURES

The Pinellas County Sheriff's Office is responsible for personnel expenses, including, but not limited to, salaries and benefits, local transportation, and official issue material. ICE will provide instructors and training materials. The Pinellas County Sheriff's Office is responsible for the salaries and benefits, including any overtime, of all of its personnel being trained or performing duties under this MOA and of those personnel performing the regular functions of the participating PCSO personnel while they are receiving training. The Pinellas County Sheriff's Office will cover the costs of all PCSO personnel's travel, housing, and per diem affiliated with the training required for participation in this MOA. ICE is responsible for the salaries and benefits of all of its personnel, including instructors and supervisors.

If ICE determines the training provides a direct service for the Government and it is in the best interest of the Government, the Government may issue travel orders to selected personnel and reimburse travel, housing, and per diem expenses only. The Pinellas County Sheriff's Office remains responsible for paying salaries and benefits of the selected personnel.

The Pinellas County Sheriff's Office is responsible for providing all administrative supplies (e.g. printer toner) necessary for normal office operations. The PCSO is also responsible for providing the necessary security equipment, such as handcuffs, leg restraints, etc.

### F. ICE SUPERVISION

Immigration enforcement activities conducted by participating PCSO personnel will be supervised and directed by ICE. Participating PCSO personnel are not authorized to perform immigration officer functions except when working under the supervision or direction of ICE. Additional supervisory and administrative responsibilities are specified in Appendix A.

The actions of participating PCSO personnel will be reviewed by ICE officers on an ongoing basis to ensure compliance with the requirements of the immigration laws and procedures and to assess the need for individual training or guidance.

For purposes of this MOA, ICE officers will provide supervision of participating PCSO personnel only to immigration enforcement functions as authorized in this MOA. The Pinellas County Sheriff's Office retains supervision of all other aspects of the employment of and performance of duties by participating PCSO personnel.

In the absence of a written agreement to the contrary, the policies and procedures to be utilized by the participating PCSO personnel in exercising these delegated authorities under this MOA shall be DHS and ICE policies and procedures. ICE is responsible for providing the Pinellas County

3

31

Sheriff's Office with the applicable DHS and ICE policies. However, when engaged in immigration enforcement activities, no participating PCSO personnel will be expected or required to violate or otherwise fail to maintain the PCSO's rules, standards, or policies, or be required to fail to abide by restrictions or limitations as may otherwise be imposed by law.

If a conflict arises between an order or direction of an ICE officer or a DHS or ICE policy and the PCSO's rules, standards, or policies, the conflict shall be promptly reported to the points of contact in Section VII. who shall attempt to resolve the conflict.

### G. INTERPRETATION SERVICES

Participating PCSO personnel will provide an opportunity for aliens with limited English language proficiency to request an interpreter. Qualified foreign language interpreters will be provided by the Pinellas County Sheriff's Office, as needed.

The Pinellas County Sheriff's Office will maintain a list of qualified interpreters or companies it contracts with to provide such interpreters. A qualified interpreter, which may include PCSO personnel, means an interpreter who can interpret effectively, accurately, and impartially, using any specialized vocabulary. If an interpreter is used when a designated officer is performing functions under this MOA, the interpreter must be identified, by name, in records by annotating on the Warrant for Arrest of Alien or the Warrant of Removal/Deportation.

### H. LIABILITY AND RESPONSIBILITY

Except as otherwise noted in this MOA or allowed by Federal law, and to the extent required by 8 U.S.C. § 1357(g)(7) and (8), the Pinellas County Sheriff's Office will be responsible and bear the costs of participating PCSO personnel with regard to their property or personal expenses incurred by reason of death, injury, or incidents giving rise to liability.

Participating PCSO personnel will be treated as Federal employees only for purposes of the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1), 2671-2680, and worker's compensation claims, 5 U.S.C. § 8101 et seq., when performing a function on behalf of ICE as authorized by this MOA. *See* 8 U.S.C. § 1357(g)(7); 28 U.S.C. § 2671. In addition, it is the understanding of the parties to this MOA that participating PCSO personnel will enjoy the same defenses and immunities from personal liability for their in-scope acts that are available to ICE officers based on actions conducted in compliance with this MOA. *See* 8 U.S.C. § 1357(g)(8).

