## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

| | | |
|---|---|---|
| CITY OF SOUTH MIAMI, *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-22927-BB |
| | ) | |
| RON DESANTIS, IN HIS OFFICIAL | ) | |
| CAPACITY AS GOVERNOR OF THE | ) | |
| STATE OF FLORIDA, *et al.,* | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

---

## STATEMENT OF INTEREST OF
## THE UNITED STATES OF AMERICA

---

JOSEPH H. HUNT
*Assistant Attorney General*
U.S. Department of Justice, Civil Division

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section

EREZ REUVENI
*Assistant Director*

LAUREN C. BINGHAM
*Senior Litigation Counsel*

ARCHITH RAMKUMAR
*Trial Attorney*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 598-8060
Fax: (202) 305-7000
Email: Archith.Ramkumar@usdoj.gov

*Counsel for the United States of America*

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND .................................................................................................................2

ARGUMENT......................................................................................................................7

I.  None of the Challenged Provisions of SB 168 are Field Preempted...........................................8

II. None of the Challenged Provisions of SB 168 Are Conflict Preempted..................................14

CONCLUSION.................................................................................................................16

i

## TABLE OF AUTHORITIES

### Cases

*Application of Blondin v. Dubois*, 78 F. Supp. 2d 283 (S.D.N.Y. 2000) ....................................... 1

*Arizona v. United States*, 567 U.S. 387 (2012) ........................................................ *passim*

*C.F.C. v. Miami-Dade County*, 349 F. Supp. 3d 1236 (S.D. Fla. 2018) ....................................... 10

*Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992) .................................................... 16

*City of El Cenizo, Texas v. Texas,* 890 F.3d 164 (5th Cir. 2018) ............................................ *passim*

*Clark v. Suarez Martinez*, 543 U.S. 371 (2005) ........................................................... 2

*Creedle v. Miami-Dade County*, 349 F. Supp. 3d 1276 (S.D. Fla. 2018) ..................................... 10

*De Canas v. Bica*, 424 U.S. 351 (1976) ................................................................. 8

*Estrada v. Becker*, 917 F.3d 1298 (11th Cir. 2019) ........................................................ 8

*Fresenius Med. Care Holdings, Inc. v. Tucker*, 704 F.3d 935 (11th Cir. 2013) ........................... 14

*Freund v. Republic of France*, 592 F. Supp. 2d 540 (S.D.N.Y. 2008) (Sullivan, J.), *aff'd sub nom. Freund v. Societe Nationale des Chemins de fer Francais*, 391 F. App'x 939 (2d Cir. 2010)... 1

*Georgia Latino Alliance for Human Rights v. Governor of Ga.*, 691 F.3d 1250 (11th Cir. 2012)
.................................................................................................. 12

*Hughes v. Att'y Gen. of Fla.*, 377 F.3d 1258 (11th Cir. 2004) .......................................... 8, 9

*Rios v. Jenkins*, No. 3:18cv0082, 2019 WL 3070632 (W.D. Va. July 15, 2019) ......................... 10

*Roman v. Ashcroft*, 340 F.3d 314 (6th Cir. 2003) ....................................................... 3

*Tenorio-Serrano v. Driscoll*, 324 F. Supp. 3d 1053 (D. Ariz. 2018) .................................... 10, 11

*Utah Coalition of La Raza v. Herbert*, 26 F. Supp. 3d 1125 (D. Utah 2014) .................... 13, 14, 15

### Statutes

28 U.S.C. § 517 ........................................................................................ 1

28 U.S.C. § 518 ........................................................................................ 1

28 U.S.C. § 518(b) ..................................................................................... 1

6 U.S.C. § 211 ........................................................................................................................... 4

8 U.S.C. § 1101 ......................................................................................................................... 2

8 U.S.C. § 1103(a)(11) ............................................................................................................ 15

8 U.S.C. § 1103(a)(11)(A) ................................................................................................... 3, 15

8 U.S.C. § 1103(a)(3) ................................................................................................................ 4

8 U.S.C. § 1226 ......................................................................................................................... 4

8 U.S.C. § 1226(a) ................................................................................................................. 2, 4

8 U.S.C. § 1226(c)(1) ................................................................................................................ 2

8 U.S.C. § 1231 ......................................................................................................................... 4

8 U.S.C. § 1231(a) ..................................................................................................................... 4

