**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**Case No. 1:19-CV-22927-BLOOM/Louis**

CITY OF SOUTH MIAMI, ET AL.,

      Plaintiffs,

v.

RON DESANTIS, ET AL.,

      Defendants.

**PLAINTIFFS' RESPONSE TO THE
<u>STATEMENT OF INTEREST OF THE U.S. GOVERNMENT</u>**

Plaintiffs hereby respond to the United States Government's Statement of Interest ("Statement") filed in this action on August 15, 2019 suggesting that SB 168 is lawful. DE 23. The Statement argues that the provisions of SB 168 that Plaintiffs are challenging in this action are not field or conflicted preempted because state and local enforcement will not be acting unilaterally under SB 168 but pursuant to federal authority under the "cooperation" clause at 8 U.S.C. § 1357(g)(10). Plaintiffs respond that neither the cooperation clause nor any other provision of the Immigration and Nationality Act ("INA") authorizes local law enforcement to arrest and transport people for immigration violations. The United States does not contest that federal law occupies the fields of 1) when and by whom an individual can be arrested and detained for a civil immigration violation; and 2) how state and local law enforcement may be authorized to carry out the functions of federal immigration agents.

**I.** **This Case Involves Arrests, Not Cooperation, and Administrative Warrants, Not Judicial Warrants.**

The United States, like Defendants, use the word "cooperation" when referring to the prolonging of a person's custody after their criminal case has come to an end, avoiding the word "arrest." But neither the United States nor Defendants dispute that the detentions at issue in this lawsuit are arrests and that these arrests must be *federally* authorized to be lawful. *Morales v. Chadbourne*, 793 F.3d 208, 217 (1st Cir. 2015) (citing *Illinois v. Caballes*, 543 U.S. 405, 407-08 (2005)).

The United States argues that SB 168 only authorizes arrests made pursuant to warrants issued by Immigration and Customs Enforcement ("ICE"). DE 23 at 11-12, n. 7. However, ICE warrants are administrative warrants issued by immigration enforcement officials. They are not judicial warrants. ICE's administrative warrants provide no authority for state and local officials to make immigration arrests. These warrants are neither directed to, nor confer authority on, state and local officials to make immigration arrests. ICE administrative warrants are directed only to immigration officers.[1] Moreover, administrative warrants can provide no greater source of authority than exists in the INA. Under the INA, only certain types of immigration officers can execute immigration warrants. *See* 8 U.S.C. §§ 1226(a), 1357(a)(2) and discussion *infra* at 6; *see also* 8 C.F.R. § 287.5(e)(3). Unless there is a federal statutory source of authority for state and local officers to make immigration arrests, the existence of an administrative warrant does nothing to make immigration arrests by state and local officials lawful.

---

[1] *See* discussion *infra* notes 2-3 and accompanying text.

**II.     The Detainer Mandate and Transport and Reimbursement Provisions Are Both Field and Conflict Preempted.**

The United States does not dispute that the INA occupies the fields of 1) when and by whom an individual can be arrested and detained for a civil immigration violation; and 2) how state and local law enforcement may be authorized to carry out the functions of federal immigration agents. DE 23 at 13-14; *see also* DE 5-1 at 4 (Plaintiffs' description of the preempted fields). The United States instead misstates the asserted field as "immigration enforcement." DE 23 at 8. Plaintiffs have not argued that the field of immigration enforcement as a whole is preempted or that the cooperation contemplated by Congress is impermissible. Rather, Plaintiffs argue that the INA occupies the narrower fields of how state and local law enforcement become authorized to arrest and transport people. SB 168 rejects the Congressional framework and creates its own authorization for immigration arrest, detention, and transport by undeputized local officers. Such an attempt is impermissible in every application.

