**IN THE UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**

**CITY OF SOUTH MIAMI**, *et al.*

      *Plaintiffs*,

vs.                                         CASE NO. 1:19-cv-22927-BB

**RON DESANTIS, IN HIS OFFICIAL**
**CAPACITY AS GOVERNOR OF THE**
**STATE OF FLORIDA**, *et al.*

      *Defendants*.

_____/

<u>**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**</u>

Defendants, the Governor and the Attorney General of Florida, move for dismissal of

Plaintiffs' Amended Complaint (the "Complaint"), DE 38, under Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6).

At issue in this case is the constitutionality of Senate Bill 168 ("SB 168"), a Florida statute

(1) requiring Florida law-enforcement officials to comply with requests for assistance in

immigration enforcement from the federal government and (2) prohibiting local policies restricting

that cooperation. *See* §§ 908.101 *et seq.*, Fla. Stat. An overview of SB 168, the Immigration and

Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq.*, and the relevant federal and local policies is set

out in Defendants' opposition to Plaintiffs' motion for a preliminary injunction. *See* DE 19, at 1–

5.[1] Because Plaintiffs lack standing to pursue a number of their claims and their Complaint fails to

state a claim, the Court should grant Defendants' motion.

---

[1] This overview relies on publicly available government policies, which are subject to
judicial notice. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (The court may "take
judicial notice" of "facts which are a matter of public record" without converting a "motion to

Plaintiffs, nine public interest organizations (the "Organizational Plaintiffs"), the City of South Miami (the "City"), and Philip K. Stoddard, the Mayor of the City of South Miami (the "Mayor"), advance a total of seven federal constitutional challenges:

1. The City, the Mayor, and the Organizational Plaintiffs argue that Section 908.104(1), which requires law enforcement agencies to use "best efforts to support the enforcement of federal immigration law," is unconstitutionally vague, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Count VII, DE 38, at 61–64 (the Organizational Plaintiffs); Count VIII, DE 38, at 64–66 (the City); Count IX, DE 38, at 66–69 (the Mayor).

2. The City, the Mayor, and the Organizational Plaintiffs argue that Section 908.103, which prohibits "sanctuary polic[ies]," and Section 908.102(6), which defines "sanctuary polic[ies]," are unconstitutionally vague. Count IV, DE 38, at 55–57 (the Organizational Plaintiffs); Count V, DE 38, at 57–59 (the City); Count VI, DE 38, at 59–61 (the Mayor).

3. The City and the Organizational Plaintiffs (but not the Mayor) argue that Section 908.105(1), which requires providing the federal government with assistance when the federal government requests that assistance via a detainer, is preempted by federal law. Count I, DE 38, at 46–50 (the City and the Organizational Plaintiffs).

4. The Organizational Plaintiffs (but not the City or the Mayor) argue that Section 908.104(4), which states that Florida law enforcement agencies "may" transport individuals subject to a detainer to a federal facility—rather than requiring federal officials to pick the

---

dismiss into a motion for summary judgment." (quotations omitted)); *accord N.L.R.B. v. U.S.P.S.*, 888 F.2d 1568, 1572 n.4 (11th Cir. 1989).

individual up at a state facility in all instances—is preempted by federal law. Count II, DE 38, at 50–52.

5. The Organizational Plaintiffs (but not the City or the Mayor) argue that Section 908.106, which states that "[e]ach county correctional facility shall enter into an agreement" with a federal immigration agency for "temporarily housing persons who are" subject to detainers and for "payment of the costs of housing" for those persons, is preempted by federal law. Count III, DE 38, at 52–55.

6. The Organizational Plaintiffs (but not the City or the Mayor) argue that Section 908.104(1), which requires law enforcement agencies to use "best efforts to support the enforcement of federal immigration law," violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Count X, DE 38, at 69–71.

7. The Organizational Plaintiffs (but not the City or the Mayor) argue that Section 908.103, which prohibits "sanctuary polic[ies]," violates the Equal Protection Clause. Count XI, DE 38, at 71–74.

## ARGUMENT

Plaintiffs lack standing to bring a number of their claims, and they fail to state a claim upon which relief can be granted with respect to all of their claims. Thus, the Court should dismiss their Complaint in part based on lack of subject matter jurisdiction and dismiss the remainder of their Complaint for failure to state a claim.

