IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

**CITY OF SOUTH MIAMI**, *et al.*

   *Plaintiffs*,

vs.             CASE NO. 1:19-cv-22927-BB

**RON DESANTIS, IN HIS OFFICIAL
CAPACITY AS GOVERNOR OF THE
STATE OF FLORIDA**, *et al.*

   *Defendants*.

_____/

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

**I. THE COURT LACKS SUBJECT MATTER JURISDICTION OVER A NUMBER OF PLAINTIFFS'
CLAIMS.**

  **A. The Organizational Plaintiffs lack standing to bring their preemption
challenges to Sections 908.104(4) and 908.106.**

The Organizational Plaintiffs contend that they have standing to challenge these provisions

because they "have to divert their resources from their regular activities to combat" these

provisions, DE 59, at 2, and because "[a]t least one member of each organization" will be subject

to enforcement of these provisions, DE 59, at 4. Defendants agree that, under *Georgia Latino*

*Alliance for Human Rights v. Governor of Georgia*, 691 F.3d 1250 (11th Cir. 2012), allegations

of this nature would confer standing. In that case, the State of Georgia enacted certain criminal

statutes relating to a person's immigration status, and the Eleventh Circuit held that the plaintiff

organizations had standing because they were diverting resources from their core missions to

advise individuals on how those statutes applied to them. *Ga. Latino All.*, 691 F.3d at 1260. The

Organizational Plaintiffs in this case make similar allegations with respect to the detainer mandate

in Section 908.105(1), and Defendants have not contested their standing. *See* DE 52, at 4 n.3.

Plaintiffs' Complaint, however, fails to adequately make these allegations with respect to Section 908.104(4) or Section 908.106 (nor could it) because these provisions regulate only state and local government entities and officials, not the Organizational Plaintiffs or their members. Plaintiffs allege, for example, that they are "respond[ing] to an increase in inquiries from members and community residents." DE 38, at 13. But a review of Plaintiffs' Complaint makes clear that these inquiries relate to the effect of other provisions—in particular, Section 908.105(1)'s detainer mandate—not Section 908.104(4) or Section 908.106.[1]

Put differently, Plaintiffs do not allege that they have diverted resources to advise "county correctional facilit[ies]" on how to enter an agreement with the federal government for reimbursement, § 908.106, Fla. Stat., nor do they allege that they have diverted resources to advise "the Department of Corrections" or "county correctional facilit[ies]" on how they may transport removable aliens in their custody to federal facilities, *id.* § 908.104(4).[2] Similarly, they do not allege that any of these government entities are members of their organizations. For these reasons, they lack standing to challenge Section 908.106 or Section 908.104(4).

### B.    The Organizational Plaintiffs lack standing to bring their vagueness claims.

The Organizational Plaintiffs make the same arguments in support of their standing to bring their vagueness challenges as they offer in support of their preemption challenges. DE 59, at 2–3.

---

[1] *See, e.g.*, DE 38, at 13 (discussing "educat[ing] . . . members and community residents on immigration detainers and the impact of SB 168"); *id.* at 17 (discussing "updating members on the implementation of SB 168 and supporting members who are arrested, placed on immigration detainers, or have issues with the police due to SB 168"); *id.* at 18–19 (discussing diverting resources as a result of Alachua County honoring "detainer requests"); *id.* at 21 (discussing responding to community members' "requests for clarification" on how the sheriff "will handle immigration detainer requests"); *id.* at 22 (discussing members "who are subject to immigration detainers").

[2] Plaintiffs state in their response to Defendants' Motion to Dismiss that "at least one member of each organization will be unlawfully transported across states lines." DE 59, at 3. But this speculative and unsupported allegation does not appear in Plaintiffs' Complaint.

2

But the Organizational Plaintiffs offer no response to Defendants' argument that their vagueness challenges invoke interests that are not "legally protected" by the vagueness doctrine. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); DE 52, at 5–6.

