IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

**CITY OF SOUTH MIAMI**, *et al.*

      *Plaintiffs*,

v.                                               CASE NO. 1:19-cv-22927-BB

**RON DESANTIS, IN HIS OFFICIAL
CAPACITY AS GOVERNOR OF THE
STATE OF FLORIDA**, *et al.*

      *Defendants*.

_____/

### DEFENDANTS' STATEMENT OF MATERIAL FACTS[1]

1. The stated purpose of SB 168 is as follows: "The Legislature finds that it is an important state interest to cooperate and assist the federal government in the enforcement of federal immigration laws within this state." § 908.101, Fla. Stat.

2. SB 168's legislative history states that federal immigration authorities "depend[], in part, on the assistance of local and state law enforcement agencies." Ex. A, Bill Analysis and Fiscal Impact Statement, at 2.[2]

3. State and local cooperation with federal immigration authorities focuses on suspected "criminal aliens"—those who have been arrested for criminal activity. Ex. A, at 6; ECF No. 19-1, at 4; Ex. DD, Deposition of Sheriff Robert Gualtieri, at 53:16–54:10; 65:21–66:14; 67:12–25.

4. If a criminal is removed from the United States, that person cannot commit additional crimes in the United States. Ex. A, at 6–7; Ex. DD, at 55:3–15; 65:21–66:14; 67:12–25.

---

[1] Defendants include the facts that are discussed in their summary judgment motion, but do not concede that every fact included is material to the legal question before the Court.

[2] Consistent with local rules, Defendants cite a page number unless the document is only one page or Defendants intend to cite the entire document.

**5.** When state and local governments do not cooperate with federal immigration authorities, the federal government is more likely to make at-large immigration arrests in the community. ECF No. 19-1, at 8; Ex. DD, at 57:22–59:18.

**6.** At-large arrests put members of the public at greater risk of physical harm as compared to transfers of custody. ECF No. 19-1, at 8; Ex. DD, at 57:22–59:18.

**7.** At-large arrests can cause unintentional "officer-on-officer" violence. ECF No. 19-1, at 8; Ex. DD, at 38:17–39:6.

**8.** At least ten States have prohibited sanctuary policies. Ex. B, Sanctuary Policy FAQ, National Conference of State Legislatures, at 2–4.

**9.** At least thirty-three States have considered such legislation. Ex. B, at 2–4.

**10.** Florida's elected officials have been seeking to prohibit sanctuary policies since at least 2015. Ex. C, SB 872 Text; Ex. D, SB 872 History; Ex. E, HB 675 Text; Ex. F, HB 675 History; Ex. G, HB 9 Text; Ex. H, HB 9 History; Ex. I, SB 308 Text; Ex. J, SB 308 History.

**11.** On December 13, 2016, a member of Floridians for Immigration Enforcement ("FLIMEN") sent an email to Senator Aaron Bean's office attaching draft legislation. *See* ECF No. 38-2.

**12.** That draft legislation has some text in common with SB 168. ECF No. 38-4 (the text is highlighted).[3]

**13.** On November 17, 2015, Senator Bean introduced legislation that would prohibit sanctuary policies. Ex. C; Ex. D.

---

[3] Plaintiffs' amended complaint mistakenly states that ECF No. 38-5 compares the 2016 FLIMEN draft legislation to SB 168's text, but it is ECF No. 38-4. *See* ECF No. 38, at 27.

**14.** Other than three exceptions discussed below, every word that SB 168 has in common with FLIMEN's 2016 draft legislation also appears in Senator Bean's 2015 proposed legislation. *Compare* ECF No. 38-4, *with* Ex. C; *see* Ex. JJ, Plaintiffs' Comparison with Language from Senator Bean's 2015 Bill Omitted (language highlighted in yellow by Plaintiffs as deriving from FLIMEN's 2016 model legislation is covered in red if the language is also found in Senator Bean's 2015 proposed legislation); *see also* Ex. FF, Deposition of David Caulkett, at 21:19 ("[FLIMEN] did not draft the bill.").

**15.** The first exception is that SB 168 uses the word "the" where Senator Bean's 2015 proposed legislation uses the word "this." *See* Ex. JJ, at 3; Ex. C, at 3.

**16.** The second exception is that SB 168 uses the phrase "state university and college police" where Senator Bean's 2015 proposed legislation uses the phrase "campus police." *See* Ex. JJ, at 3; Ex. C, at 3.

**17.** The third exception is that SB 168 uses the word "person" where Senator Bean's 2015 proposed legislation uses the word "individual." Ex. JJ, at 4; Ex. C, at 5.

**18.** The earliest evidence of FLIMEN sharing draft legislation with Florida legislators is from 2016. Ex. L, Report of Dr. Lichtman, at 154.