Participating PCSO personnel named as personal-capacity defendants in litigation arising from activities carried out under this MOA may request representation by the U.S. Department of Justice. *See* 28 C.F.R. § 50.15. Absent exceptional circumstances, such requests must be made in writing. PCSO personnel who wish to submit a request for representation shall notify the local ICE Office of the Chief Counsel at U.S. Department of Homeland Security, Orlando Office of Chief Counsel, 3535 Lawton Rd., Ste. 100, Orlando, FL 32803 (Phone: 407-812-3600). The Office of the Chief Counsel in turn will notify the ICE Headquarters Office of the Principal Legal Advisor (OPLA), which will assist PCSO personnel with the request for representation, including the appropriate forms and instructions. Unless OPLA concludes that representation clearly is unwarranted, it will forward the request for representation, any supporting documentation, and an advisory statement opining whether: 1) the requesting individual was acting within the scope of his/her authority under 8 U.S.C. § 1357(g); and, 2) such representation would be in the interest of the United States, to the Director of the Constitutional and Specialized Tort Litigation Section, Civil Division, Department of Justice (DOJ). Representation is granted at the discretion of DOJ; it is not an entitlement. *See* 28 C.F.R. § 50.15.

4

The Pinellas County Sheriff's Office agrees to cooperate with any Federal investigation related to this MOA to the full extent of its available powers, including providing access to appropriate databases, personnel, individuals in custody and documents. Failure to do so may result in the termination of this MOA. Failure of any participating PCSO employee to cooperate in any Federal investigation related to this MOA may result in revocation of such individual's authority provided under this MOA. The Pinellas County Sheriff's Office agrees to cooperate with Federal personnel conducting reviews to ensure compliance with the terms of this MOA and to provide access to appropriate databases, personnel, and documents necessary to complete such compliance review. It is understood that information provided by any PCSO personnel under threat of disciplinary action in an administrative investigation cannot be used against that individual in subsequent criminal proceedings, consistent with *Garrity v. New Jersey*, 385 U.S. 493 (1967), and its progeny.

As the activities of participating PCSO personnel under this MOA are undertaken under Federal authority, the participating PCSO personnel will comply with Federal standards and guidelines relating to the Supreme Court's decision in *Giglio v. United States*, 405 U.S. 150 (1972), and its progeny, which govern the disclosure of potential impeachment information about possible witnesses or affiants in a criminal case or investigation.

The Pinellas County Sheriff's Office and ICE are each responsible for compliance with the Privacy Act of 1974, 5 U.S.C. §552a, DHS Privacy Act regulations, 6 C.F.R. §§ 5.20-5.36, as applicable, and related system of records notices with regard to data collection and use of information under this MOA.

## I. CIVIL RIGHTS STANDARDS

Participating PCSO personnel are bound by all Federal civil rights laws, regulations, and guidance relating to non-discrimination, including the U.S. Department of Justice "Guidance for Federal Law Enforcement Agencies Regarding the Use of Race, Ethnicity, Gender, National Origin, Religion, Sexual Orientation, or Gender Identity," dated December 2014, Executive Order 13,166, "Improving Access to Services for Persons with Limited English Proficiency," (Aug. 2000), Title VI of the Civil Rights Act of 1964, as amended, 42. U.S.C. 2000 et seq., which prohibits discrimination based upon race, color, or national origin (including limited English proficiency) in any program or activity receiving Federal financial assistance, Section 504 of the Rehabilitation Act of 1973, which prohibits discrimination based on disability and requires the Pinellas County Sheriff's Office to provide effective communication to individuals with disabilities, and Title II of the Americans with Disabilities Act of 1990, which also prohibits discrimination based on disability and requires the Pinellas County Sheriff's Office to provide effective communication to individuals with disabilities.

## V. REPORTING AND DOCUMENTATION

### A. COMPLAINT PROCEDURES

The complaint reporting procedure for allegations of misconduct by participating PCSO personnel, including activities undertaken under the authority of this MOA, is included in Appendix B.