8 U.S.C. § 1231(a)(1)(A) ........................................................................................................... 2

8 U.S.C. § 1357 ......................................................................................................................... 5

8 U.S.C. § 1357(a)(1) ................................................................................................................ 2

8 U.S.C. § 1357(d) ..................................................................................................................... 4

8 U.S.C. § 1357(g) ..................................................................................................................... 2

8 U.S.C. § 1357(g)(1) ................................................................................................................ 3

8 U.S.C. § 1357(g)(10) ....................................................................................................... 3, 8, 9

8 U.S.C. § 1357(g)(10)(B) ....................................................................................................... 14

8 U.S.C. § 1357(g)(3) ................................................................................................................ 3

8 U.S.C. § 1373 ......................................................................................................................... 5

## Regulations

8 C.F.R. § 236.1 ........................................................................................................................ 4

8 C.F.R. § 241.2 ........................................................................................................................ 4

8 C.F.R. § 287.5 ........................................................................................................................ 4

8 C.F.R. § 287.7(a)............................................................................................................... 4

## <u>Other Authorities</u>

Florida Senate Bill 168 ("SB 168") ......................................................................... *passim*

**INTRODUCTION**

The United States respectfully submits this Statement of Interest in accordance with federal statutes that authorize the United States Department of Justice "to attend to the interests of the United States" by "argu[ing] any case in a court of the United States in which the United States is interested."  28 U.S.C. §§ 517, 518(b).[1]

This Statement of Interest explains why the recently enacted Florida law SB 168 is lawful. SB 168 bars local entities from adopting or having in effect sanctuary policies that impede information-sharing allowed under federal law, *see* section 908.103; it mandates compliance with immigration detainers issued by federal immigration agencies, *see* section 908.105(c); it allows transport of individuals subject to immigration detainers from state to federal custody, *see* section 908.104(4); and it requires each county correctional facility to enter into an agreement with a federal immigration agency for temporarily housing persons who are the subject of immigration detainers, *see* section 908.106.   These provisions ensure that state and local law enforcement cooperate with federal immigration enforcement efforts. Without such cooperation, removable aliens who have committed crimes would be released into local communities, where it is harder and more dangerous to take custody of them and where they may commit more crimes.

---

[1] Under 28 U.S.C. § 517, "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States ... ."  *See also* 28 U.S.C. § 518 (authorizing Attorney General to send Department attorneys to argue such cases).  These statutes provide a mechanism for the United States to submit its views in cases in which the United States is not a party.  *See, e.g.*, *Application of Blondin v. Dubois*, 78 F. Supp. 2d 283, 288 n.4 (S.D.N.Y. 2000); *see also Freund v. Republic of France*, 592 F. Supp. 2d 540, 568 (S.D.N.Y. 2008) (Sullivan, J.), *aff'd sub nom. Freund v. Societe Nationale des Chemins de fer Francais*, 391 F. App'x 939 (2d Cir. 2010) (affording deference to the United States' Statement of Interest "because of both its source and the persuasiveness of its reasoning").

Critical to the pending preliminary injunction motion, SB 168 is not preempted.  Because the law does not authorize unilateral local immigration enforcement, and instead provides only that state and local law enforcement cooperate once a predicate federal request for action has issued, SB 168 does not run afoul of the Supremacy Clause.[2]

## BACKGROUND

Legal Background.  The federal government has "broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012).  This includes the authority to interview, arrest, and detain removable aliens.  *See, e.g.*, 8 U.S.C. § 1226(a) (Secretary of Homeland Security may issue administrative arrest warrants and may arrest and detain aliens pending a decision on removal); *id.* § 1226(c)(1) (Secretary "shall take into custody" aliens who have committed certain crimes when "released"); *id.* § 1231(a)(1)(A), (2) (Secretary may detain and remove aliens ordered removed during removal period); *id.* § 1357(a)(1), (2) (authorizing certain warrantless interrogations and arrests).[3]

In enforcing the immigration laws, the federal government works closely with state and local governments.  The Immigration and Nationality Act (INA), 8 U.S.C. § 1101, *et seq.*, contemplates these cooperative efforts, which are critical to enabling the federal government to identify and remove the many aliens who violate immigration laws each year.  There are three such primary categories of cooperation.