With respect to conflict preemption, the United States argues that SB 168's detainer mandate, transport provision, and reimbursement provision do not stand as an obstacle to the INA because the arrests and other local action mandated by these provisions are undertaken upon request by ICE officials. The United States' argument fails because SB 168's provisions must be authorized by Congress, not just by immigration enforcement officials.

With respect to both field and conflict preemption, the United States rests its argument on the claim that the "cooperation" clause at 8 U.S.C. § 1357(g)(10) authorizes local officials to carry out immigration arrests and transport, if requested by ICE. The United States also appears to argue that even absent authority under the INA, an administrative warrant grants arrest authority to state and local officials. The United States cites to, but does not argue, that 8 U.S.C. §§ 1103(a)(3), 1226(a) and (c), 1231(a), and 1357(d), and 8 C.F.R. § 287.7(d) each provide authority for local

authorities to make immigration arrests.

The United States is incorrect. None of these purported sources of authority permits state and local law enforcement to arrest and transport people for suspected civil immigration violations, even if ICE lodges a detainer request or an administrative warrant. The mere fact that an agent of the United States has requested local officials to arrest someone does not cloak the arrest in authority. To be lawful and not preempted, the arrest must be authorized under the INA. As a result, the United States' claim that requested arrests are authorized, and therefore not preempted, is incorrect. *See Ochoa v. Campbell*, 266 F. Supp. 3d 1237, 1254 (E.D. Wash. 2017), *appeal dismissed as moot sub nom. Sanchez Ochoa v. Campbell*, 716 F. App'x 741 (9th Cir. 2018) (stating that it is only through "formal, written agreements, and adequate training, that state and local officials can perform the functions of an immigration officer as relates to the 'investigation, apprehension, or detention' of individuals unlawfully present in the country," in part because local law enforcement officers "are *presumed* to be unqualified and unable to perform the functions of federal immigration law enforcement officers" as they pertain to civil immigration violations) (citing 8 U.S.C. § 1357(g)(1); 8 C.F.R. §§ 287.5(e)(1), (e)(2)(iii), (e)(3), (e)(4), and (f)) (emphasis in original). Congress, not local ICE officials lodging detainer requests, nor state legislators, is the source of immigration arrest authority; *see also Arizona*, 567 U.S. at 407-08 (discussing the "system Congress created").

A. **8 U.S.C. § 1357(g)(10) Provides No Arrest Authority to State and Local Officials.**

The United States argues that state and local officials can arrest people at the end of their criminal cases, upon request by ICE, because these arrests are authorized "cooperation" under 8 U.S.C. § 1357(g). DE 23 at 4. This is incorrect. While the immigration statute does authorize cooperation between federal and local officials in the enforcement of immigration law, this

4

cooperation does not include the authority to arrest and transport absent a written agreement under 8 U.S.C. §1357(g). As acknowledged by the United States, federal law provides a mechanism through section 1357(g) agreements for state and local officers to be deputized "to perform specified immigration enforcement functions relating to investigating, apprehending, and detaining aliens." DE 23 at 2-3. But the United States argues that *even absent* a section 1357(g) agreement, state and local officers can "arrest[] an alien for being removable." DE 23 at 8 (internal quotation omitted). In United States' view, the state and localities do not need a section 1357(g) agreement for their officers to make an immigration arrest, as long as an immigration officer requested the arrest. But the United States does not, and cannot, point to any statutory provision that, absent a 1357(g) agreement, authorizes non-federal officials to re-arrest people whose criminal custody has come to an end.