Under Rule 12(b)(1), the Court must dismiss the Complaint if the Complaint does not establish "a basis of subject matter jurisdiction." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d

507, 511 (5th Cir. 1980).[2] Under Rule 12(b)(6), the Court must dismiss the Complaint unless well-pleaded facts or reasonable inferences from those well-pleaded facts provide grounds for relief. *McGinley v. Houston*, 361 F.3d 1328, 1330 (11th Cir. 2004). In assessing these questions, "[i]t is not . . . proper to assume that [the Plaintiffs] can prove facts that [they] ha[ve] not alleged." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007) (quotations omitted).

I.   **THE COURT LACKS SUBJECT MATTER JURISDICTION OVER A NUMBER OF PLAINTIFFS' CLAIMS.**

To establish standing, the Plaintiffs must show (1) injury-in-fact, meaning a concrete and particularized invasion of a legally protected interest; (2) a causal connection between that injury and the complained-of conduct; and (3) redressability, meaning a favorable decision would eliminate the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The Supreme Court has also made clear that where "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation . . . of *someone else*," a stronger showing is needed, making standing "substantially more difficult" to establish. *Id.* at 562 (emphasis in original) (citations and quotations omitted).

A.   **The Organizational Plaintiffs lack standing to bring their vagueness challenges and two of their three pre-emption challenges.**[3]

Under Section 908.104(4), Florida law enforcement agencies "may" transport individuals subject to a detainer to a federal facility. And under Section 908.106, "[e]ach county correctional

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted all decisions of the Fifth Circuit before October 1, 1981.

[3] In light of the Eleventh Circuit's decision in *Ga. Latino All. for Human Rights v. Governor of Ga.*, 691 F.3d 1250 (11th Cir. 2012), Defendants do not contend that the Organizational Plaintiffs lack standing to bring their preemption challenge to Section 908.105(1). Defendants do, however, preserve for further review the argument that the holding in *Georgia Latino Alliance* should be revisited.

facility shall enter into an agreement" with a federal immigration agency for "temporarily housing persons who are" subject to detainers and for "payment of the costs of housing" for those persons. The Organizational Plaintiffs argue that these provisions are preempted by federal law.

The problem, however, is that neither provision imposes any requirement on the Organizational Plaintiffs themselves or on any of their members. Nor do the Organizational Plaintiffs explain how these provisions harm (or could harm) either themselves or their members. They only allege that Sections 908.104(4) and 908.106 inflict an injury on the federal government. But the Supreme Court has routinely rejected standing arguments based on "genera[l] . . . grievance[s]" like these. *Lujan*, 504 U.S. at 573.

Similarly, the Organizational Plaintiffs lack standing to assert their vagueness challenges. The purpose of the vagueness doctrine is to ensure adequate "notice of the required conduct to one who would *avoid . . . penalties*." *Boyce Motor Lines v. United States*, 342 U.S. 337, 340 (1952) (emphasis added).[4] As an initial matter, the purportedly deficient provisions they attack (Section 908.104(1)'s use of the phrase "best efforts" and Sections 908.103 and 908.102(6)'s ban on "sanctuary polic[ies]") prohibit no conduct by and impose no requirements on any private individual or entity. Instead, they regulate only state and local government entities and officials. For this reason, these provisions do not, and cannot, inflict any legally cognizable injury on them.

Moreover, the crux of the Organizational Plaintiffs' alleged injury-in-fact—that persons who lack lawful immigration status may be subject to greater federal immigration enforcement— is not, at its core, fairly traceable to SB 168. *See Lujan*, 504 U.S. at 560. That purported injury,

---

[4] *See also Parker v. Levy*, 417 U.S. 733, 756 (1974) (finding that a plaintiff cannot "challenge the vagueness of [laws] as they might be hypothetically applied to the conduct of others"); *Bailey v. Carter*, 15 F. App'x 245, 252 (6th Cir. 2001) (recognizing that a challenged law "does not prohibit any conduct, and [so] vagueness principles provide no basis for challenging it").

instead, is caused by the INA, and the Organizational Plaintiffs have advanced no argument that federal immigration law is unconstitutionally vague. In any event, greater susceptibility to an unchallenged, duly-enacted federal law cannot, standing alone, give rise to the constitutionally mandated injury-in-fact for purposes of Article III standing. *See Wash. v. Confederated Bands and Tribes of Yakima Indian Nation*, 439 U.S. 463, 468 n.5 (1979) (rejecting a vagueness challenge because the challenged law "create[d] no new criminal offenses but merely extend[ed] jurisdiction over certain classes of offenses defined elsewhere").