Consider an example. A plaintiff would not have standing to challenge as vague an internal police memo prioritizing enforcement of one crime over another. This is because the question under the vagueness doctrine is whether a person has "notice of the required conduct" so they can "avoid . . . penalties," *Boyce Motor Lines v. United States*, 342 U.S. 337, 340 (1952), not whether they can predict which prohibitions police and prosecutors are likely to enforce, *see Kincaid v. District of Columbia*, 854 F.3d 721, 730 (D.C. Cir. 2017) (Kavanaugh, J.) (citing *Beckles v. United States*, 137 S. Ct. 886, 893 (2017)). The provisions the Organizational Plaintiffs challenge as vague—Section 908.104(1)'s use of the phrase "best efforts" and Sections 908.103 and 908.102(6)'s ban on "sanctuary polic[ies]"—operate the same way as an internal police memo from the perspective of the Organizational Plaintiffs. They tell state and local government entities and officials to cooperate with federal officials with respect to federal officials' enforcement of federal immigration laws. It is these federal laws that will ultimately impose consequences on the Organizational Plaintiffs' members, and the Organizational Plaintiffs do not challenge these laws as vague. For this reason, the Organizational Plaintiffs lack standing.

II.    **PLAINTIFFS FAIL TO STATE A CLAIM WITH RESPECT TO EACH OF THEIR CLAIMS.**

A.    **The cooperation contemplated by Section 908.105(1)'s detainer mandate and Section 908.104(4)'s transportation authorization is not preempted.**

Plaintiffs' challenges to Sections 908.105(1) and 908.104(4) are both premised on the idea that state and local officials may not detain a person for the limited 48-hour period contemplated by a detainer where there is a request from the federal government accompanied by an administrative warrant attesting to probable cause. *See* DE 59, at 5–6; DE 38, at 52. Plaintiffs

3

frame the issue as whether a federal statute "authorize[s]" this detention. *See* DE 59, at 5. But that is the wrong question. The question in this case is whether Congress has preempted SB 168. It has not.

In *City of El Cenizo v. Texas*, 890 F.3d 164 (5th Cir. 2018), the Fifth Circuit rejected the argument Plaintiffs advance here. Plaintiffs suggest otherwise, arguing that *City of El Cenizo* did not address a preemption challenge to Texas's similar detainer mandate, only a separate provision in the challenged Texas law. *See* DE 50, at 12–13. Plaintiffs' misreading of *City of El Cenizo* appears to be attributable to the fact that the *district court* in that case did not enjoin the detainer mandate on a preemption theory. 890 F.3d at 176. When the defendants appealed different aspects of the district court's ruling, however, the plaintiffs cross-appealed, arguing that the Texas law was preempted "*in its entirety.*" *Id.* (emphasis added). The Fifth Circuit expressly found that "none of [the Texas law's] provisions conflict with federal law." *Id.* at 179. Thus, *City of El Cenizo* is on point and supports dismissal of Plaintiffs' claim.

Plaintiffs cite no case holding that a state or local official is precluded by federal statute from detaining a removable alien up to 48 hours when federal officials make a request pursuant to a detainer and accompany that request with an administrative warrant attesting to probable cause. The cases Plaintiffs rely on are inapposite for at least one of the reasons described below.

*First*, Plaintiffs cite cases addressing state-law authority to extend the custody of a removable alien based on a detainer. *See, e.g.*, DE 50, at 13 n.5 (citing *Lunn v. Commonwealth*, 477 Mass. 517 (Mass. 2017)).[3] In *Lunn*, the Supreme Judicial Court of Massachusetts determined that—federal law aside—Massachusetts state law prohibited detention by a state officer pursuant

---

[3] *See also People ex rel. Swenson v. Ponte*, 46 Misc. 3d 273 (N.Y. Sup. Ct. 2014).

to a detainer. *Id.* at 519. *Lunn*, rather than supporting Plaintiffs' claim, explains a chief purpose of SB 168: to clarify that there is no similar prohibition in Florida law. Were Plaintiffs' position correct, the Massachusetts Legislature would be preempted from ever issuing a similar clarification in response to its State's highest court, a strange result.

*Second*, Plaintiffs cite cases addressing Fourth Amendment unreasonable seizure and Fifth Amendment due process claims. *See, e.g.*, DE 38, at 36 (citing *Creedle v. Miami-Dade Cty.*, 349 F. Supp. 3d 1276 (S.D. Fla. 2018)).[4] Plaintiffs do not bring a Fourth Amendment or Fifth Amendment challenge. More importantly, these cases address the propriety of honoring detainers *before* ICE changed its practices in April 2017 to include a signed administrative warrant attesting to probable cause with all detainer requests. *See* DE 23, at 4. In *Creedle*, for example, the court found fault in Miami-Dade County detaining the plaintiff without "a warrant issued by the Attorney General," 349 F. Supp. 3d at 1293 (quoting 8 U.S.C. § 1226(a)), on the ground that ICE itself often lacks authority to make such a warrantless arrest. *Id.* at 1293–94. But SB 168 requires these administrative warrants before a detainer must be honored, § 908.102(2)(c), Fla. Stat., and, as discussed, ICE now has a policy of including these administrative warrants with all detainer requests.