**19.** SB 168's text is six full pages, single spaced. ECF No. 38-1.

**20.** SB 168 contains only "four near-identical sentences" to FLIMEN's draft bill. ECF No. 38, at 27.

**21.** The highlighted language on the top of page three of ECF No. 38-4, referencing detainers, also appears in Texas's Senate Bill 4. Ex. M, Texas Senate Bill 4, at 9.

**22.** Senate Bill 4 is the Texas law that the Fifth Circuit addressed in *City of El Cenizo v. Texas*, 890 F.3d 164 (5th Cir. 2018).

**23.** The highlighted language on the bottom half of page four of ECF No. 38-4 tracks the language of a federal statute governing immigration cooperation. *Compare* 8 U.S.C. § 1373, *with* ECF No. 38-4, at 4.

**24.** Plaintiffs allege that the Federation for American Immigration Reform ("FAIR") and the Center for Immigration Studies ("CIS") are sister organizations. ECF No. 38, at 25.

**25.** The Washington Post has noted that "[t]he analyses the CIS cranks out . . . resemble[] the standard think tank jousting that goes on in Washington." Ex. N, The State of Hate, Washington Post (2018), at 36–37.

**26.** If one Googles "list of sanctuary cities," the CIS data is the first result. Ex. II, Google search of "list of sanctuary cities."

**27.** Several judges and public officials have relied on information from CIS. *See State v. DOJ*, 951 F.3d 84, 97 (2d Cir. 2020); *Arizona v. United States*, 567 U.S. 387, 398 (2012); *Bandak v. Eli Lilly and Co. Ret. Plan*, 587 F.3d 798, 801 (7th Cir. 2009); *Bellitto v. Snipes*, 302 F. Supp. 3d 1335, 1348–49 (S.D. Fla. 2017).

**28.** A 15-page Senate staff analysis of SB 168 refers to CIS once and FAIR once. Ex. A, at 4.

**29.** Attachment 6 to Plaintiffs' amended complaint is a one-page excerpt of that analysis, not the complete document. ECF No. 38-6.

**30.** The Senate staff analysis says that it is "difficult to determine how many sanctuary jurisdictions . . . exist in Florida." Ex. A, at 4.

**31.** The Senate staff analysis says that "organizations use different criteria for" determining what qualifies as a sanctuary jurisdiction. Ex. A, at 4.

**32.** The Senate staff analysis then cites the CIS and FAIR data. Ex. A, at 4.

**33.** The Senate staff analysis then says that there are "more objective ways to measure whether an entity is a sanctuary jurisdiction." Ex. A, at 4.

**34.** The Senate staff analysis then spends the next page and a half discussing those methods. Ex. A, at 4–5.

**35.** The April 17, 2019 press conference that Plaintiffs discuss in their amended complaint was hosted by elected officials. *See* ECF No. 38, at 29 n.13 (link to full video: https://thefloridachannel.org/videos/4-17-19-press-conference-on-hb-527-sanctuary-cities/).

**36.** The press conference begins with statements from two of SB 168's sponsors, Senator Joe Gruters and Representative Cord Byrd. ECF No. 38, at 29 n.13.

**37.** Senator Gruters says that SB 168 is "about respecting the rule of law." ECF No. 38, at 29 n.13.

**38.** Senator Gruters says that SB 168 is "about cooperating with the federal government." ECF No. 38, at 29 n.13.

**39.** Senator Gruters says that SB 168 is "about public safety." ECF No. 38, at 29 n.13.

**40.** Senator Gruters says that SB 168 "only deals with" those arrested for criminal behavior. ECF No. 38, at 29 n.13.

**41.** Representative Byrd says that SB 168 is about respecting the rule of law. ECF No. 38, at 29 n.13.

**42.** Representative Byrd says that SB 168 is "not anti-immigrant." ECF No. 38, at 29 n.13.

**43.** Representative Byrd says that the "same rules" should be applied to U.S. citizens, illegal immigrants, and legal immigrants. ECF No. 38, at 29 n.13.

**44.** Representative Byrd says that SB 168 is "about public safety." ECF No. 38, at 29 n.13.

**45.** Representative Byrd says that SB 168 is not about the larger immigration debate "going on in Washington." ECF No. 38, at 29 n.13.

**46.** Representative Byrd thanks Senator Bean for his "work in the past" on similar legislation. ECF No. 38, at 29 n.13.

**47.** The remainder of the press conference features almost entirely statements by private citizens. ECF No. 38, at 29 n.13.

**48.** After Representative Byrd's statement, a mother speaks about the death of her 21-year old son. ECF No. 38, at 29 n.13.

**49.** The mother is African American. ECF No. 38, at 29 n.13.

**50.** She says that her son was killed by an individual who had already been removed twice by immigration authorities. ECF No. 38, at 29 n.13.