### B. COMMUNICATION

The FOD in The Miami Field Office and the Pinellas County Sheriff's Office shall make every effort to meet at least annually to ensure compliance with the terms of this MOA. When necessary, ICE and the Pinellas County Sheriff's Office may limit the participation of these meetings in regard to non-law enforcement personnel. The attendees will meet in The Miami Field Office at locations to be agreed upon by the parties, or via teleconference. To the extent practicable, an initial review

5

meeting between ICE and the Pinellas County Sheriff's Office should be held approximately nine to 12 months after certification of the initial class of participating PCSO personnel.

### C. COMMUNITY OUTREACH

The Pinellas County Sheriff's Office will, if necessary, engage in Steering Committee meetings to assess the immigration enforcement activities conducted by the participating PCSO personnel, and to ensure compliance with the terms of this MOA.

### D. RELEASE OF INFORMATION TO THIRD PARTIES

The Pinellas County Sheriff's Office may, at its discretion, communicate the substance of this agreement to organizations and groups expressing an interest in the law enforcement activities to be engaged in under this MOA. It is the practice of ICE to provide a copy of this MOA, only after it has been signed, to requesting media outlets; the Pinellas County Sheriff's Office is authorized to do the same.

The Pinellas County Sheriff's Office hereby agrees to coordinate with ICE prior to releasing any information relating to, or exchanged under, this MOA. For releases of information to the media, the PCSO must coordinate in advance of release with the ICE Office of Public Affairs, which will consult the ICE Privacy Office for approval prior to any release. The points of contact for ICE and the PCSO for this purpose are identified in Appendix C. For releases of information to all other parties, the Pinellas County Sheriff's Office must coordinate in advance of release with the applicable FOD in The Miami Field Office.

Information obtained or developed as a result of this MOA, including any documents created by the Pinellas County Sheriff's Office that contain information developed or obtained as a result of this MOA, is under the control of ICE and shall not be disclosed unless: 1) permitted by applicable laws, regulations, or executive orders; and 2) the Pinellas County Sheriff's Office has coordinated in advance of release with (a) the ICE Office of Public Affairs, which will consult the ICE Privacy Office for approval, prior to any release to the media, or (b) an ICE officer prior to releases to all other parties. PCSO's questions regarding the applicability of this section to requests for the release of information shall be directed to an ICE officer.

Nothing herein limits PCSO's compliance with state public records laws regarding those records that are solely state records and not ICE records.

### VI.     MODIFICATIONS TO THIS MOA

Modifications to this MOA must be proposed in writing and approved and signed by both parties. Modification to Appendix A shall be done in accordance with the procedures outlined in the SOP.

### VII.    POINTS OF CONTACT

ICE and the PCSO points of contact (POCs) for purposes of this MOA are:

For the PCSO:        Colonel, Department of Detention and Corrections

For DHS:             The Miami Field Office Director

### VIII.   EFFECTIVE DATE AND TERMINATION OF THIS MOA

This MOA becomes effective upon signature of both parties and will remain in effect until either party, upon 90-day written notice to the other party, provides notice of termination or suspension

6

34

of the MOA. A termination or suspension notice by ICE shall be delivered personally or by certified or registered mail to the POC of Pinellas County Sheriff's Office and termination or suspension shall take effect 90-days after receipt of such notice, unless exigent circumstances involving public safety dictate otherwise. Notice of termination or suspension by the Pinellas County Sheriff's Office shall be given to the FOD in The Miami Field Office and termination or suspension shall take effect 90-days after receipt of such notice, unless exigent circumstances involving public safety dictate otherwise.

This MOA does not, is not intended to, shall not be construed to, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any person in any matter, civil or criminal.

By signing this MOA, each party represents it is fully authorized to enter into this MOA, accepts the terms, responsibilities, obligations, and limitations of this MOA, and agrees to be bound thereto to the fullest extent allowed by law.

Date: _____       Date: ___4/22/19___


_____             _____
Director or designee                Bob Gualtieri
U.S. Immigration and Customs Enforcement   Sheriff, Pinellas County
Department of Homeland Security

7

35

## APPENDIX A

### STANDARD OPERATING PROCEDURES (SOP)

The purpose of this appendix is to establish standard, uniform procedures for the implementation and oversight of the program within the FOD area of responsibility. This appendix can be modified only in writing and by mutual acceptance of ICE and the Pinellas County Sheriff's Office.