First, the INA authorizes the Department of Homeland Security (DHS) to enter into cooperative agreements with States and localities, *see* 8 U.S.C. § 1357(g), known as "287(g)

---

[2] This Statement of Interest does not address Plaintiffs' vagueness arguments.

[3] Following the Homeland Security Act of 2002, many references in the Immigration and Nationality Act to the "Attorney General" are now read to mean the Secretary. *Clark v. Suarez Martinez*, 543 U.S. 371, 374 n.1 (2005).

agreements," under which state and local officers may, "subject to the direction and supervision of the [Secretary]," *id.* § 1357(g)(3), perform the "function[s] of an immigration officer in relation to the investigation, apprehension, or detention of aliens." *Id.* § 1357(g)(1).

Second, Congress has authorized DHS to enter into agreements, known as intergovernmental services agreements (IGSAs), with localities for the "housing, care, and security of persons detained by [DHS] pursuant to Federal law." 8 U.S.C. § 1103(a)(11)(A). Under an IGSA, DHS has arrested the detainee and the alien is in DHS's custody, but DHS temporarily houses the detainee in a local facility. *See, e.g.*, *Roman v. Ashcroft*, 340 F.3d 314, 320-21 (6th Cir. 2003).

Third, and most critical to this case, even without a formal 287(g) agreement or an IGSA, States and localities such as those in the State of Florida may "communicate with the [Secretary] regarding the immigration status of any individual" or "cooperate with the [Secretary] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States," 8 U.S.C. § 1357(g)(10), when that cooperation is pursuant to a "request, approval, or other instruction from the Federal Government," *Arizona*, 567 U.S. at 410. Such cooperation may include, but is not limited to: "participat[ing] in a joint task force with federal officers"; "provid[ing] operational support in executing a warrant"; "allow[ing] federal immigration officials to gain access to detainees held in state facilities"; "arrest[ing] an alien for being removable" when the federal government requests such cooperation; and "responding to requests for information about when an alien will be released from their custody." *Id.* The INA permits such cooperation whether it is directed by state statute or is implemented *ad hoc* by a local sheriff. *See id.* at 413. To comply with the Supremacy Clause, which invalidates intrusions on the federal government's broad immigration authority, a state or local government may not cooperate beyond the terms of

the federal government's "request, approval, or other instruction." *Id.* at 403. Thus, compliance with directives issued by the federal government is essential to the lawfulness of the local action.

States and localities frequently cooperate with federal immigration enforcement by responding to federal requests for assistance, often contained in federal immigration detainers, including those issued by U.S. Immigration and Customs Enforcement (ICE), a component of DHS responsible for immigration enforcement in the interior of the country.[4] An immigration detainer notifies a State or locality that ICE intends to take custody of a removable alien who is detained in state or local custody, and asks the State or locality to cooperate with ICE in that effort. A detainer asks a State or locality to cooperate in two main respects: (1) by providing ICE with advance notification of the alien's release date; and (2) by maintaining custody of the alien for up to 48 hours, based on ICE's determination that it has probable cause to believe that the alien is removable, until DHS can take custody. *See* 8 C.F.R. § 287.7(a) (describing notification of release), (d) (describing request for continued detention).[5] As of April 2, 2017, ICE policy requires that detainers be accompanied by signed administrative warrants. Those warrants—either a Form I-200, Warrant for Arrest of Alien (issued for aliens not yet subject to a removal order under 8 U.S.C. § 1226) or a Form I-205, Warrant of Removal/Deportation (issued for aliens subject to a final removal order under 8 U.S.C. § 1231)—are issued by an executive immigration officer and sets forth the basis for that officer's probable cause determination. *See* 8 C.F.R. §§ 236.1, 241.2, 287.5 (describing officers who may issue such warrants and when). A detainer and warrant

---

[4] U.S. Customs and Border Protection, another DHS component, also issues detainers in certain situations. 6 U.S.C. § 211. This Statement of Interest addresses only ICE detainers. ICE requires probable cause to believe that an alien is removable from the United States to issue a detainer for that alien.

[5] Statutes authorizing such action include 8 U.S.C. §§ 1103(a)(3), 1226(a) and (c) , 1231(a) , and 1357(d).

authorize a locality to temporarily detain aliens who are otherwise scheduled for release.

SB 168.  SB 168, enacted into law on June 14, 2019, embodies a policy of cooperation with federal immigration enforcement.  The specific provisions that are the subject of this lawsuit are described below.