The United States implies that the Supreme Court in *Arizona v. United States* found that the INA authorizes arrests pursuant to detainers. DE 23 at 8 ("Such cooperation may include, but is not limited to: 'participat[ing] in a joint task force with federal officers'; 'provid[ing] operational support in executing a warrant'; 'allow[ing] federal immigration officials to gain access to detainees held in state facilities'; *'arrest[ing] an alien for being removable'* when the federal government requests such cooperation; and 'responding to requests for information about when an alien will be released from their custody.'") (emphasis added) (citing *Arizona,* 567 U.S. at 410). Contrary to the United States' contention, the Court in *Arizona never stated* that "arrest[ing] an alien for being removable" was an example of "cooperation." DE 23 at 4. Although the Court used the phrase "arrest an alien for being removable," it did so as part of its holding that "no coherent understanding" of the term "cooperation" includes a unilateral arrest by state or local officials. *Arizona*, 567 U.S. at 410. Because the Arizona statute at issue involved unilateral arrests by local

police, the Court answered the question whether such arrests fall within the meaning of section 1357(g)(10)'s cooperation clause. The Court had no reason to address the detainer scenario because *Arizona* involved police officers making unilateral arrests in the field. Indeed, the Court made clear that it was not ruling on that issue. *Arizona*, 567 U.S. at 410, 456.

Moreover, the Court's statutory analysis in *Arizona* compels the conclusion that nothing in the INA grants arrest authority to local and state police absent a 287(g) agreement. *Arizona* found that local police cannot make civil immigration arrests, except in circumstances carefully delineated under the INA. *Id.* at 410. The Court examined the "system Congress created" to enforce immigration law and emphasized the limited nature of the exceptions to the rule that federal officers enforce civil immigration law. 567 U.S. at 408. The INA authorizes federal officials to make a civil immigration arrest in the interior either (1) pursuant to an immigration arrest warrant; or (2) when the person is "likely to escape before a warrant can be obtained" and there is "reason to believe" the person has violated federal immigration laws. *Id.* at 407-08 (describing the "federal statutory structure" for "when it is appropriate to arrest an alien during the removal process"); 8 U.S.C. §§ 1226, 1231(a)(2), 1357(a)(2). Civil immigration arrests—including the execution of an administrative warrant—must be made by trained immigration officers. *Arizona*, 567 U.S. at 407-08; *see also* 8 C.F.R. § 287.5(e)(3) (requiring training to execute warrants); Form I-200, (immigration arrest warrant directed to "immigration officer[s] authorized pursuant to [INA and regulations] to serve warrants");[2] Form I-205 (immigration warrant with similar direction).[3]

The statute authorizes *non*-federal officials to make civil immigration arrests and detain non-citizens only in narrowly defined circumstances. *Arizona,* 567 U.S. at 408-09. Of the three

---

[2] *Available at* Immigration and Customs Enforcement, http://bit.ly/2zxOVRy.
[3] *Available at* Immigration and Customs Enforcement, http://bit.ly/2hZ35TY.

"limited circumstances in which local officers may perform the [civil arrest] functions of an immigration officer," only an agreement under 8 U.S.C. § 1357(g) could provide the civil arrest authority necessary to arrest and detain an individual when they would otherwise be eligible for release on state law grounds. *Creedle v. Miami-Dade County*, 349 F. Supp. 3d 1276 (S.D. Fla. 2018) (finding that "if 'otherwise cooperate' under Section 1357(g)(10), a catch-all provision, were read to allow local law enforcement to arrest individuals for civil immigration violations at the request of ICE, the training, supervision and certification pursuant to a formal agreement between DHS and state officers described in the remaining provisions of Section 1357(g) would be rendered meaningless") (citing *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (holding that the "rule against superfluities" means that "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant") (quotations and citation omitted); *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("The canon [against surplusage] is strongest when an interpretation would render superfluous another part of the same statutory scheme."); *City of Chicago v. Sessions*, 888 F.3d 272, 277, 285 (7th Cir. 2018) (holding that the Attorney General did not have authority to place certain conditions on grants to "sanctuary cities" because "[a] clause in a catch-all provision at the end of a list of explicit powers would be an odd place indeed to put a sweeping power to impose *any* conditions on *any* grants") (emphasis in original)). Section 1357(g) permits agreements whereby non-federal officials "determined by the [DHS Secretary] to be qualified" are authorized "to perform [the] function of an immigration officer" as to the "investigation, apprehension, or detention of aliens in the United States." 8 U.S.C. § 1357(g)(1); 8 C.F.R. §§ 236.1(b), 239.1, 241.2, 287.3, 287.5, 287.8 (enumerating in detail the enforcement functions of an immigration officer). The statute requires these non-federal officials to "receive[] adequate training regarding the enforcement of relevant Federal immigration laws"