Put differently, the objections that the Organizational Plaintiffs raise to Sections 908.104(1), 908.103, and Section 908.102(6) are not fairly traceable to a Fourteenth Amendment vagueness theory. These provisions only affect the Organizational Plaintiffs insofar as they alter the enforcement discretion of state and local government entities and officials—namely, SB 168 withdraws from these officials the ability to decline to assist the federal government. But so long as the "conduct prohibited" is not vague, "the fact that there may be 'uncertainty' about" how enforcement discretion will be exercised does not give rise to a legally cognizable injury. *Kincaid v. District of Columbia*, 854 F.3d 721, 730 (D.C. Cir. 2017) (Kavanaugh, J.) (quoting *Beckles v. United States*, 137 S. Ct. 886, 893 (2017)).

**B.      The City lacks standing to bring its vagueness challenges.**

The City also argues that these provisions of SB 168 are unconstitutionally vague. The vagueness doctrine derives from the Fourteen Amendment's Due Process Clause, *see Lanzetta v. New Jersey*, 306 U.S. 451, 458 (1939), which applies only to "person[s]." U.S. Const. amend. XIV. The Supreme Court has, therefore, made clear that political subdivisions like the City have no legally cognizable due process rights under the Fourteenth Amendment. *See City of Trenton v. New Jersey*, 262 U.S. 182, 188 (1923) ("[T]he Fourteenth Amendment" does not affect "[t]he power of the state" over political subdivisions.). And because a plaintiff has standing only when

6

"the constitutional or statutory provision on which [a] claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief," *Warth v. Seldin*, 422 U.S. 490, 500 (1975), the City has "no standing to invoke . . . provisions of the Fourteenth Amendment.'" *United States v. Alabama*, 791 F.2d 1450, 1455 (11th Cir. 1986) (quoting *Coleman v. Miller*, 307 U.S. 433, 441 (1939)).

## II.   PLAINTIFFS FAIL TO STATE A CLAIM WITH RESPECT TO ALL OF THEIR CLAIMS.

Plaintiffs assert facial challenges only. DE 38, at 74. Accordingly, they must show that "no set of circumstances exists under which [SB 168] would be valid." *Horton v. City of St. Augustine*, 272 F.3d 1318, 1329 (11th Cir. 2001) (quotations omitted). This "heavy burden" is "the most difficult challenge to mount successfully." *Id.* (quotations omitted). They have failed to do so.

### A.   Congress has not preempted the field of immigration cooperation, so no part of SB 168 is barred by field preemption.

Field preemption bars all state law in a field if Congress has so pervasively regulated it that there remains "no room for the States to supplement it." *Arizona v. United States*, 567 U.S. 387, 399 (2012) (quotations omitted). Courts begin with the "presumption that Congress does not intend to supplant state law." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995) (citations omitted). Plaintiffs have not overcome that presumption.

Plaintiffs argue that, by enacting the INA, Congress intended to preclude all state law regulating "when and by whom an individual can be arrested and detained for a civil immigration violation," and "how state and local law enforcement may be authorized to carry out the functions of federal immigration agents." DE 38, at 35. But while "[e]very Act of Congress occupies some field," the Court must ascertain "the boundaries of that field before [it] can say that [Congress] has precluded a state from the exercise of any power reserved to it by the Constitution." *City of El*

*Cenizo v. Texas*, 890 F.3d 164, 177–78 (5th Cir. 2018) (quoting *De Canas v. Bica*, 424 U.S. 351, 360 n.8 (1976)). Congress did no such thing.