*Third*, Plaintiffs cite a number of cases decided either leading up to or in the aftermath of the United States Supreme Court's decision in *Arizona v. United States*, 567 U.S. 387 (2012). *See, e.g.*, DE 5-1, at 2–3 (citing *Ga. Latino All.*, 691 F.3d at 1262).[5] As discussed in Defendants' Motion

---

[4] *See also C.F.C. v. Miami-Dade Cty.*, 349 F. Supp. 3d 1236 (S.D. Fla. 2018); *Galarza v. Szalczyk*, 745 F.3d 634 (3d Cir. 2014); *Villars v. Kubiatowski*, 45 F. Supp. 3d 791 (N.D. Ill. 2014); *Moreno v. Napolitano*, 213 F. Supp. 3d 999 (N.D. Ill. 2016); *Lopez-Aguilar v. Marion Cty. Sheriff's Dep't*, 296 F. Supp. 3d 959 (S.D. Ind. 2017).

[5] Leading up to the Supreme Court's decision, there were "a spate of similar laws" enacted in other States. *See Buquer v. City of Indianapolis*, 797 F. Supp. 2d 905, 909 (S.D. Ind. 2011); *see*

to Dismiss, DE 52, at 8–9, *Arizona* and its progeny address whether States can take it upon themselves to enforce federal immigration laws absent a request from federal authorities, not whether they can provide assistance upon request. This distinction explains why the three statutes Plaintiffs rely on in their preemption argument—8 U.S.C. § 1357(g) (describing when a state or local official may "perform a function of an immigration officer"), 8 U.S.C. § 1103(a)(10) (describing when a state or local official may exercise "powers, privileges, or duties conferred or imposed" by the INA), and 8 U.S.C. § 1252c(a) (describing when a state or local official may "arrest and detain an individual" who is "illegally present in the United States")—do not preempt Section 908.105(1) or Section 908.104(4). These federal statutory provisions describe the instances where state and local officials may operate outside the *Arizona* framework—in other words, where they are permitted to unilaterally initiate enforcement action without a predicate federal request. But these provisions were not intended to preempt traditional forms of cooperation, as evidenced by Section 1357(g)(10)'s express savings clause. *See* 8 U.S.C. § 1357(g)(10) (explaining that Section 1357(g) "shall [not] be construed to require an agreement under [Section 1357(g)] in order for" state and local officers to "cooperate . . . in the identification, apprehension, detention, or removal of aliens"); DE 52, at 8–10.

### B. Plaintiffs fail to contest Defendants' interpretation of Section 908.106.

Defendants disagree with Plaintiffs' interpretation of Section 908.106 and have argued that "the most natural reading of the statute is that a county government 'shall' attempt to 'enter into an agreement' with the federal government, while the federal government retains the ultimate right to decline the invitation." DE 52, at 12. Plaintiffs do not appear to contest that, if Defendants' interpretation is correct, the statute is not preempted because it does not require the federal

---

*also Lozano v. City of Hazleton*, 724 F.3d 297 (3d Cir. 2013); *Utah Coal. of La Raza v. Herbert*, 26 F. Supp. 3d 1125 (D. Utah. 2014).

government to do anything (including providing forms of reimbursement that Plaintiffs find objectionable).

This, alone, is sufficient for the Court to reject Plaintiffs' pre-enforcement facial challenge to Section 908.106. For example, in *Arizona*, the Supreme Court declined to strike down a portion of the Arizona statute requiring state officials to check an arrestee's immigration status while the arrestee was in state custody. *See* 567 U.S. at 413–15. The Court believed there were multiple plausible readings of the statute—some of which would be preempted and some of which would not—and reasoned that, in a pre-enforcement facial challenge, it should not assume the statute will be interpreted in a manner that would be preempted "without the benefit of a definitive interpretation from the state courts." *Id.* at 415. The Court should employ the same approach here.