**51.** She says that better law enforcement cooperation may have saved her son's life. ECF No. 38, at 29 n.13.

**52.** Next, a woman speaks. ECF No. 38, at 29 n.13.

**53.** The woman is Latina. ECF No. 38, at 29 n.13.

**54.** She describes her childhood in Nicaragua. ECF No. 38, at 29 n.13.

**55.** She says that her childhood in Nicaragua included defending her home from criminals. ECF No. 38, at 29 n.13.

**56.** She describes her experience as an 18-year old lawfully immigrating to the United States. ECF No. 38, at 29 n.13.

**57.** Her statement about individuals who "don't ask if you are legally here or illegally here," but "will kill you anyhow," refers specifically to "victimizers." ECF No. 38, at 29 n.13.

6

**58.** She says that she supports SB 168 "out of love" for people who are victimized. ECF No. 38, at 29 n.13.

**59.** The conference ends with statements by a woman from FLIMEN and a woman from the Remembrance Project. ECF No. 38, at 29 n.13.

**60.** The woman from FLIMEN says that her comments are not directed at all unlawfully present persons. ECF No. 38, at 29 n.13.

**61.** Documents produced in response to Plaintiffs' public records requests of the Legislature include a constituent email that says, "WHAT THE HELL IS YOUR PROBLEM WITH NOT PASSING E-VERIFY . . . YOU ARE A DISGRACE!" Ex. O, Public Records Request, Representative Byrd, at PLS011946.

**62.** Documents produced in response to Plaintiffs' public records requests of the Legislature include a constituent email that says, "NO MATTER HOW FREELY ELECTED OUR GOVERNMENT IS THEY DO NOT RESERVE THE RIGHT TO DECIDE WHAT THE PEOPLE CAN OR CANNOT PUT IN THEIR BODY." Ex. P, Public Records Request, Representative Byrd, at PLS0011575.

**63.** Documents produced in response to Plaintiffs' public records requests of the Legislature include a constituent email that says, "The, Devil's Devotees, will be smoked out; they will be spewing out, false deceptive and toxic venom, against the President." Ex. P, at PLS0011578.

**64.** Documents produced in response to Plaintiffs' public records requests of the Legislature include a constituent email that says, "WITH EVERY LAW YOU MORONS KEEP MAKING MORE CRIMINALS . . . WE WILL NOT TOLERATE YOUR TREASON." Ex. P, at PLS0011908.

**65.** FLIMEN lobbied in favor of SB 168. Ex. Q, Public Records Request, Senator Gruters; ECF No. 38-7, at 5; Ex. EE, 30(b)(6) Deposition of the Executive Office of the Governor, at 33:5–18.

**66.** FLIMEN sends unsolicited emails to individuals. Ex. K, Deposition of Elizabeth Guzzo, at 62:12–63:4; Ex. EE, at 33:5–18; *see also* Ex. GG, 30(b)(6) Deposition of the Department of Legal Affairs, at 43:24–44:4.

**67.** FLIMEN subscribes people to its email alerts without their permission. Ex. K, at 62:12–63:4.

**68.** Members of FLIMEN obtained meetings with a handful of legislators or their staff. Ex. S, Public Records Request, Senator Gruters; Ex. Q, at PLS004183.

**69.** The Plaintiffs were also able to obtain such meetings. Ex. HH, 30(b)(6) Deposition of the Farmworker Association of Florida, at 22:12–24:13.

**70.** Plaintiffs' meetings included meetings with elected officials who supported SB 168. Ex. HH, at 22:12–24:13.

**71.** Elected officials and their staff generally work to accommodate meeting requests from constituents. Ex. GG, at 18:3–9; Ex. K, at 51:7–16, 59:16–61:25.

**72.** The accommodation of a meeting request does not indicate one way or the other whether the elected official endorses the views of the constituents. *See* Ex. K, at 51:7–16, 59:16–61:25; Ex. GG, at 18:8–9.

**73.** There is no evidence that elected officials or their staff made discriminatory statements at meetings where SB 168 was discussed.

**74.** Elected officials did not, themselves, send emails to FLIMEN seeking input on the content of SB 168. Ex. R, Public Records Request, Senator Gruters, at PLS004177 ("Hi. I sent this to Sen. Gruters but I do not know if he got it."); Ex. Q (showing no response from Senator Gruters to a

FLIMEN email); Ex. T, Public Records Request, Senator Bean (showing no response from Senator Bean to a FLIMEN email).