Pursuant to this MOA, the PCSO has been delegated authorities as outlined below. This MOA is designed to facilitate the custodial transfer of designated aliens in PCSO's jail/correctional facilities to ICE within 48 hours of alien's release from criminal custody.

**Authorized Functions:**

Participating PCSO personnel are only delegated the two authorities listed below:

- The power and authority to serve and execute warrants of arrest for immigration violations, 8 U.S.C. § 1357(a) and 8 C.F.R. § 287.5(e)(3), on designated aliens in PCSO's jail/correctional facilities at the time of the alien's scheduled release from criminal custody in order to transfer custody of the alien to ICE; and

- The power and authority to serve warrants of removal, 8 U.S.C. § 1357(a) and 8 C.F.R. §§ 241.2(b)(2), 287.5(e)(3), on designated aliens in PCSO's jail/correctional facilities at the time of the alien's scheduled release from criminal custody that executes the custodial transfer of the alien to ICE for removal purposes.

Upon transfer of the alien's custody to ICE, the alien will continue to be held in the PCSO's jail/correctional facilities for no more than 48 hours unless there exists an agreement pursuant to which the Pinellas County Sheriff's Office will continue to detain, for a reimbursable fee, aliens for immigration purposes. In the absence of an agreement, if the alien is not transferred to an ICE field office or an immigration detention facility within 48 hours, the alien shall be released from the PCSO's jail/correctional facility.

**Additional Supervisory and Administrative Responsibilities:**

The above immigration enforcement functions conducted by the participating PCSO personnel will be supervised and directed by ICE. Participating PCSO personnel are not authorized to perform immigration officer functions except when working under the supervision or direction of ICE. Additional supervisory and administrative responsibilities for each entity include, but are not limited to:

- The Pinellas County Sheriff's Office shall provide notification to the ICE officer immediately after participating PCSO personnel serve any warrant of arrest or warrant of removal that executes the custodial transfer of the alien to ICE for removal purposes, in a manner mutually agreed upon by the PCSO and the FOD in The Miami Field Office.

- The Pinellas County Sheriff's Office must report all encounters with asserted or suspected claims of U.S. citizenship to the FOD in The Miami Field Office through their chain of command immediately, but, absent unforeseen exigent circumstances, in no case more than one hour of the claim, in a manner mutually agreed upon by the Pinellas County Sheriff's Office and the FOD.

8

36

**APPENDIX B**

**COMPLAINT PROCEDURE**

The training, supervision, and performance of participating PCSO personnel pursuant to the MOA, as well as the protections for U.S. citizens' and aliens' civil and constitutional rights, are to be monitored. Part of that monitoring will be accomplished through the complaint reporting and resolution procedures, which the parties to the MOA have agreed to follow.

Complaints filed against those personnel in the course of their non-immigration duties will remain the domain of the PCSO and be handled in accordance with the PCSO's applicable rules, policies, and procedures.

If any participating PCSO personnel are the subject of a complaint or allegation involving the violation of the terms of this MOA or a complaint or allegation of any sort that may result in that individual receiving professional discipline or becoming the subject of a criminal investigation or civil lawsuit, the Pinellas County Sheriff's Office shall, to the extent allowed by State law, make timely notification to an ICE officer within 48 hours, excluding weekends, of the existence and nature of the complaint or allegation. The results of any internal investigation or inquiry connected to the complaint or allegation and the resolution of the complaint shall also be reported to an ICE officer, as established by ICE. It is the responsibility of the ICE officer to ensure notification is made to the ICE Office of Professional Responsibility (OPR) via the Joint Intake Center (JIC) at JointIntake@cbp.dhs.gov. Complaints regarding the exercise of immigration enforcement authority by participating PCSO personnel shall be handled as described below.

The Pinellas County Sheriff's Office will also handle complaints filed against PCSO personnel who are not designated and certified pursuant to this MOA but are acting in immigration functions in violation of this MOA. Any such complaints regarding non-designated PCSO personnel acting in immigration functions must be forwarded to the ICE officer. It is the responsibility of the ICE officer to ensure notification is made to JIC.

In order to simplify the process, complaints against participating PCSO personnel relating to their immigration enforcement can be made according to the procedures outlined below.