First, the law defines a "Sanctuary Policy," as a "law, policy, practice, procedure, or custom adopted by or allowed by state entity or local governmental entity which prohibits or impedes a [state] law enforcement agency from complying with 8 U.S.C. § 1373 [which proscribes government officials from restricting communication and information sharing regarding the citizenship or immigration status of any individual] or which prohibits or impedes a law enforcement agency from communicating or cooperating with a federal immigration agency so as to limit such law enforcement agency in, or prohibit the agency from: (a) [c]omplying with an immigration detainer; (b) [c]omplying with a request from a federal immigration agency to notify the agency before the release of an inmate or detainee in the custody of the law enforcement agency; (c) [p]roviding a federal immigration agency access to an inmate for interview; (d) [p]articipating in any program or agreement authorized under section 287 of the Immigration and Nationality Act, 8 U.S.C. § 1357; or (e) [p]roviding a federal immigration agency with an inmate's incarceration or release date."  Section 908.102(6).  The law defines an immigration detainer as a "facially sufficient written or electronic request issued by a federal immigration agency using that agency's official form to request that another law enforcement agency detain a person based on probable cause to believe that the person to be detained is a removable alien under federal immigration law ... along with a warrant" issued using the "Form I-200 Warrant for Arrest of Alien or a Form I-205 Warrant of Removal/Deportation or a successor warrant or other warrant authorized by federal law."  Section 908.102(2)(c).  A "law enforcement agency" is a state agency

5

"charged with enforcement of state, country, municipal, or federal laws or with managing custody of detained persons in this state." Section 908.102(4).

Next, section 908.103 provides that "[a] state entity, law enforcement agency, or local governmental entity may not adopt or have in effect a sanctuary policy."

Section 908.104, titled "Cooperation with federal immigration authorities," meanwhile, provides that a "law enforcement agency shall use best efforts to support the enforcement of federal immigration law," and applies to an official, representative, agent, or employee of the entity or agency only when he or she is acting within the scope of his or her official duties or within the scope of his or her employment." Section 908.104(1). As part of these cooperative efforts, "[w]hen a county correctional facility or the Department of Corrections receives verification from a federal immigration agency that a person subject to an immigration detainer is in the law enforcement agency's custody, the agency may securely transport the person to a federal facility in this state or to another point of transfer to federal custody outside the jurisdiction of the law enforcement agency." Section 908.104(4). Prior "judicial authorization" is required "before securely transporting an alien to a point of transfer outside of this state." *Id.*

Section 908.105 outlines relevant "[d]uties related to immigration detainers," which include "comply[ing] with the requests made in the immigration detainer" after verifying that the "immigration detainer is in accordance with section 908.102(2)." Section 908.105(c).

Finally, section 908.106 provides that "[e]ach county correctional facility shall enter into an agreement or agreements with a federal immigration agency for temporarily housing persons who are the subject of immigration detainers and for the payment of the costs of housing and detaining those persons. A compliant agreement may include any contract between a correctional facility and a federal immigration agency for housing or detaining persons subject to immigration

6

detainers," including "agreements authorized by section 287 of the [INA]."

This Lawsuit.   Plaintiffs in this action are the City of South Miami and a number of organizations that purport to provide services to immigrants.  *See* Compl. ¶¶ 21-131.  Plaintiffs allege that the City of South Miami will face lawsuits as a result of SB 168, in large measure because the City has a policy providing that "immigration detainers will not be honored as a matter of course," *id.* ¶ 26, and further allege that the various organizations who are named Plaintiffs will have their respective missions impeded by SB 168.  *See id.* ¶¶ 32-131.  The nine-count complaint alleges that SB 168 violates the Supremacy Clause, as well as the Due Process and Equal Protection Clauses of the Fourteenth Amendment.  *See id.* ¶¶ 239-385.

On the same day they filed their complaint, Plaintiffs filed a preliminary injunction motion seeking to "enjoin sections 908.102(6), 908.103, 908.104(1), 908.104(4), 908.105(1), and 908.106" of SB 168 "on constitutional grounds." Dkt. 5-1 ("Mot.") 1.  The preliminary injunction motion contends that the provisions outlined above are preempted and void for vagueness, *see id.* at 1-15, and that the Plaintiffs will face irreparable harm without preliminary relief because members of the Plaintiff organizations will "fear contact[ing] ... local law enforcement" and are "required to divert organizational resources from core mission activities." *Id.* at 16-17.