and be "subject to the direction and supervision of the [DHS Secretary]." 8 U.S.C. §1357(g)(2)-(3); *Arizona*, 567 U.S. at 409; *see also United States v. Urrieta*, 520 F.3d 569, 574 (6th Cir. 2008) (interpreting 1357(g) as "stating that local law enforcement officers cannot enforce completed violations of civil immigration law (i.e., illegal presence) unless specifically authorized to do so by the Attorney General under special conditions that are not applicable in the present case"). Absent such an agreement, federal law does "not embrace detention of a person based solely on [ . . . ] an ICE detainer. Such detention exceeds the 'limited circumstances' in which state officers may enforce federal immigration law and thus violates 'the system Congress created.'" *Lopez-Aguilar v. Marion Cty. Sheriff's Dep't*, 296 F.Supp.3d 959 (S.D. Ind. 2017) (citing *Arizona*, 567 U.S. at 408).

The United States argues that the last subsection of 1357(g), section 1357(g)(10), authorizes state and local officials to make arrests at the request of ICE. DE 23 at 3-4. Section 1357(g)(10) states that no written agreement is required "for any officer or employee of a State or political subdivision of a State to communicate with the Attorney General regarding the immigration status of any individual . . . or *otherwise to cooperate* with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." 8 U.S.C. § 1357(g)(1) (emphasis added). As recognized by the Supreme Court in *Arizona*, however, "cooperation" in this context "include[s] situations where States participate in a joint task force with federal officers, provide operational support in executing a warrant, or allow federal immigration officials to gain access to detainees held in state facilities," not the outright arrest and detention of persons believed to be civil immigration violators. *Arizona*, 567 U.S. at 410; *see also id.* (characterizing local law enforcement's response to detainers *as providing notification of release rather than detention* when listing it as an example of non-federal "cooperat[ion] with the

Attorney General" permitted by the 8 U.S.C. § 1357(g)(10)(B)). Section 1357(g) agreements would be superfluous if "cooperation" extended to include the authority to arrest. *Creedle v. Miami-Dade County*, 349 F. Supp. 3d 1276, 1304 (S.D. Fla. 2018); *see also Melendres v. Arpaio*, 989 F. Supp. 2d 822, 892 (D. Ariz. 2013), *adhered to*, No. CV-07-02513-PHX-GMS, 2013 WL 5498218 (D. Ariz. Oct. 2, 2013), *aff'd in part*, *vacated in part*, 784 F.3d 1254 (9th Cir. 2015), and *aff'd*, 784 F.3d 1254 (9th Cir. 2015) ("As a local law enforcement agency without 287(g) authority, [local law enforcement] has no statutory, inherent, or constitutional authority to detain people for civil violations of federal immigration law").

Subsection (g)(10) did not expand any state or local power over immigration enforcement but only preserved the existing limited role of states and localities as collaborators in immigration enforcement. Congress enacted section 1357(g) in 1996 as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. *See* Section 133, Division C, Title I of the Omnibus Consolidated Appropriations Act of 1997, Pub.L. 104–208, 110 Stat. 3001 (Sept. 30, 1996). The first subsections, (g)(1) through (9), expanded state and local authority to enforce civil immigration law by providing *inter alia* for deputization of non-federal officers. 8 U.S.C. § 1357(g)(1); *see Arizona,* 567 U.S. at 409 (comparing § 1357(g)(2) with 8 C.F.R. § 287.5(e)(3)). Subsection (g)(10), however, did not expand non-federal authority but was enacted as a proviso to the grants of authority under subsections (g)(1) through (9). A proviso is "a clause engrafted on a preceding enactment in order to restrain or modify the enacting clause or to except something from the operation of the statute which otherwise would have been within it." 82 C.J.S. Statutes § 502. A proviso acts "to restrain or modify the enacting clause, and not to enlarge it, or to confer a power." *Id.* § 504. The proviso of subsection (g)(10) clarifies that a written agreement is not necessary for non-federal officials to participate in immigration enforcement in ways that had previously been