Plaintiffs rely, in significant part, on 8 U.S.C. § 1357 for their field preemption arguments. *See, e.g.*, DE 38, at 52; DE 5-1, at 4. Plaintiffs' position is that, other than a few narrow exceptions in the INA, the detention of aliens pursuant to a detainer requires an agreement under 8 U.S.C. § 1357(g) (a "287(g) Agreement"). But Section 1357 says the opposite: "Nothing in this subsection shall be construed to require an agreement under this subsection in order for any officer or employee of a State or political subdivision" to "cooperate . . . in the identification, apprehension, detention, or removal of aliens." 8 U.S.C. § 1357(g)(10). In other words, although Congress "did not" make cooperation between federal and state law enforcement "mandatory," it expressly disavowed any suggestion that the INA *prohibits* cooperation between federal and state law enforcement. *City of El Cenizo*, 890 F.3d. at 180–81. It cannot be said, therefore, that "the clear and manifest purpose of Congress" in passing the INA was to secure a "complete ouster of state power" in a way that would make federal immigration regulation *more* difficult. *Id.* at 176 (quoting *De Canas*, 424 U.S. at 357).

*Arizona v. United States* is consistent with this position. In that case, the Supreme Court held that states could not unilaterally *enforce* federal immigration laws *absent* a request from the federal government. SB 168, by contrast, simply requires localities to *cooperate* with the federal government when the federal government *requests* help. The Supreme Court not only recognized this distinction but also made clear that "State officials can . . . assist the Federal Government by responding to requests for information about when an alien will be released from their custody." *Arizona*, 567 U.S. at 410; *accord City of El Cenizo*, 890 F.3d at 179 (upholding a Texas statute

8

against a similar challenge because, "[u]nlike the statute in *Arizona* . . . [the challenged provision] does not authorize unilateral enforcement").[5]

### B.      Conflict preemption does not bar any portion of SB 168.

Plaintiffs argue that three separate provisions of SB 168 are conflict preempted. Because these provisions do not stand as "obstacle[s] to the accomplishment and execution of the full purposes and objectives of Congress," *Arizona*, 567 U.S. at 399 (quotations omitted), Plaintiffs are mistaken.

**A.** Section 908.105(1) requires state and local law enforcement agencies to honor detainers, which ask state and local law enforcement to notify Immigration and Customs Enforcement ("ICE") of an individual's release date and, in some cases, to hold them for an additional 48 hours. According to Plaintiffs, the INA only authorizes state and local law enforcement agencies to honor detainers if they enter a 287(g) Agreement. *See* DE 38, at 49; DE 5-1, at 6–7. That is incorrect. "Consultation between federal and state officials is an important feature of the immigration system." *Arizona*, 567 U.S. at 411. Indeed, as discussed above, Congress included an express savings clause disavowing this position. *See* 8 U.S.C. § 1357(g)(10) (explaining that no agreement is required for local governments to cooperate in the detention of aliens). In other words, the plain terms of the INA make clear that Congress sought to *facilitate*, not preempt, the system established by SB 168. *See City of El Cenizo*, 890 F.3d at 179–80 (rejecting this argument for this reason); 8 C.F.R. § 287.7(a) (explaining that ICE can issue detainers "to any . . . Federal, State, or local law enforcement agency"); 8 U.S.C. § 1357(d) (contemplating the issuance of detainers outside the context of a 287(g) Agreement).

---

[5]      *Ga. Latino All. for Human Rights v. Governor of Ga.*, 691 F.3d 1250 (11th Cir. 2012), is consistent with this position for the same reasons. *See id.* at 1263–67.

**B.** Under Section 908.104(4), Florida law enforcement agencies "may" transport removable aliens to a federal facility. Plaintiffs contend that this provision conflicts with federal law because "State and local officers . . . lack federal authority to take custody of and transport people . . . suspected [of] civil immigration violations" absent a 287(g) Agreement, DE 38, at 52, and because it "interferes with federal control of the transport of immigration arrestees and the use of immigration detention space," DE 5-1, at 8. In other words, in Plaintiffs' view, Section 908.104(4) will force state and local law enforcement agencies to transport removable aliens to federal facilities that do not wish to take custody of these individuals.