C.        **No heightened standard applies, but SB 168 meets any vagueness standard.**

SB 168 imposes two possible consequences on government entities or officials that violate it: (1) the Attorney General or Governor may seek an injunction in court; or (2) if the Governor believes that an official's violation of SB 168 rises to the level of "malfeasance, misfeasance, neglect of duty, [or] . . . incompetence," he "may" exercise his state-law suspension power. § 908.107, Fla. Stat.; Fla. Const. Art. IV, § 7. Plaintiffs argue that these consequences render the vagueness standard in *Leib v. Hillsborough County Public Transportation Commission*, 558 F.3d 1301 (11th Cir. 2009), inapplicable. *See* DE 59, at 6–7. *Leib* involved a vagueness challenge to licensing requirements related to the plaintiff's limousine business. The court applied a more lenient vagueness standard, reasoning that "a civil statute is unconstitutionally vague only if it is so indefinite as really to be no rule or standard at all." 558 F.3d at 1310 (quotations omitted). Plaintiffs suggest that "suspension from office" is a sufficiently harsh penalty that SB 168 should be considered "quasi-criminal." *See* DE 39, at 9. But Plaintiffs fail to explain how the professional

7

licensing regime that the Eleventh Circuit considered in *Leib*—which could cause a person to lose his job—imposes a materially different consequence than suspension by the Governor.

Nor does a heightened vagueness standard apply because, as Plaintiffs argue, SB 168 causes "a chilling effect on First Amendment rights." DE 59, at 9–10. The cases Plaintiffs cite for this proposition involved distinct First Amendment challenges, particularly overbreadth challenges, to the same language that was challenged as vague. *See Int'l Soc. for Krishna Consciousness of Atlanta v. Eaves*, 601 F.2d 809, 830 (5th Cir. 1979) ("[t]he vagueness and overbreadth challenges are linked"); *accord Vill. of Hoffman Estates v. Flipside*, 455 U.S. 489, 494 (1982). Because Plaintiffs do not bring a separate First Amendment challenge, these cases are inapplicable. In any event, even if a heightened vagueness standard applies, SB 168 is not vague.

**1.**   The parties agree that the phrase "best efforts" is not vague where context clarifies what is expected. *See* DE 5-1, at 10. Plaintiffs' response to Defendants' Motion to Dismiss makes clear that it is the words "to support the enforcement of federal immigration law" that, in their view, render Section 908.104(1) vague.[6] *See* DE 59, at 7–8. But as the briefing in this case has made clear, the Supreme Court in *Arizona* provided significant guidance as to the types of support state and local law enforcement may (and may not) provide to federal authorities. *See, e.g.*, DE 52, at 8–9. The Florida Legislature should be understood to speak against this backdrop, and the words "support the enforcement of federal immigration law" should be understood accordingly.

---

[6] Plaintiffs' suggestion that alleged inconsistencies between the bill title and the operative provision render Section 908.104(1) unconstitutionally vague is meritless. *See* DE at 8–9. "Florida appellate courts have held that headings are not statutory text and should not be considered unless the text is first found to be ambiguous." *TRA Farms, Inc. v. Syngenta Seeds, Inc.*, 932 F. Supp. 2d 1251, 1255 (N.D. Fla. 2013) (citing *State v. Menuto*, 912 So. 2d 603, 609 (Fla. 2d DCA 2005)).

What is more, Plaintiffs bring a pre-enforcement facial challenge. In *City of El Cenizo*, the Fifth Circuit rejected a vagueness challenge to a similar provision, which "forbids any policy or pattern or practice that prohibits or materially limits the enforcement of the immigration laws." 890 F.3d at 190 (quotations omitted). The court reasoned that the statute contained examples of how Texas officials were to interact with federal authorities, and that these examples were sufficient to reject plaintiffs' pre-enforcement facial vagueness challenge. *Id.* SB 168 contains a number of similar examples.[7] This is a sufficient basis, alone, to dismiss Plaintiffs' claim. As in *City of El Cenizo*, individuals remain free to bring "as-applied challenges . . . 'the basic building blocks of constitutional adjudication.'" *Id.* at 191 (quoting *Gonzales v. Carhart*, 550 U.S. 124, 168 (2007)).