75. Josh Barnhill was, during the legislative process for SB 168, a legislative aide to Senator Gruters.

76. Mr. Barnhill was not an elected official during that time.

77. Mr. Barnhill exchanged emails with FLIMEN during the legislative process for SB 168. Ex. S; Ex. U, Public Records Request, Senator Gruters; Ex. V, Public Records Request, Senator Gruters; Ex. W, Public Records Request, Senator Gruters; Ex. X, Public Records Request, Senator Gruters; Ex. Y, Public Records Request, Senator Gruters; Ex. Z, Public Records Request, Senator Gruters.

78. Those emails were predominantly sent by FLIMEN to Mr. Barnhill, not from Mr. Barnhill to FLIMEN. Ex. S; Ex. U; Ex. V; Ex. W; Ex. X; Ex. Y; Ex. Z.

79. Mr. Barnhill made no discriminatory statements in those emails. Ex. S; Ex. U; Ex. V; Ex. W; Ex. X; Ex. Y; Ex. Z.

80. On March 27, 2019, Mr. Barnhill received an email with a news article purporting to detail interactions between him and FLIMEN. Ex. AA, Public Records Request, Senator Gruters.

81. The article suggests that "anti-immigrant hate groups" were significantly involved in the legislative process for SB 168. Ex. AA.

82. Mr. Barnhill replied, "[r]ead that this morning, definitely a stretch. The bill is common sense." Ex. AA, at PLS003967.

83. On January 23, 2019, a member of FLIMEN sent an email to Mr. Barnhill suggesting removing a provision giving enforcement authority to State Attorneys. Ex. S.

**84.** The email stated that the Florida Prosecuting Attorneys Association, the "association of State Attorneys," opposed that provision. Ex. S.

**85.** On February 11, 2019, Senator Gruters and Senator Bean introduced a new version of SB 168. Ex. BB, SB 168 Amendment; Ex. CC, SB 168 Amendment Date, at 3.

**86.** This new version did not contain a provision giving enforcement authority to State Attorneys. Ex. BB; Ex. CC, at 3.

**87.** The e-verify bill, which is discussed in certain emails relied on by Plaintiffs, is not the same as SB 168. *See* Ex. FF, at 32:15–23.

**88.** The bill prohibiting the issuance of state identification to unlawfully present persons, which is discussed in certain emails relied on by Plaintiffs, is not the same as SB 168. Ex. FF, at 44:21–23.

**89.** The bill requiring the Florida Department of Corrections to enter into a 287(g) agreement with the federal government (sometimes referred to as the "DOC 287(g) bill"), which is discussed in certain emails relied on by Plaintiffs, is not the same as SB 168. Ex. FF, at 44:21–45:1.

**90.** Other than the email discussed in paragraph 11 above, there is no evidence that FLIMEN shared draft anti-sanctuary jurisdiction legislation with elected officials in Florida or their staff.

**91.** Unconstitutional discrimination by local or state law enforcement would violate the plain text of SB 168. *See* § 908.109, Fla. Stat. (prohibiting unlawful discrimination).

**92.** A person can believe that "immigration enforcement is a public safety issue" without having discriminatory intent. *See City of Los Angeles v. Barr*, 929 F.3d 1163, 1178, 1182 (9th Cir. 2019).[4]

---

[4] This case is not cited for its legal propositions, but for the judicially noticeable fact that Congress, the Supreme Court, the Ninth Circuit, and the Department of Justice have recognized a public safety rationale for immigration enforcement.

Respectfully submitted this 28th of August, 2020.

<div style="display: flex;">

**ASHLEY MOODY**
**ATTORNEY GENERAL**

*/s/ James H. Percival*
*James H. Percival* (FBN 1016188)
CHIEF DEPUTY SOLICITOR GENERAL
*Elizabeth Teegen* (FBN 833274)
CHIEF ASSISTANT ATTORNEY GENERAL
*Karen Brodeen* (FBN 512771)
SENIOR ASSISTANT ATTORNEY GENERAL
*Anita Patel* (FBN 70214)
SENIOR ASSISTANT ATTORNEY GENERAL
Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
james.percival@myfloridalegal.com
elizabeth.teegen@myfloridalegal.com
karen.brodeen@myfloridalegal.com
anita.patel@myfloridalegal.com

*Counsel for Attorney General Moody*

**RON DESANTIS**
**GOVERNOR**

*/s/ Colleen Ernst*
*Joe Jacquot* (FBN 189715)
GENERAL COUNSEL
*Colleen Ernst* (FBN 112903)
DEPUTY GENERAL COUNSEL
Executive Office of the Governor
The Capitol, PL-05
Tallahassee, Florida 32399-0001
Phone: (850) 717-9310
joe.jacquot@eog.myflorida.com
colleen.ernst@eog.myflorida.com

*Counsel for Governor DeSantis*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed with the Court's

CM/ECF system, which provides notice to all parties, on this 28th day of August, 2020.


/s/ *James H. Percival*
James H. Percival
CHIEF DEPUTY SOLICITOR GENERAL