**1. Complaint and Allegation Reporting Procedures**

Complaint reporting procedures shall be disseminated by the Pinellas County Sheriff's Office within facilities under its jurisdiction (in English and other languages as appropriate) in order to ensure that all individuals are aware of the availability of such procedures. Such material must include up-to-date contact information necessary to file the complaint.

Complaints will be accepted from any source (e.g., ICE, Pinellas County Sheriff's Office, participating PCSO personnel, inmates, and the public).

Complaints can be reported to Federal authorities as follows:

A. Telephonically to the ICE OPR at the Joint Intake Center (JIC) in Washington, D.C., at the toll-free number 1-877-246-8253, email JointIntake@cbp.dhs.gov, or

9

37

B.  Via mail as follows:
>   Department of Homeland Security
>   U.S. Immigration and Customs Enforcement
>   Office of Professional Responsibility
>   P.O. Box 14475
>   Pennsylvania Avenue NW
>   Washington D.C. 20044

## 2.  Review of Complaints

All complaints or allegations (written or oral) reported to the Pinellas County Sheriff's Office directly that involve PCSO personnel with ICE delegated authority will be reported to ICE OPR via the JIC. ICE OPR will verify participating personnel status under the MOA with the assistance of the ICE Headquarters. Complaints received by any ICE entity will be reported directly to ICE OPR as per existing ICE policies and procedures.

ICE OPR, as appropriate, will make an initial determination regarding ICE investigative jurisdiction and refer the complaint to the appropriate ICE office for action as soon as possible, given the nature of the complaint.

Complaints reported directly to ICE OPR will be shared with the PCSO's Internal Investigations Unit when the complaint involves PCSO personnel. Both offices will then coordinate appropriate investigative jurisdiction, which may include initiation of a joint investigation to resolve the issue(s).

## 3.  Complaint and Allegations Resolution Procedures

Upon receipt of any complaint or allegation, ICE OPR will undertake a complete review of each complaint in accordance with existing ICE allegation criteria and reporting requirements. Complaints will be resolved using the existing procedures, supplemented as follows:

A.  Referral of Complaints or Allegations to the PCSO's Internal Investigations Unit.

The ICE OPR will refer complaints, as appropriate, involving PCSO personnel to the PCSO's Professional Standards Bureau.  The PSB Captain will inform ICE OPR of the disposition and resolution of any complaints or allegations against PCSO's participating officers.

B.  Interim Action Pending Complaint Resolution

When participating PCSO personnel are under investigation for any reason that could lead to disciplinary action, demotion, or dismissal, or are alleged to have violated the terms of this MOA, ICE may suspend or revoke an individual's immigration enforcement authority and have that individual removed from participation in the activities covered under the MOA.

C.  Time Parameters for Resolution of Complaints or Allegations

It is expected that any complaint received will be resolved within 90 days of receipt. However, this will depend upon the nature and complexity of the substance of the complaint itself.

D. Notification of Resolution of a Complaint or Allegation

ICE OPR will coordinate with the PCSO's Internal Investigations Unit to ensure notification as appropriate to the JIC, the subject(s) of a complaint, and the person filing the complaint regarding the resolution of the complaint.

These Complaint Reporting and Allegation Procedures are ICE's internal policy and may be supplemented or modified by ICE unilaterally. ICE will provide PCSO with written copies of any such supplements or modifications. These Complaint Reporting and Allegation Procedures apply to ICE and do not restrict or apply to other investigative organizations within the federal government.

11

39

## APPENDIX C

## PUBLIC INFORMATION POINTS OF CONTACT

Pursuant to Section V(D) of this MOA, the signatories agree to coordinate appropriate release of information to the media, provided the release has been previously approved by both the ICE Privacy Officer and Public Affairs Officer, regarding actions taken under this MOA before any information is released. The points of contact for coordinating such activities are:

For the Pinellas County Sheriff's Office:

Public Affairs Officer
Public Relations Bureau
Pinellas County Sheriff's Office
10750 Ulmerton Rd.
Largo, FL 33778
727-582-6221


For ICE:

Public Affairs Office
Office of Public Affairs and Internal Communication
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
Washington, DC 20536
202-732-4242

12

40