## ARGUMENT

Cooperation with the federal government's immigration enforcement efforts—at the request and direction of the federal government—is constitutional.  As the Fifth Circuit held in rejecting a challenge to a substantially similar state law, *see City of El Cenizo, Texas v. Texas*, 890 F.3d 164 (5th Cir. 2018), this Court should hold that SB 168 is not preempted because rather than authorizing unilateral local immigration enforcement, it lawfully ensures that state and local law enforcement act consistent with predicate federal requests.

7

**I. None of the Challenged Provisions of SB 168 are Field Preempted.**

A state law is field preempted where a "framework of regulation" exists that is "so pervasive … that Congress left no room for the States to supplement it" or where there is a "federal interest … so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Arizona*, 567 U.S. at 400. The boundaries of a particular field are ascertained by examining "the federal statute itself, read in the light of its constitutional setting and its legislative history." *Estrada v. Becker*, 917 F.3d 1298, 1306 (11th Cir. 2019). The standard for demonstrating field preemption is exacting, and requires the "complete ouster of state power including state power to promulgate laws not in conflict with federal laws was the clear and manifest purpose of Congress." *De Canas v. Bica*, 424 U.S. 351, 357 (1976). Courts "should not infer field preemption simply because the agency's regulations are comprehensive." *Hughes v. Att'y Gen. of Fla.*, 377 F.3d 1258, 1267 (11th Cir. 2004).

Nothing in SB 168 is field preempted. The INA expressly contemplates state and local aid to federal immigration enforcement of the sort required by SB 168. The INA provides that "[n]othing in this subsection [governing the performance of immigration officer functions by state officers and employees] shall be construed to require an agreement under this subsection in order for any officer or employee of a State or political subdivision of a State (A) to communicate with the Attorney General regarding the immigration status of any individual, including reporting knowledge that a particular alien is not lawfully present in the United States; or (B) otherwise to cooperate with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." 8 U.S.C. § 1357(g)(10). Section 1357(g)(10) "severely undercut[s]" any argument for field preemption because the statutory provision "contemplate[s] the enforcement of state laws regarding the type of conduct" in the relevant field:

8

immigration enforcement. *Hughes*, 377 F.3d at 1267.

The Fifth Circuit rejected virtually identical field preemption arguments to those made here because section 1357(g)(10) "expressly allows cooperation in immigration enforcement" of the sort contemplated by SB 168. *El Cenizo*, 890 F.3d at 177; *see also id.* at 178 ("[T]he savings clause [*i.e.*, section 1357(g)(10)] allowing cooperation without a 287(g) agreement indicates that some state and local regulation of cooperation is permissible."). By itself, then, section 1357(g)(10) precludes a finding of field preemption in this case. In addition, the anti-commandeering principles enshrined in the Tenth Amendment "prevents Congress from compelling [state] municipalities to cooperate in immigration enforcement," a conclusion that makes it "impossible" to conclude that "Congress has occupied the field that [SB 168] regulates," since "Congress could not pass a *federal* [SB 168]." *El Cenizo*, 890 F.3d at 178 (emphasis in original).

Plaintiffs contend that sections 908.104(4), 908.105(1), and 908.106 are field preempted because according to Plaintiffs' reading of *Arizona*, "Congress has enacted only three, limited circumstances when state or local [officers] are permitted to make ... civil immigration arrests and detention." Mot. 4 (citing *Arizona*, 567 U.S. at 408). This assertion reflects a profound misunderstanding of the holding in *Arizona*. *Arizona* did list "example[s]" of permissible state regulation of immigration enforcement, and specifically delineated: (1) 287(g) agreements; (2) authority under section 1103(a)(10) in the event of an "imminent mass influx of aliens arriving off the coast of the United States"; and (3) authority to arrest in specific circumstances after consultation with the Federal Government under section 1252c. *See Arizona*, 567 U.S. at 408-09; Mot. 4. These examples, however, are not exhaustive, and *Arizona* did not purport to list every single permissive example of state regulation of immigration enforcement. And Plaintiffs' view