9

permitted. 8 U.S.C. § 1357(g)(1). *Cf. U.S. v. Locke,* 529 U.S. 89, 106–107 (2000) (declining to "give broad effect to saving clauses where doing so would upset the careful regulatory scheme established by federal law," or would upset "the established federal-state balance").

The United States is wrong to assert that section 1357(g) is not a proviso but an affirmative grant of authority to non-federal officials to make civil immigration arrests. Section 1357(g)(10)'s role as a proviso is made clear by its opening language: "Nothing in this subsection shall be construed . . . ." *See, e.g., Edward J. DeBartolo Corp. v. NLRB,* 463 U.S. 147, 149 n.2 (1983) (involving proviso stating "nothing contained in such paragraph shall be construed …."); *Postal Tel.-Cable Co. v. Tonopah & Tidewater R. Co.,* 248 U.S. 471, 474 (1919) (involving proviso stating "that nothing in this Act shall be construed…."); *United States v. Forty Barrels & Twenty Kegs of Coca Cola,* 241 U.S. 265, 275 n.2 (1916) (involving proviso stating "nothing in this act shall be construed…."). Indeed, in the limited circumstances Congress delegates civil immigration arrest authority to non-federal officials it does so clearly, expressly using the word "authorize." *See* 8 U.S.C. §§ 1357(g)(5) (referring to a 1357(g) deputized state or local officer as someone "*authorized* to perform a function under this subsection" (emphasis added); 8 U.S.C. § 1103(a)(10) (in the case of "mass influx of aliens" the Attorney General "may *authorize* any State or local law enforcement officer … to perform or exercise any of the powers, privileges, or duties conferred or imposed by this chapter or regulations issued thereunder upon officers or employees of the [immigration] Service") (emphasis added); 8 U.S.C. § 1252c ("State and local law enforcement officials are *authorized* to arrest and detain an individual who" has a felony conviction and who is unlawfully present after a prior deportation) (emphasis added); *see also Lunn v. Commonwealth*, 78 N.E.3d 1143, 1159 (Mass. 2017) (observing that "[i]n those limited instances where the [INA] affirmatively grants authority to [non-federal] officers to arrest, it does so in more explicit terms

than those in [8 U.S.C.] § 1357(g)(10)"). As the Supreme Court has repeatedly recognized, "when Congress intends to alter the 'usual constitutional balance between the States and the Federal Government,' it must make its intention to do so 'unmistakably clear in the language of the statute." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65 (1989) (citing *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 242 (1985)) (finding that "when Congress intends to alter the 'usual constitutional balance between the States and the Federal Government,' it must make its intention to do so 'unmistakably clear in the language of the statute'"); *see also United States v. Bass*, 404 U.S. 336 (1971) (explaining that "[i]n traditionally sensitive areas, such as legislation affecting the federal balance, the requirement of clear statement assures that the legislature has in fact faced, and intended to bring into issue, the critical matters involved in the judicial decision").