Plaintiffs' first argument, that State and local officers must have a 287(g) Agreement to assist in the transportation of aliens, fails for the same reason as their challenge to Section 908.105(1). *See* 8 U.S.C. § 1357(g)(10) (providing that a 287(g) Agreement is not required for "any officer or employee of a State or political subdivision . . . to cooperate . . . in the identification, apprehension, detention, or removal of aliens").

As to their second argument, Plaintiffs offer no evidence to support their speculative assertion that state and local officials will rely on Section 908.104(4) to frustrate, rather than assist, the federal government's immigration enforcement efforts. Indeed, the Clay County Sheriff's Office's 287(g) Agreement assumes that Clay County will "transport incarcerated aliens . . . to a facility or location" only to the extent that the facility or location is "*designated by ICE*." *See* Clay County 287(g) Agreement, at 2.[6] In any event, presuming cooperation, rather than obstruction, is consistent with the "broader context of [SB 168] as a whole." *Bautista v. Star Cruises*, 396 F.3d 1289, 1295 (11th Cir. 2005) (quotations omitted). The legislative purpose of SB 168 is to "cooperate and assist the federal government" in enforcing immigration law, § 908.101, Fla. Stat,

---

[6]     https://www.ice.gov/doclib/287gMOA/clay-fl-2017.pdf.

and the framework of SB 168 is oriented around supporting those efforts. Simply put, Section 908.104(4) can "be read to avoid the[] concerns" suggested by Plaintiffs, and the Court should not "assume [it] will be construed in a way that creates a conflict with federal law." *Arizona*, 567 U.S. at 413–15 (citations omitted). For these reasons, it is not conflict preempted.

**C.** Section 908.106 states that "county correctional facilit[ies] shall enter into an agreement" with a federal immigration agency for "temporarily housing persons who are" subject to detainers and for "payment of the costs of housing." Plaintiffs advance two objections to this provision. First, they argue that this provision "mandates that the *federal government* enter into contracts with every Florida law enforcement agency." DE 5-1, at 9 (emphasis added); *accord* DE 38, at 54. Second, they argue that 8 U.S.C. § 1357(g)(1), which allows state and local government entities to carry out Section 287(g) Agreements "at the expense of the State or political subdivision," preempts Section 908.106's mandate. DE 38, at 54 (quoting 8 U.S.C. § 1357(g)(1)). Both arguments fail.

Plaintiffs' first argument contradicts Section 908.106's plain terms, which bind county governments, not the federal government. The federal government has long enjoyed the prerogative to contract with state and local governments to defray shared immigration-enforcement costs; indeed, the record in this case shows that sheriffs across the State have entered into cost-sharing agreements with the federal government. *See* Clay County 287(g) Agreement, at 2 (describing Clay County's reimbursement agreement);[7] ICE 287(g) List (listing numerous Florida government entities with similar agreements);[8] DE 5-11, at 6 (admitting that Lake County receives $50 a day for holding removable aliens up to 48 hours). At a minimum, Section 908.106 "could

---

[7]     https://www.ice.gov/doclib/287gMOA/clay-fl-2017.pdf.

[8]     https://www.ice.gov/287g.

11

be read to avoid these concerns." *See Arizona*, 567 U.S. at 413. Because the Florida Legislature has no power to bind the federal government by passing a State law, the most natural reading of the statute is that a county government "shall" attempt to "enter into an agreement" with the federal government, while the federal government retains the ultimate right to decline the invitation. Take, for example, 5 U.S.C. § 5517(a)(2), which states that the Secretary of the Treasury "shall enter into an agreement" with States related to the withholding of taxes. This provision has been interpreted as a grant of authority to the Treasury Department, not as one issuing a command to (and therefore commandeering) the States. *See Romero v. United States*, 38 F.3d 1204, 1209–10 (Fed. Cir. 1994).[9] Such an interpretation of Section 908.106 raises no preemption concerns.