**2.** Plaintiffs offer only two arguments in support of their claim that SB 168's requirement that state entities may not prohibit or "impede[]" law enforcement agencies from cooperating with the federal government in certain enumerated ways is vague. §§ 908.103, 908.102(6), Fla. Stat. First, they argue that the word "impedes" is inherently vague, citing cases discussing anti-loitering laws and similar statutes that have historically been found unconstitutionally vague. *See* DE 59, at 10. But Plaintiffs' argument ignores the phrase "so as to," which adds significant context and provides clarity as to what is prohibited. *See* DE 52, at 13–14.

Second, Plaintiffs suggest that they do not understand how to comply with a federal statute, 8 U.S.C. § 1373. *See* DE 59, at 10–11. But Plaintiffs do not challenge Section 1373, and courts have rejected vagueness challenges to statutes that merely incorporate pre-existing statutes. *See Wash. v. Confederated Bands and Tribes of Yakima Indian Nation*, 439 U.S. 463, 468 n.5 (1979).

---

[7] *See, e.g.*, §§ 908.102(6), 908.103, Fla. Stat. (describing a number of things that may not be prohibited or impeded); *id.* § 908.105 (providing instructions on how to handle detainers).

**D.      Plaintiffs fail to allege a plausible Equal Protection claim.**

Plaintiffs offer two arguments in support of their claim that Sections 908.104(1) and 908.103 violate the Equal Protection Clause. First, Plaintiffs argue that SB 168 is "discriminatory on its face." DE 59, at 11. Plaintiffs fail to identify what language in SB 168 they believe is facially discriminatory. Nor do they seriously wrestle with the SB 168's *anti-discrimination* provision. *See* § 908.109, Fla. Stat. In any event, SB 168 does nothing more than require state and local officials to assist federal immigration authorities. Plaintiffs' argument amounts to the suggestion that the entire congressionally-enacted federal immigration scheme violates the Equal Protection Clause.

Second, Plaintiffs argue that SB 168 was enacted with a discriminatory purpose. DE 59, at 17–18. Plaintiffs' allegations are insufficient as a matter of law. Plaintiffs' allegations regarding the impact of SB 168, *see* DE 59, at 14–17, are insufficient because proving a discriminatory purpose requires more than showing that the Legislature had an "awareness of consequences" from the challenged law. *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (citation omitted). Rather, it requires showing that the Legislature "selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* Plaintiffs' allegations regarding the statements and actions of particular legislators, *see* DE 59, at 17–18, are similarly inadequate because Plaintiffs have not alleged facts showing that the Legislature, as a whole, acted with an improper purpose. *See United States v. O'Brien*, 391 U.S. 367, 384 (1968) ("What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork.").

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint.

10

Respectfully submitted this 25th of September, 2019.

| | |
|---|---|
| **ASHLEY MOODY**<br>**ATTORNEY GENERAL** | **RON DESANTIS**<br>**GOVERNOR** |

*/s/ James H. Percival*
*James H. Percival* (FBN 1016188)
DEPUTY SOLICITOR GENERAL
*Edward M. Wenger* (FBN 85568)
CHIEF DEPUTY SOLICITOR GENERAL
*Daniel W. Bell* (FBN 1008587)
DEPUTY SOLICITOR GENERAL
*Barbara Throne* (FBN 776505)
SENIOR ASSISTANT ATTORNEY GENERAL
Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
james.percival@myfloridalegal.com
edward.wenger@myfloridalegal.com
daniel.bell@myfloridalegal.com
barbara.throne@myfloridalegal.com

*Counsel for Attorney General Moody*

*/s/ Colleen Ernst*
*Joe Jacquot* (FBN 189715)
GENERAL COUNSEL
*Colleen Ernst* (FBN 112903)
DEPUTY GENERAL COUNSEL
*Nicholas A. Primrose* (FBN 104804)
DEPUTY GENERAL COUNSEL
*James Uthmeier* (FBN 113156)
DEPUTY GENERAL COUNSEL
Executive Office of the Governor
The Capitol, PL-05
Tallahassee, Florida 32399-0001
Phone: (850) 717-9310
joe.jacquot@eog.myflorida.com
colleen.ernst@eog.myflorida.com
nicholas.primrose@eog.myflorida.com
james.uthmeier@eog.myflorida.com

*Counsel for Governor DeSantis*

12

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was filed with the Court's

CM/ECF system, which provides notice to all parties, on this 25th day of September, 2019.


/s/ *James H. Percival*
James H. Percival
DEPUTY SOLICITOR GENERAL