9

of *Arizona* is inconsistent with section 1357(g)(10) as the Fifth Circuit recognized in *El Cenizo* in concluding that the statute "expressly allows cooperation in immigration enforcement outside" the specific instances highlighted in *Arizona*. 890 F.3d at 177. Plaintiffs do not grapple with *El Cenizo* other than to contend that the "Texas statute at issue in *El Cenizo* ... also made a clear exception for instances where proof of citizenship or lawful immigration status were present." Mot. 8. The Fifth Circuit, however, did not rely on either of these attributes in conducting its preemption analysis, and Plaintiffs do not contend otherwise. Plaintiffs' unsubstantiated assertion that "the INA leaves no room for additional pathways for local and state law enforcement to make immigration arrests," Mot. 5, is incorrect and irreconcilable with section 1357(g)(10).[6]

Indeed, Plaintiffs overlook that the basis for the relevant preemption finding in *Arizona* was not that the statute in question touched on the field of immigration enforcement, but rather "because it granted local officers authority to conduct *unilateral* warrantless arrests of aliens suspected of being removable." *El Cenizo*, 890 F.3d at 179 (emphasis added); *see also Rios v. Jenkins*, No. 3:18cv0082, 2019 WL 3070632, at *8 (W.D. Va. July 15, 2019) ("*Arizona* addressed the viability of unilateral arrests by state law enforcement officers ... . Significantly, however, [cooperation with federal immigration detainers] does not involve a state or local law enforcement officer's unilateral decision."); *Tenorio-Serrano v. Driscoll*, 324 F. Supp. 3d 1053, 1065 (D. Ariz. 2018) ("[T]he Court is not persuaded ... that § 1357(g) prohibits Defendants from complying with

---

[6] For this reason, the United States respectfully submits that the conclusions in *Creedle v. Miami-Dade County*, 349 F. Supp. 3d 1276 (S.D. Fla. 2018), and *C.F.C. v. Miami-Dade County*, 349 F. Supp. 3d 1236 (S.D. Fla. 2018)—in which the court found that the Plaintiffs stated plausible Fourth Amendment claims based on the County's cooperation with ICE detainers—that section 1357(g)(10) cannot be "read to allow local law enforcement to [detain] individuals for civil immigration violations at the request of ICE," *Creedle*, 349 F. Supp. 3d at 1304; *C.F.C.*, 349 F. Supp. 3d at 1359, are incorrect as they stem from the same erroneous reading of section 1357(g)(10). *See El Cenizo*, 890 F.3d at 179-80.

detainers.  Defendants' policy does not authorize Sheriff officers to unilaterally investigate, apprehend, or detain persons for immigration violations.  Rather, it authorizes the Sheriff to cooperate with a request from ICE ... . This conduct appears to fall within § 1357(g)(10(B).").

Similarly, SB 168, like the Texas statute challenged in *El Cenizo*, permits state and local immigration enforcement only if there is a prior federal request for cooperation.  *See* Section 908.104(4) ("When a county correctional facility or the Department of Corrections receives verification from a federal immigration agency that a person subject to an immigration detainer is in the law enforcement agency's custody, the agency may securely transport the person ... ."); Section 908.105(1) ("A law enforcement agency that has custody of a person subject to an immigration detainer issued by a federal immigration agency shall ... ."); Section 908.106 ("Each county correctional facility shall enter into an agreement or agreements with a federal immigration agency for temporarily housing persons who are the subject of immigration detainers ... .").  By contrast, the state law at issue in *Arizona* criminalized immigration-related conduct at the state level without any previous federal request, the quintessential example of unilateral state activity. *See Arizona*, 567 U.S. at 400 ("Section 3 of S.B. 1070 creates a new state misdemeanor.  It forbids the willful failure to complete or carry an alien registration document."); *id.* at 403 ("§ 5(C) enacts a state criminal prohibition where no federal counterpart exists."); *id.* at 407 ("Section 6 of S.B. 1070 provides that a state officer, without a warrant, may arrest a person if the officer has probable cause to believe ... [the person] has committed any public offense that makes [him] removable from the United States.").  SB 168 is materially different: it does not sanction any state immigration enforcement activity without an explicit federal request.[7]  *See El Cenizo*, 890 F.3d at 180 ("[T]he

---

[7] An additional reason to distinguish the law at issue in *Arizona* is that SB 168 does not authorize warrantless immigration enforcement—or even cooperation with an immigration detainer—

11

Supreme Court [in *Arizona*] did not suggest that the states' requirements conflicted with the congressional desire for *voluntary* cooperation." (emphasis in original)).