The United States' own written guidance on section 1357(g)(10)(B), submitted in *Arizona,* further demonstrates that non-federal officer arrests based on detainers or administrative warrants do not qualify as mere "cooperation . . . in the identification, apprehension, detention, or removal of aliens" under Section 287(g)(10)(B). *See* 567 U.S. at 410 (citing DHS, "Guidance on State and Local Governments' Assistance in Immigration Enforcement and related Matters," at 13-15). The memorandum does not list arresting suspected noncitizens on detainers as an example of cooperation. To the contrary, the only reference to an arrest by local authorities as an example of cooperation is "[w]here *independent* state or local law grounds provide a basis for doing so." DHS, "Guidance on State and Local Governments' Assistance in Immigration Enforcement and related Matters," at 13, https://www.dhs.gov/sites/default/files/publications/guidance-state-local- assistance-immigration-enforcement.pdf (last visited Nov. 27, 2017) (emphasis added).

The United States' own 287(g) Agreements demonstrate that the functions of immigration agents as laid out in 8 U.S.C. §§ 1357(g)(1-9) are only delegable through such agreements, or as

explicitly authorized in the INA, and are not self-executing through the cooperation clause. For example, the 287(g) Agreement with Clay County, cited by Defendants, states:

> Participating …personnel are delegated only those authorities listed below:
> - …The power and authority to… process for immigration violations any removable alien or those aliens who have been arrested for violating a Federal, State, or local offense;
> - …to serve warrants of arrest for immigration violations pursuant to 8 U.S.C. § 1357(a) and 8 C.F.R. § 287.5(e)(3);
> - …to detain and transport 8 U.S.C. § 1357(g)(1) and 8 C.F.R. § 287.5(c)(6), arrested aliens subject to removal to ICE-approved detention facilities.[4]

Such agreements would be unnecessary if the United States' interpretation of 1357(g)(10) were accurate.

**B. *El Cenizo* Did Not Hold That "Cooperation" In 8 U.S.C. § 1357(g)(10) Includes Arrest Authority.**

The United States relies extensively on the Fifth Circuit's decision in *El Cenizo*, stating that the "Fifth Circuit rejected virtually identical field preemption arguments to those made here because section 1357(g)(1) 'expressly allows cooperation in immigration enforcement.'" DE 23 at 14 (citing *City of El Cenizo, Texas v. Texas*, 890 F.3d 164 (5th Cir. 2018)). But *El Cenizo* did not hold that § 1357(g)(10) authorizes state and local officials to make arrests pursuant to detainer requests or administrative warrants. That decision only addressed whether the cooperation contemplated under § 1357(g)(10) includes Texas Government Code Section 752.053(b)(3)'s prohibition of any action that would "prohibit or materially limit" a specified official from 'assisting or cooperating with a federal immigration officer as reasonable or necessary." *City of El Cenizo, Texas v. Texas*, 890 F.3d at 174, 178. At no point did the Fifth Circuit in *El Cenizo* hold that § 1357(g)(10), or any other federal statute, authorize state and local officials to make arrests upon request by ICE. Although *El Cenizo* did address the legality of a detainer provision in the

---

[4] DE 19-2 (Memorandum of Understanding (Clay County), Appendix D, June 26, 2017).

Texas law, the Fifth Circuit's analysis was limited to whether the Fourth Amendment's "probable cause" requirement was met.[5]

**C. None of the Other INA Provisions Cited by the United States Provide Arrest or Transport Authority Except Through 287(g) Agreements.**

In a footnote, the United States cites to 8 U.S.C. §§ 1103(a)(3), 1226(a) and (c), 1231(a), and 1357(d), and 8 C.F.R. § 287.7(a) and (d) as the sources of federal law authority for state and local officials to make immigration arrests at the request of ICE. DE 23 at 4 n.5. None of these provisions, however, provide the arrest authority claimed by the United States.

8 U.S.C. § 1103(a) charges the Secretary of Homeland Security with the enforcement of the INA. Section 3 states that the Secretary "shall establish such regulations; prescribe such forms of bond, reports, entries, and other papers; issue such instructions; and perform such other acts as he deems necessary for carrying out his authority under the provisions of this chapter." Nothing in this provision addresses arrest authority. The United States does not explain why this provision is a source of authority for state and local authorities to make immigration arrests requested by ICE.