Plaintiffs' second argument—that Section 1357(g)(1) forbids reimbursement for detention pursuant to a detainer—fares no better. This provision authorizes state and local officers, "[n]otwithstanding [31 U.S.C. § 1342]," to perform "immigration officer . . . function[s]" and provides that jurisdictions "*may* carry out [these functions] at the expense of the State or political subdivision." 8 U.S.C. § 1357(g)(1) (emphasis added). This provision carves out 287(g) Agreements from 31 U.S.C. § 1342, which prohibits the "United States Government" from "accept[ing]" certain "voluntary services." In other words, Section 1357(g)(1) *authorizes* state and local governments to provide these services at their own expense, it does not, by its plain terms, prevent the federal government from reimbursing local governments. For example, a separate provision, 8 U.S.C. § 1103(a)(11), authorizes DHS to "make payments from funds appropriated for the administration and enforcement of the laws relating to immigration" for "the housing, care, and security of persons detained" by DHS in "non-Federal institutions." 8 U.S.C. § 1103(a)(11).

---

[9]     *See also Simmons v. State*, 160 Fla. 626, 629–30 (Fla. 1948) (interpreting "shall" to avoid an unconstitutional result).

The federal government's practices confirm this understanding. *See* Clay County 287(g) Agreement, at 2 (explaining that Clay County may enter an agreement with ICE whereby ICE "reimburs[es]" Clay County for "det[ention] . . . following completion of the alien's criminal incarceration").[10]

### C.     SB 168 is not unconstitutionally vague.

Plaintiffs argue that two provisions of SB 168 are unconstitutionally vague: (1) SB 168's requirement that state entities may not prohibit or "impede[]" law enforcement agencies from cooperating with the federal government in certain enumerated ways, §§ 908.103, 908.102(6), Fla. Stat.; and (2) SB 168's requirement that law enforcement use "best efforts" to cooperate with federal officials, § 908.104(1), Fla. Stat. These challenges, however, are meritless.

A civil statute is only unconstitutionally vague if it is "so indefinite as really to be no rule or standard at all." *Leib v. Hillsborough Cty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1310 (11th Cir. 2009) (quotations omitted). In making this determination, "the particular context is all important." *Am. Commc'ns Ass'n v. Douds*, 339 U.S. 382, 412 (1950). And because Plaintiffs bring only a facial challenge, they cannot succeed if "circumstances exist under which [the statute] clearly would *not* be unconstitutionally vague." *Horton v. City of St. Augustine*, 272 F.3d 1318, 1329–30 (11th Cir. 2001) (emphasis in original). The challenged provisions give fair notice of prohibited conduct. Accordingly, they are not unconstitutionally vague.

**A.** SB 168 defines a "sanctuary policy" as one that "prohibits or impedes a law enforcement agency from" cooperating with the federal government "*so as to limit*" the law enforcement agency from (1) complying with 8 U.S.C. § 1373; (2) complying with either of the two requests in a detainer; (3) entering a 287(g) Agreement; and (4) providing ICE officers with

---

[10]     https://www.ice.gov/doclib/287gMOA/clay-fl-2017.pdf.

access to inmates for an interview. § 908.102(6), Fla. Stat. (emphasis added). Plaintiffs allege that the term "impedes," in this context, is an "indeterminate, internally incoherent, and amorphous, standard[]." DE 38, at 57. The word "impede," however, has a plain meaning—"to interfere with or get in the way of the progress of" something. *Webster's Third New International Dictionary*, at 1132.

SB 168, moreover, does not leave unadorned the term "impedes." Rather, as discussed above, it limits its application to policies that operate "so as to limit" four specific forms of cooperation. In this context, it cannot be said that this provision is "so indefinite as really to be no rule or standard at all." *Leib*, 558 F.3d at 1310 (quotations omitted). The Fifth Circuit recently upheld a similar provision against a vagueness challenge. *See City of El Cenizo*, 890 F.3d at 190–91 (upholding, in a facial vagueness challenge, a prohibition on local policies that "materially limit[]" immigration enforcement).[11]

**B.** Plaintiffs also challenge Section 908.104(1)'s requirement that law enforcement agencies use "best efforts" to assist federal immigration enforcement. The phrase "best efforts" is used throughout the Florida Code.[12] Defendants are aware of only one case addressing this question, wherein the Alaska Supreme Court found that "best efforts" is not unconstitutionally vague. *See Allen v. Alaska Dep't of Revenue*, 2005 WL 3445483, at *7 (Alaska 2005).