Plaintiffs further heavily rely on *Georgia Latino Alliance for Human Rights v. Governor of Ga.*, 691 F.3d 1250 (11th Cir. 2012) in an attempt to bolster their field preemption arguments. Specifically, Plaintiffs assert that *Georgia Latino Alliance* stands for the proposition that field preemption applies because "Congress has clearly expressed more than a peripheral concern with when and by whom an individual can be arrested and detained for a civil immigration violation." Mot. 3, 5 (internal quotations omitted).  In that case, however, the Eleventh Circuit held that one section of a Georgia law—which "created three distinct state criminal violations: (1) transporting or harboring an illegal alien, (2) concealing or harboring an illegal alien, and (3) inducing an illegal alien to enter the state of Georgia"—was preempted because the INA "provide[d] a comprehensive framework" to regulate all three offenses without a "savings clause permitting state regulation in the field." *Id.* at 1263-64.  In other words, the Georgia law invalidated in *Georgia Latino Alliance* was the paradigmatic example of unilateral state immigration criminalization and enforcement and was undertaken without any predicate federal request for cooperation, placing the law outside the scope of section 1357(g)(10).  By contrast, the challenged provisions of SB 168 are valid pursuant to an explicit savings clause—section 1357(g)(10)—and, more importantly, none of the challenged provisions involve state regulation proceeding without federal approval.  Indeed, the conclusion in *Georgia Latino Alliance* is unremarkable given the holding in *Arizona*, which also proscribed unilateral state immigration enforcement.

Plaintiffs' remaining field preemption arguments fare no better.  They contend that in order

without an accompanying administrative warrant, either the Form I-200 or the Form I-205.  *See* Section 908.102(c).

12

to carry out immigration enforcement activity, "state and local law enforcement must have proper authorization under the INA." Mot. 6. But SB 168 provides for the very authorization Plaintiffs allude to in the form of federal immigration detainers. *See* Section 908.105. Finally, Plaintiffs argue that section 908.104(4) is field preempted because "the INA occupies the fields of when and by whom an individual can be subjected to a civil immigration arrest and detention ... including transportation across state lines." Mot. 8. But that argument does not account for importation limitations on state activity delineated in section 908.104(4), which ensure that this section is consistent with federal law. Specifically, state or local law enforcement must first "receive verification from a federal immigration agency that a person subject to an immigration detainer is in the law enforcement agency's custody," and, once that verification is received, can only transport the person in question either to a "federal facility in this state or to another point of transfer to federal custody outside the jurisdiction of the law enforcement agency." *Id.* The text of this provision thus makes clear that interstate transfer only occurs as part of cooperation with federal immigration enforcement. Accordingly, because section 908.104(4) does not allow the "local official" to act either "independently" or "unilaterally when transporting an illegal alien to a federal detention facility," but instead requires the "local official [to] obtain a detainer before transporting an illegal alien to a federal detention facility," section 908.104(4) "neither creates an obstacle to the accomplishment of federal immigration policy, nor makes compliance with both the overall scheme and state law impossible." *Utah Coalition of La Raza v. Herbert*, 26 F. Supp. 3d 1125, 1141 (D. Utah 2014); *see also id.* ("La Raza contends that [the state law] is preempted from regulating the detention and transport of unlawful aliens in any way. Yet ... [because] federal law specifically provides for state participation in federal immigration enforcement," since "such participation is statutorily permitted, even under limited circumstances, then it cannot be said to

13

be field preempted.").

## II. None of the Challenged Provisions of SB 168 Are Conflict Preempted.

Plaintiffs' conflict preemption arguments fail as well.  Conflict preemption "arises in instances where (1) compliance with both federal and state regulations is a physical impossibility; or (2) the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Fresenius Med. Care Holdings, Inc. v. Tucker*, 704 F.3d 935, 939 (11th Cir. 2013).  The ultimate question is whether the state law erects an "unconstitutional obstacle to federal law." *Id.*  As with field preemption, a "party alleging conflict preemption" must surpass a "high threshold." *Id.*