8 U.S.C. § 1226(a) is the statutory authority for the federal government to arrest and detain people for suspected violations of the INA. Although the statute refers to the "Attorney General,"

---

[5] Several courts have held that local law enforcement does not have authority to make civil immigration arrests based on an administrative ICE warrant because detaining someone past their release date is an arrest that requires probable cause of a crime, not a civil violation. *See, e.g.*, *Lunn v. Commonwealth*, 477 Mass. 517, 78 N.E.3d 1143 (2017) (local officers do not have inherent or implicit authority to arrest upon request by ICE); *Santos v. Frederick Cty. Bd. of Comm'rs*, 725 F.3d 451, 465-66 (4th Cir. 2013) (an arrest based on only immigration warrant, absent federal direction or authorization, violates the Fourth Amendment); *People ex rel. Swenson v. Ponte*, 46 Misc. 3d 273, 278 (N.Y. Sup. Ct. 2014) ("there is still no authority for a local correction commissioner to detain someone based upon a civil determination, as immigration removal orders are civil, not criminal, in nature."); *Buquer v. City of Indianapolis*, No. 1:11-CV-00708, 2013 WL 1332158, at *10-11 (S.D. Ind. Mar. 28, 2013).

it is understood as referring to the Secretary of Homeland Security.[6] It states: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." The statute makes clear that it is the federal government that has this arrest authority, stating that "the *Attorney General* may continue to detain the arrested alien; and may release the alien on bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or conditional parole." *Id.* (emphasis added). Subsection (c) of the provision is the mandatory detention provision, which also refers to the "Attorney General." Nothing in 8 U.S.C. § 1226 refers to state and local officials having arrest authority.

8 U.S.C. § 1231(a) addresses the detention of people after they have been ordered removed. The statute also talks in terms of the Attorney General. The "Attorney General shall remove the alien from the United States within a period of 90 days." And "[d]uring the removal period, the Attorney General shall detain the alien." Nowhere does the statute discuss state and local law enforcement.

The United States also cites to 8 U.S.C. § 1357(d) but does not explain how it authorizes arrests. This provision is entitled "Detainer of aliens for violation of controlled substances laws." 8 U.S.C. § 1357(d). It relates only to noncitizens "arrested by a Federal, State, or local law enforcement official for a violation of any law relating to controlled substances." *Id*. It states that if one of these officials requests the federal government "to determine promptly whether or not to

---

[6] As correctly noted by Defendants (DE 19, 2), prior to the creation of DHS, immigration enforcement was conducted by the Immigration and Nationality Service ("INS"), which was part of the Department of Justice. In 2003, the INS was abolished and many of its functions were transferred to DHS. *See La. Forestry Ass'n, Inc. v. Dep't of Labor*, 745 F.3d 653, 659 (3d Cir. 2014). Thus, in many cases, INA references to the "Attorney General" are understood to refer to the Secretary of DHS.

issue a detainer to detain the alien, the officer or employee of the Service shall promptly determine whether or not to issue such a detainer." *Id*. "If such a detainer is issued and the alien is not otherwise detained by Federal, State, or local officials, the Attorney General shall effectively and expeditiously take custody of the alien." *Id*. Nowhere does the statute authorize state or local officials to arrest a noncitizen for a suspected civil immigration violation upon the end of their criminal custody. Courts interpreting this provision have understood it as referring only to information about a person's criminal custody coming to an end, not arrest authorization. *See*, *e.g.*, *Lopez–Aguilar v. Marion County Sheriffs Department*, 296 F.Supp.3d 959, 969-70 (S.D. Ind. 2017) ("the detainer statute authorizes state communication with federal authorities," not extension of custody). In any event, this statute only applies to detainers for people with controlled substance convictions.