---

[11] Plaintiffs' suggestion that they "have no idea whether their policies" comply with *8 U.S.C. § 1373* does not help their challenge to *SB 168* because Plaintiffs have neither challenged Section 1373, nor do they allege that it is unconstitutionally vague. *See* DE 5-1, at 15.

[12] *See* § 741.315(3)(b), Fla. Stat. ("the sheriff shall use best efforts to ascertain whether the order was served"); *id.* § 672.306(2) ("the seller [shall] use best efforts to supply the goods"); *id.* § 760.06(7) ("the commission shall have [the power] to use its best efforts" to eliminate discrimination); *id.* § 548.058(1) (participants in boxing matches shall use "best efforts" and "strive earnestly to win"); *id.* § 215.4725(2)(a) (the State Board of Administration shall use "best efforts to identify" companies that boycott Israel).

14

As with the term "impedes," "best efforts" is elucidated with context. ICE policies are publicly available documents that are well-known to cooperating jurisdictions. *See* DE 19, at 17. These policies clarify what cooperation ICE wants (and does not want) from state and local governments. *See id.*

In their memorandum in support of their motion for a preliminary injunction, Plaintiffs offered only contract-interpretation cases finding that the term "best efforts" can cause confusion. DE 5-1, at 10. But "vagueness" in contract law and "vagueness" in contravention of the Due Process Clause are not equivalent. In contract law, a court must determine whether the parties had a mutual understanding of a contractual provision. *See* Restatement (Second) of Contracts § 33 (1981).[13] Here, Plaintiffs can establish constitutional vagueness only if they can show that Section 908.104(1) has *no* standard and is vague in every conceivable application. They cannot.

Even if Plaintiffs' contract-interpretation cases had some relevance (and they do not), these cases demonstrate that the term "best efforts" in this context is not vague. Plaintiffs recognize that "best efforts" clauses pass muster where context provides sufficient clarity on how to measure compliance. *See* DE 5-1, at 10 ("best efforts" clauses are not invalid where "there are objective criteria present by which to judge whether the proper effort has been made" (quoting *Gates v. Johnson Worldwide Assocs., Inc.*, 2002 WL 663586, at *4 (N.D. Ill. 2002))); *accord Hinc v. Lime-O-Sol Co.*, 382 F.3d 716, 721 (7th Cir. 2004). In this case, that context is provided by ICE's well-known policies with respect to requested cooperation from State and local governments. *See* DE 19, at 17.

---

[13] Courts sometimes refer to this inquiry as one of "vagueness," but it has no relationship to constitutional vagueness. *See, e.g.*, *SSE Security Equip., Inc. v. Comco Sys., Inc.*, 2005 WL 8158573, at *3–4 (N.D. Ala. 2005).

Plaintiffs have also suggested that Section 908.104(1) is vague because, in their view, no one can tell whether it applies to all Florida government entities "or just towards law enforcement agencies." *See* DE 5-1, at 13. But the plain terms of Section 908.104(1) demonstrate that the latter interpretation is the correct one—"[a] *law enforcement agency* shall use best efforts." § 908.104(1), Fla. Stat. (emphasis added). The provision goes on to explain that it only "applies to [employees] of the entity or agency" (i.e., the "law enforcement agency") "when he or she is acting within the scope of his or her official duties." *Id.* § 908.104(1). This provision simply clarifies that employees of law enforcement agencies are only bound by Section 908.104(1) in their official capacities.

For the foregoing reasons, the challenged provisions are not vague. In any event, to the extent there is ambiguity at the margins of any of these challenged provisions, the nuances of interpretation in any specific context are better left to as-applied challenges—"the basic building blocks of constitutional adjudication." *City of El Cenizo*, 890 F.3d at 191 (quoting *Gonzales v. Carhart*, 550 U.S. 124, 168 (2007)).

### D.     SB 168 does not violate the Equal Protection Clause.

Plaintiffs do not dispute the hornbook legal principle that a law's disparate impact on a particular group is insufficient to establish an Equal Protection violation. *See Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272 (1979); *Washington v. Davis*, 426 U.S. 229, 239 (1976). Instead, they suggest that the "best efforts" provision, § 908.104(1), Fla. Stat., and the provision banning "sanctuary polic[ies], *id.* § 908.103, "allow[] discrimination" and that they were "enacted with the intent and purpose to harm and discriminate against racial and national origin minorities." DE 38, at 71–73.