Once again, the "savings clause in 8 U.S.C. § 1357(g)(10)(B), which explicitly provides that a 287(g) agreement is *not* required for state 'otherwise to cooperate ... in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States'" is fatal to any conflict preemption arguments, because "[t]his provision indicates that Congress intended local cooperation without a formal agreement in a range of key enforcement functions." *El Cenizo*, 890 F.3d at 179 (emphasis added).  It is impossible to conclude that SB 168 makes compliance with federal law an impossibility or improperly stands as an obstacle to Congressional objectives when the very conduct it authorizes has been blessed by Congress. *See id.*

Plaintiffs contend that cooperation with federal immigration detainers under section 908.105(1) is conflict preempted because it allows arrests outside of a "287(g) Agreement" and allows "state and local law enforcement" to "exercise broader power to make warrantless arrests than federal immigration agents themselves have."  Mot. 6-7.  This argument relies on two erroneous assumptions: (1) that 287(g) agreements constitute the exclusive means by which state or local law enforcement can cooperate with federal immigration enforcement, which is simply

14

contrary to the text of section 1357(g)(10), *see El Cenizo*, 890 F.3d at 179; and (2) that SB 168 authorizes warrantless activity, when in fact it defines immigration detainers, the subject of section 908.105, as being issued by a federal immigration agency "based on probable cause" and accompanied by warrants, *see* Section 908.102(c).  Plaintiffs also reiterate their argument that section 908.104(4) is conflict preempted "because it interferes with the transport of immigration arrestees and the use of immigration detention space," Mot. 8, but Plaintiffs again ignore that transportation occurs only after receiving confirmation from a federal immigration agency that the person in question is subject to an immigration detainer, and that the transportation is incident to the federal agency obtaining custody.  *See* Section 908.104(4); *Herbert*, 26 F. Supp. 3d at 1142 ("[T]he local official must obtain a detainer before transporting the individual to such a facility ... . Thus, because the regulation neither creates an obstacle to the accomplishment of federal immigration policy, nor makes compliance with both the overall scheme and state law impossible, there is no conflict preemption.").

Finally, Plaintiffs argue that section 908.106 conflicts with federal law because by stating that county correctional facilities shall "enter into an agreement ... for the payment of costs of housing persons who are the subject of immigration detainers," the provision "poses an obstacle to the federal scheme, which grants the federal government discretion regarding detention contracts." Mot. 9.  The provision that Plaintiffs rely on, 8 U.S.C. § 1103(a)(11), belies this claim. That provision specifically authorizes the Secretary "to make payments from funds appropriated for the administration and enforcement of the laws relating to immigration ... for ... the housing, care, and security of persons detained by the Service pursuant to Federal law under an agreement with a State or political subdivision of a state."  8 U.S.C. § 1103(a)(11)(A).  Section 908.106 is consistent with this directive, as it simply allows for reimbursement of costs relating to the

15

temporary housing of individuals "who are the subject of [federal] immigration detainers." Plaintiffs' interpretation of section 908.106 as "mandat[ing] that the federal government enter into contracts with every Florida law enforcement agency for detention," Mot. 9, is also inconsistent with the remainder of the statute, which does not allow state or local officials to bind the federal government in any way. Instead, the better reading of section 908.106 is that it simply mandates that state and local law enforcement agencies seek reimbursement, with the federal government ultimately able to still exercise its case-by-case discretion to decline reimbursement requests. *See Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 518 (1992) ("[W]e must construe these provisions in light of the presumption against the pre-emption of state ... regulations."). And Plaintiffs' argument that section 908.106 frustrates "Congress' intent to not be liable for costs associated with 287(g) Agreements," Mot. 9, again fails to account for the fact that state immigration enforcement activity outside of 287(g) agreements, like section 908.106, is both authorized and permissible, and thus any limits on 287(g) agreements are not relevant here.

**CONCLUSION**

Because SB 168 instructs state law enforcement agencies to cooperate with federal immigration enforcement efforts, and does not allow unilateral state immigration enforcement, it is neither field nor conflict preempted.

Dated: August 15, 2019                    Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section

EREZ REUVENI
Assistant Director

16

LAUREN C. BINGHAM
Senior Litigation Counsel

By: */s/ Archith Ramkumar*
ARCHITH RAMKUMAR
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 598-8060
Fax: (202) 305-7000
Email: Archith.Ramkumar@usdoj.gov

*Counsel for the United States of America*

17

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed with the Court's

CM/EF system, which provides notice to all parties, on this 15th day of August, 2019.

>> */s/ Archith Ramkumar*
>> ARCHITH RAMKUMAR
>> Trial Attorney