Defendants also reference 8 C.F.R. § 287.7(d), "describing request for continued detention," to bolster their argument that ICE's power to issue immigration detainer requests grants undeputized officers authority to carry out civil immigration arrests. DE 23 at 4. Agency actions and regulations taken *after* the INA's enactment have no bearing on the intent of Congress in a preemption analysis. Furthermore, courts have interpreted this regulation to not authorize arrest and detention, but merely to request notice of a person's release date be provided. *Villars v. Kubiatowski*, 45 F. Supp. 3d 791, 807 (N.D. Ill. 2014) (finding regulation does not authorize detention "after local custody over the detainee would otherwise end") (emphasis in original); *see also Galarza v. Szalczyk*, 745 F.3d 634, 639-40 (3rd Cir. 2014) (holding the plain language of 8 C.F.R. § 287.7 "merely authorizes the issuance of detainers as requests") (emphasis added). Any interpretation of 8 C.F.R. § 287.7 as granting federal authority to state and local law enforcement authorities to make an arrest would render the regulation ultra vires.

**D. The Reimbursement Provision Is Preempted.**

The United States argues that Section 908.106's reimbursement provision is consistent with the directive of 8 U.S.C. § 1103(a)(11) because it "simply allows for reimbursement of costs relating to the temporary housing of individuals 'who are the subject of immigration detainers.'" DE 23 at 15. This position is premised on state and local immigration enforcement outside of 287(g) agreements being permissible, something that Plaintiffs' contest. Moreover, the United States ignores the problems related to the requirement that the federal government will have to enter into contracts with every Florida law enforcement agency for detention due to SB 168. This mandate poses an obstacle to the federal scheme, which grants the federal government discretion regarding detention contracts. *See* 8 U.S.C. § 1103(a)(11). Moreover, 8 U.S.C. § 1357(g)(1) states that state and local law enforcement officers authorized under a 287(g) Agreement to carry out the functions of federal immigration agents must do so "at the expense of the State or political subdivision." The government's argument for a "better reading" that Section 908.106 only requires reimbursement ignores the state statutory language that requires local law enforcement to "enter into an agreement or agreements with a federal immigration agency for temporarily housing persons who are the subject of immigration detainers" and goes so far as to describe a "compliant" agreement. Fla. Stat. § 908.106. Section 908.106 is thus an obstacle to fulfilling Congress' intent to not be liable for costs associated with 287(g) Agreements. *See Freightliner Corp. v. Myrick,* 514 U.S. 280, 287 (1995).

Respectfully submitted,

Anne Janet Hernandez Anderson
Florida Bar No. 18092
Email: aj.hernandez@splcenter.org
Paul R. Chavez*
E-mail: paul.chavez@splcenter.org
Mich Gonzalez*

E-mail: mich.gonzalez@splcenter.org
Victoria Mesa-Estrada
Florida Bar No. 076569
Email: victoria.mesa@splcenter.org
SOUTHERN POVERY LAW CENTER
4770 Biscayne Blvd, Suite 760
Miami, FL 33137
Tel.: (786) 347-2056

Alana Greer
Florida Bar No. 92423
Email: alana@communityjusticeproject.com
Oscar Londoño
Florida Bar No. 1003044
E-mail: oscar@communityjusticeproject.com
COMMUNITY JUSTICE PROJECT, INC.
3000 Biscayne Blvd. Suite 106
Miami, Florida 33145
Tel.: (305) 907-7697 ext. 1

**By: /s/ Rebecca Sharpless**

Rebecca Sharpless
Florida Bar No. 0131024
E-mail: rsharpless@law.miami.edu
IMMIGRATION CLINIC
UNIVERSITY OF MIAMI SCHOOL OF LAW
1311 Miller Drive, E273
Coral Gables, FL 33146
Tel.: (305) 284-6092
Fax: (305) 284-6093

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed with the Court's CM/ECF

system, which provides notice to all parties, on this 4th day of September, 2019.

By: /s/ Rebecca Sharpless
REBECCA SHARPLESS