Plaintiffs' argument that SB 168 authorizes unlawful discrimination is belied by the plain text of SB 168. Section 908.109 expressly prohibits unlawful discrimination. *See* § 908.109, Fla.

Stat. The suggestion that SB 168 will *cause* that which it *forbids* is implausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must . . . state a claim to relief that is plausible on its face." (quotations omitted)). Further, to the extent Plaintiffs argue that SB 168 will lead to treating unlawfully present persons differently than lawfully present persons, any such treatment is built into the federal immigration system, not SB 168. This is why the Eleventh Circuit and the United States Supreme Court have explained that "undocumented aliens" are not a "suspect class" that would trigger heightened scrutiny. *Estrada v. Becker*, 917 F.3d 1298, 1308–09 (11th Cir. 2019) (quoting *Plyler v. Doe*, 457 U.S. 202, 223 (1982)).

Plaintiffs' argument that SB 168 was enacted with a discriminatory purpose similarly fails. The Florida Legislature's inclusion of an *anti-discrimination* provision, § 908.109, Fla. Stat., demonstrates that the Legislature did not have a discriminatory intent in enacting SB 168. And Plaintiffs have not alleged facts supporting an inference that the Florida Legislature enacted SB 168 with a discriminatory purpose or intent. *See Hand v. Scott*, 888 F.3d 1206, 1210 (11th Cir. 2018) ("Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." (quoting *Hunter v. Underwood*, 471 U.S. 222, 227–28 (1985))). Instead, they contend that groups who—according to Plaintiffs—have drafted legislation that is similar to SB 168 and lobbied for enactment of SB 168 hold problematic views. DE 38, at 25–32. But these allegations are insufficient as a matter of law to establish an Equal Protection violation. As the Supreme Court has noted in the referendum context, Plaintiffs have "put forth no evidence" that any "private motives" these groups may have "can fairly be attributed to the State." *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 196 (2003) (quotations omitted). For these reasons, SB 168 does not violate the Equal Protection Clause.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Counts II, III, IV, V, VII, and VIII for lack of subject matter jurisdiction, and Counts I, VI, IX, X, and XI for failure to state a claim.

Respectfully submitted this 4th of September, 2019.

**ASHLEY MOODY**
**ATTORNEY GENERAL**

*/s/ James H. Percival*
*James H. Percival* (FBN 1016188)
DEPUTY SOLICITOR GENERAL
*Edward M. Wenger* (FBN 85568)
CHIEF DEPUTY SOLICITOR GENERAL
*Daniel W. Bell* (FBN 1008587)
DEPUTY SOLICITOR GENERAL
*Barbara Throne* (FBN 776505)
SENIOR ASSISTANT ATTORNEY GENERAL
Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
james.percival@myfloridalegal.com
edward.wenger@myfloridalegal.com
daniel.bell@myfloridalegal.com
barbara.throne@myfloridalegal.com

*Counsel for Attorney General Moody*

**RON DESANTIS**
**GOVERNOR**

*/s/ Colleen Ernst*
*Joe Jacquot* (FBN 189715)
GENERAL COUNSEL
*Colleen Ernst* (FBN 112903)
DEPUTY GENERAL COUNSEL
*Nicholas A. Primrose* (FBN 104804)
DEPUTY GENERAL COUNSEL
*John MacIver* (FBN 97334)
DEPUTY GENERAL COUNSEL
*James Uthmeier* (FBN 113156)
DEPUTY GENERAL COUNSEL
Executive Office of the Governor
The Capitol, PL-05
Tallahassee, Florida 32399-0001
Phone: (850) 717-9310
joe.jacquot@eog.myflorida.com
colleen.ernst@eog.myflorida.com
nicholas.primrose@eog.myflorida.com
john.maciver@eog.myflorida.com
james.uthmeier@eog.myflorida.com

*Counsel for Governor DeSantis*

19

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed with the Court's

CM/ECF system, which provides notice to all parties, on this 4th day of September, 2019.


/s/ *James H. Percival*
James H. Percival
DEPUTY SOLICITOR GENERAL