**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA**

**CITY OF SOUTH MIAMI**, *et al.*

       *Plaintiffs*,

v.                                                                    CASE NO. 1:19-cv-22927-BB

**RON DESANTIS, IN HIS OFFICIAL
CAPACITY AS GOVERNOR OF THE
STATE OF FLORIDA**, *et al.*

       *Defendants*.

_____/

## DEFENDANTS' RESPONSE TO PLAINTIFFS' SUMMARY JUDGMENT MOTION

The arguments Plaintiffs advance in support of their motion for summary judgment, ECF No. 112, are addressed in detail in Defendants' motion for summary judgment, ECF No. 111. For the same reasons that Defendants are entitled to summary judgment, Plaintiffs are not.

**I.     THE PARTIES AGREE THAT A TRIAL IS UNNECESSARY.**

Plaintiffs agree that this case is ripe for summary judgment. *See* ECF No. 112, at 1 (stating that "there are no material facts in dispute"). The material facts in this case are those relevant to the Legislature's purpose in enacting SB 168. *See Greater Birmingham Ministries v. Sec'y of State for Ala.*, 966 F.3d 1202, 1228 (11th Cir. 2020). But Plaintiffs did not seek to depose the relevant officials or their staff and they cannot call them at trial because these officials enjoy legislative immunity. *See In re Hubbard*, 803 F.3d 1298, 1310 (11th Cir. 2015) ("The legislative privilege protects against inquiry into . . . the legislative process." (quotations omitted)). Plaintiffs' case is, instead, based on emails and other documents. And Defendants, as a general matter, do not contest the authenticity of those documents, which are either a matter of public record or were produced by state officials in response to public records requests. *See generally* ECF No. 110. A trial in this

case would thus serve little purpose. *See United States v. Matheson*, 532 F.2d 809, 815 (2d Cir. 1976) (Where the evidence "is almost entirely documentary in character," the case is "more appropriate . . . for summary judgment" as compared to "a proceeding involving live witnesses and unresolved issues of credibility."); *see also Greater Birmingham Ministries*, 966 F.3d at 1221 (discussing the summary judgment standard and affirming summary judgment for the State of Alabama in an *Arlington Heights* case).

In any event, there are no genuine issues of material fact because Plaintiffs cannot meet their threshold burden under *Arlington Heights*. *See* ECF No. 111, at 4–6 (discussing *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977)).

## II.      SB 168 DOES NOT VIOLATE THE EQUAL PROTECTION CLAUSE.

### A.      Plaintiffs' evidence regarding the sequence of events is insufficient as a matter of law.

Plaintiffs' sequence-of-events evidence focuses on their argument that "hate groups" were so involved in SB 168's legislative process that they infected the Legislature with discriminatory intent. Defendants addressed this argument in their motion for summary judgment. *See* ECF No. 111, at 6–14. Defendants note the following additional points.

#### i.      *FLIMEN did not draft SB 168.*

Plaintiffs continue to assert, relying on a 2016 email in which a member of FLIMEN shared model legislation with Senator Bean's staff, that "legislators intentionally introduced model legislation drafted by hateful anti-immigrant groups." ECF No. 112, at 6. But Plaintiffs continue to ignore that Senator Bean introduced similar legislation in 2015, a year before FLIMEN sent draft legislation to his staff. *See* ECF No. 111, at 7–8. Senator Bean's introduction of this markedly similar bill in 2015 dismantles Plaintiffs' argument, *see* Ex. JJ to Defendants' SMF, and never once during this litigation did Plaintiffs bring it to the Court's attention.

Worse still, Plaintiffs sought to support their theory during discovery by deposing David Caulkett, a senior member of FLIMEN. Plaintiffs asked Mr. Caulkett point-blank whether FLIMEN drafted SB 168. Mr. Caulkett responded unequivocally that FLIMEN "did not draft" SB 168. *See* ECF No. 110, ¶ 14. And Plaintiffs identify no testimony that they would offer at trial to contradict Mr. Caulkett's testimony.

Finally, Plaintiffs point to a document where members of FLIMEN suggested that legislative aide Josh Barnhill "get the bills to Bill Drafting ASAP." ECF No. 112, at 3. But this sentence does not refer to SB 168. It, instead, refers to a bill preempting local governments from issuing IDs to unlawfully present persons and to a bill requiring the Florida Department of Corrections to enter into a cooperation agreement with the federal government. *See* ECF No. 114, ¶ 53; ECF No. 110, ¶¶ 88–89. This evidence is irrelevant as a matter of law. *See Greater Birmingham Ministries*, 966 F.3d at 1228 (finding irrelevant evidence that is "unconnected to the passage of the actual law in question").

On this record, no reasonable factfinder could conclude that FLIMEN (or FAIR) drafted SB 168. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (finding that summary judgment is appropriate "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record").

ii.    *Plaintiffs cannot show that the Legislature relied on CIS or FAIR data.*

Plaintiffs argue that, in considering SB 168, the Legislature "intentionally rel[ied] on biased data produced by well-known anti-immigrant hate groups, FAIR and CIS." ECF No. 112, at 7. In support, Plaintiffs cite a Senate staff-level analysis, which briefly mentions the data. *See* ECF No. 112, at 7–9. Plaintiffs' theory appears to be that the status of these groups is so "well-known" that only a person with discriminatory intent could rely on information provided by the groups. Plaintiffs are wrong.

3

*First*, the record does not support the inference that any legislator relied on these data, much less the entire Legislature. *See* ECF No. 111, at 9. In arguing otherwise, Plaintiffs conflate the summary judgment standard with the motion to dismiss standard. In denying Defendants' motion to dismiss, this Court determined that the allegations in Plaintiffs' amended complaint "support the inference that, without the use of biased data created by anti-immigrant hate groups," SB 168 "may have lacked the requisite support needed to be enacted." ECF No. 83, at 50. But this Court is no longer required to accept as true "all facts set forth in" Plaintiffs' complaint. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quotations omitted). Despite months of discovery, Plaintiffs identify no evidence showing that the data are biased or that the Legislature relied on them. In fact, in support of this argument, Plaintiffs cite only their own complaint and this Court's order denying Defendants' motion to dismiss. *See* ECF No. 112, at 7. Neither document qualifies as evidence for purposes of summary judgment. *See Mann v. Carnival Corp.*, 385 F. Supp. 3d 1278, 1284 (S.D. Fla. 2019) (holding that a plaintiff "cannot rest on the allegations of her Complaint to defeat summary judgment" (citing *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992)).

*Second*, even if Plaintiffs could show that the Legislature relied on this information, this would not violate the Equal Protection Clause. As discussed in Defendants' motion for summary judgment, highly-respected public officials have treated these organizations as legitimate participants in the immigration debate. *See* ECF No. 112, at 8–9. Surely these officials, like the Florida Legislature, did not violate the Constitution in doing so. *Cf. Root v. Lake Shore & M.S. Ry. Co.*, 105 U.S. 189, 214 (1881) (rejecting an argument because it "would be a *reductio ad absurdum*," meaning the implications of it would be untenable); *Tillman v. Advanced Pub. Safety, Inc.*, 2018 WL 3016904 at *2 (S.D. Fla. Jun. 18, 2018) (similar).

*Third*, even Plaintiffs cannot meet their erroneous standard. Their own expert, in analyzing crime rates of sanctuary jurisdictions, used *FAIR's list* as a basis for his analysis, Ex. L to Defendants' SMF, at 190–91, and Plaintiffs cite this discussion as affirmative evidence in support of their assertion that sanctuary jurisdictions "have historically been safer than jurisdictions without such policies." ECF No. 112, at 15 (citing ECF No. 114, at ¶¶ 23, 25).

  iii. *The bulk of Plaintiffs' remaining evidence is limited to a single legislator.*

The rest of Plaintiffs' sequence-of-events evidence relates almost exclusively to Senator Gruters. *See* ECF No. 112, at 3, 6–9. And much of that evidence does not relate to Senator Gruters himself, but to a staff member named Josh Barnhill.[1] *See id.* Even if this evidence showed discriminatory intent, it would be insufficient as a matter of law to prove Plaintiffs' equal protection claims. *See Greater Birmingham Ministries*, 966 F.3d at 1228 ("It is . . . questionable whether the sponsor speaks for all legislators [since] [t]he vote of a sponsor is only one vote."); *id.* (the "legally dispositive intent" is that "of the entire body of the . . . legislature"); ECF No. 111, at 10–14.

For these reasons, and those discussed in Defendants' motion for summary judgment, Plaintiffs' sequence-of-events evidence is insufficient as a matter of law.

  **B.** **Plaintiffs' evidence on disparate impact is insufficient as a matter of law.**

Plaintiffs' disparate impact argument, in a nutshell, is that SB 168 has caused racial profiling. *See* ECF No. 112, at 9–14. In addition to the points discussed in their motion for summary judgment, *see* ECF No. 111, at 14–15, Defendants note the following points.

---

[1] Further, as discussed in Defendants' motion for summary judgment, many of the communications from members of FLIMEN were one-sided. *See* ECF No. 111, at 12–13. Plaintiffs assume, for example, that Senator Gruters's lack of support for certain amendments was caused by an email sent from FLIMEN to Josh Barnhill. *See* ECF No. 112, at 6 (relying on paragraphs in Plaintiffs' Statement of Material Facts that cite the email). But Plaintiffs do not offer any evidence that it was the email that led to Senator Gruters's opposition.

**1.** For purposes of analyzing the disparate impact prong, the question is not whether there are bad apples who have ignored the plain text of SB 168 and engaged in racial profiling. Rather, in evaluating legislative intent under *Arlington Heights*, the question is whether the Legislature *intended* for SB 168 to cause racial profiling. *See Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) ("Discriminatory purpose . . . implies that the decisionmaker" selected "a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." (quotations omitted)). Plaintiffs recognize as much. *See* ECF No. 112, at 9 (arguing that "SB 168 has had an *intended* and foreseeable negative impact" on minorities (emphasis added)). But, contrary to Plaintiffs' argument, the Legislature expressly considered the possibility of racial profiling and created a regime to prevent it. *See* § 908.109, Fla. Stat. (prohibiting racial profiling); Defendants' SMF Resp., ¶ 102 (discussing talking points prepared for legislators discussing SB 168's racial profiling prohibition). Given this provision, no reasonable factfinder could conclude that the Legislature intended for SB 168 to cause racial profiling.[2]

**2.** Even if the Court finds Plaintiffs' racial profiling evidence relevant to the *Arlington Heights* disparate impact factor, for four reasons, the Court should not credit Plaintiffs' evidence.

*First*, Plaintiffs' racial profiling allegations are vague, anecdotal, and unsubstantiated. Defendants' SMF Resp., ¶ 103. Defendants conducted a 30(b)(6) deposition of each Organizational Plaintiff. Some made general statements, for example, that "a local law enforcement officer will pull someone over typically with no basis other than racial profiling," but

---

[2] Plaintiffs attempt to change the standard, arguing that "Florida legislators knew or *should have known* that SB 168 would [have a] discriminatory impact." *See* ECF No. 112, at 13–14 (emphasis added). But Plaintiffs cite no case applying such a standard, and Defendants are aware of none. *See* ECF No. 111, at 3 (explaining that Plaintiffs must show both "a discriminatory *purpose* and a discriminatory effect" (emphasis added)).

declined to provide specific examples. Defendants' SMF Resp., ¶ 103. Others provided limited examples (usually one), but admitted that they did not know if the arrest was caused by SB 168 or "if [it was] a coincidence." Defendants' SMF Resp., ¶ 103; *accord* Defendants' SMF Resp., ¶ 103 ("I might be lying if I tried to attribute it all to 168."). Still others confessed that they "don't have specific cases [of racial profiling] to report," or that they "don't have a mechanism in which members can submit these kinds of reports." Defendants' SMF Resp., ¶ 103. Some even went so far as to suggest that merely entering into a cooperation agreement with the federal government is akin to racial profiling. Defendants' SMF Resp., ¶ 104. This evidence does not establish the pattern of racial profiling that Plaintiffs assert.

*Second*, other than the anecdotal evidence provided by the Organizational Plaintiffs, the only evidence Plaintiffs rely on is Dr. Lichtman's report. *See* ECF No. 114, at ¶¶ 13–32, 81–82. But this evidence—which is not expressed in the form of an opinion but includes a variety of factual claims—is not admissible to establish the existence of racial profiling. In suggesting otherwise, Plaintiffs misunderstand the difference between factual testimony and expert testimony. As a general matter, a witness may only testify to facts within his personal knowledge. *See* Fed. R. Evid. 602. When an expert properly testifies to his opinion, he may "base [that] opinion" on facts outside his personal knowledge "[i]f experts in the particular field would reasonably rely on those kinds of facts." R. 703. But this does not render the underlying facts admissible. *See Williams v. Illinois*, 567 U.S. 50, 69 (2012) ("Modern rules of evidence continue to permit experts to express opinions based on facts about which they lack personal knowledge . . . but such reliance does not constitute admissible evidence of this underlying information."). Moreover, even if Plaintiffs had cited the underlying information that Dr. Lichtman relied on, rather than his report (which they did

not do), the evidence would be inadmissible for the reasons stated in Defendants' motion in limine. *See generally* ECF No. 108.

*Third*, Plaintiffs have declined to avail themselves of the mechanism the Legislature provided to address racial profiling. The Attorney General and the Governor have enforcement authority to enjoin a violation of SB 168, including its prohibition on racial profiling. *See* ECF No. 111, at 15 n.7. Yet, since SB 168 was enacted, Plaintiffs have never reported a single instance of racial profiling to the Attorney General or the Governor, which can be done through a simple online form. *See* Defendants' SMF Resp., ¶¶ 97–101. Plaintiffs' implicit theory is that the anti-discrimination provision is toothless. But they never gave the Attorney General or the Governor an opportunity to show them otherwise, and the State should not be faulted for that failure.

*Fourth*, Plaintiffs appear to argue from the assumption that driving without a license is not a valid basis to arrest a person. *See* ECF No. 112, at 13 (discussing individuals who, according to Plaintiffs, "never should have been detained and were ultimately only charged with nothing more than driving without a license"). But driving without a license is a crime in Florida, not a civil traffic violation. *See* §§ 322.03(1), 322.39, Fla. Stat.; *Fripp v. State*, 766 So. 2d 252, 253 (Fla. 4th DCA 2000). Thus, even if Plaintiffs are right that "immigrants throughout Florida are concerned about ending up in detention due to driving without a license," ECF No. 112, at 12, this detention would be due to their knowing commission of a criminal act, not SB 168. And although Plaintiffs suggest that some of these arrests are the result of unconstitutional traffic stops, *see id.*, they do not identify a single instance where a Florida officer was found, in subsequent proceedings, to have violated the Fourth Amendment in making such an arrest.

8

**3.** Even if the Court finds Plaintiffs' racial profiling evidence relevant, and even if the Court credits it, this evidence would more appropriately be considered in an as-applied challenge, not Plaintiffs' facial challenge. *See* ECF No. 111, at 15.

For these reasons, and those stated in Defendants' motion for summary judgment, Plaintiffs' disparate impact evidence is insufficient as a matter of law.

### C. Plaintiffs' evidence regarding contemporary statements is insufficient as a matter of law.

Plaintiffs do not cite a single statement by a member of the Legislature indicating a discriminatory motive in enacting SB 168.[3] Rather, Plaintiffs cite statements that, in their view, indicate "a desire to supplant and correct the perceived failures of the federal immigration system," ECF No. 112, at 8, and statements regarding the presence of "illegal aliens" and their criminal activity, *id.* at 9. Identifying those statements (and only those statements), Plaintiffs argue that "[t]hese facts show clear intention to discriminate based on national origin." *Id.*

Plaintiffs' position is revealing. In their view, any opposition to illegal immigration qualifies as national origin discrimination. *See id.* at 8–9. But that is not the law. Opposition to a person's violation of federal immigration law cannot be equated with discriminatory animus based on their national origin. *See Estrada v. Becker*, 917 F.3d 1298, 1308–09 (11th Cir. 2019) (holding that "undocumented aliens" are not a "suspect class"); *accord DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1915–16 (2020). In fact, this argument—that mainstream political views that Plaintiffs happen to disagree with are evidence of invidious discrimination—is a common thread in Plaintiffs' case. *See, e.g.*, ECF No. 111, at 20 (discussing Plaintiffs' argument that

---

[3] Plaintiffs appear to abandon their arguments based on statements unrelated to SB 168 and statements by non-legislators, and for good reason. *See* ECF No. 111, at 15–18. Legislators hear from a variety of constituents during the public debate on pending legislation. The views of those constituents are not probative of legislative intent.

"Republican[s]" passed SB 168 to "crack[] down on the Democratic minority base and appeal[] to the Republican anti-immigrant white base"); ECF No. 112, at 3 (referring to a bill requiring the Florida Department of Corrections to enter into a cooperation agreement with the federal government as "anti-immigrant").

For these reasons, and those stated in Defendants' motion for summary judgment, *see* ECF No. 111, at 15–18, Plaintiffs' contemporary statements evidence is insufficient as a matter of law.

**D.      Plaintiffs' evidence regarding historical background is insufficient as a matter of law.**

Plaintiffs dedicate a single paragraph to their historical background argument. *See* ECF No. 112, at 4–5. In fact, other than a sentence reiterating their sequence-of-events argument and a discussion of case law, Plaintiffs state their argument in a single sentence: "Here, the history of discrimination based on race and national origin in the Florida legislature reveals a long record of intentional invidious action through the present." *Id.* at 5 (citing Dr. Lichtman's report).

But, as explained in Defendants' motion for summary judgment, ECF No. 111, at 18–19, and *Daubert* motion, ECF No. 109, at 3–4, 9–10, Plaintiffs' historical evidence is irrelevant as a matter of law because it does not relate to SB 168 or even to immigration enforcement in Florida.

**E.      Plaintiffs' evidence regarding departures from the norm is insufficient as a matter of law.**

Plaintiffs' departures-from-the-norm discussion is a grab bag of arguments that they advance under other *Arlington Heights* prongs. *See, e.g.*, ECF No. 112, at 6 (contending that "xenophobic lobbying groups had been plotting for years to introduce and pass legislation like Chapter 908"); *id.* at 7 (contending that legislators "rel[ied] on biased data produced by well-known anti-immigrant hate groups"). But the thrust of Plaintiffs' argument is that the Legislature failed to enact a number of proposed amendments to SB 168. *See id.* at 6, 15.

As discussed in Defendants' motion for summary judgment, Plaintiffs' policy objections to SB 168 are not evidence of discriminatory intent. *See* ECF No. 111, at 19–20. But Plaintiffs' argument fails for the additional reason that, contrary to what they claim, the proposed amendments would not have "reduce[d] the law's [alleged] discriminatory effect." ECF No. 112, at 15. The amendments Plaintiffs point to would have, for example, required judicial warrants before Florida officials must honor a detainer, limited enforcement to those convicted of a felony, and limited enforcement within universities. *See* Ex. L to Defendants' SMF, at 174–80. But even assuming SB 168 has a discriminatory effect, these amendments would not have reduced it because they are aimed at reducing the *total effect* of SB 168, not its alleged *discriminatory effect*. In fact, the best example of language that would reduce SB 168's alleged discriminatory effect is language prohibiting racial profiling, which is the measure the Legislature selected. *See supra* at 6, 8.

### F.    Plaintiffs' evidence, in total, is insufficient as a matter of law.

Plaintiffs' evidence is no stronger when considered as a whole than when analyzed under the individual *Arlington Heights* prongs. In fact, while Plaintiffs pay lip service to each prong, their evidence focuses almost entirely on the sequence-of-events prong and the disparate impact prong. And Plaintiffs' evidence is weaker than in *Greater Birmingham Ministries*, where the Eleventh Circuit affirmed summary judgment for the State of Alabama. 966 F.3d at 1225–26. In that case, there was evidence that (a) the challenged voter ID law had a disparate impact on minority voters, *id.* at 1226; (b) Alabama legislators had made "racist statements" about other voter ID laws in the past, *id.* at 1226–27, (c) Alabama had a history of discrimination specific to the voting context, *see id.* at 1228–29; (d) not a single black legislator voted for the law, *id.* at 1230; and (e) the Alabama Legislature declined "to include alternative options" that, according to the plaintiffs, "were less discriminatory," *id.* at 1231 (quotations omitted).

Perhaps recognizing their lack of evidence, Plaintiffs stake out the view that "[a] presumption of discriminatory purpose arises when plaintiffs establish that natural, probable, and foreseeable results of public officials' action or inaction resulted in disparate impact." ECF No. 112, at 14. But Plaintiffs cannot prevail by relying on a single *Arlington Heights* factor. As the Supreme Court noted only last term, virtually any immigration regulation will have a natural, probable, and foreseeable disparate impact on certain minorities. *See Regents of the Univ. of Cal.*, 140 S. Ct. at 1915–16. "Were this fact sufficient to state a claim, virtually any generally applicable immigration policy could be challenged on equal protection grounds." *Id.* at 1916. Moreover, Plaintiffs' view that a disparate impact—foreseeable or not—is sufficient to state an equal protection claim is inconsistent with decades of Supreme Court precedent. *See, e.g.*, *Washington v. Davis*, 426 U.S. 229, 239 (1976).

III.    **THE TRANSPORTATION PROVISION IS LAWFUL.**

As stated in Defendants' motion for summary judgment, Defendants continue to preserve their argument that the transportation provision is lawful. *See* ECF No. 111, at 20.

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' motion for summary judgment and grant Defendants' motion for summary judgment.

12

Respectfully submitted this 15th of September, 2020.

**ASHLEY MOODY**
**ATTORNEY GENERAL**

*/s/ James H. Percival*
*James H. Percival* (FBN 1016188)
CHIEF DEPUTY SOLICITOR GENERAL
*Elizabeth Teegen* (FBN 833274)
CHIEF ASSISTANT ATTORNEY GENERAL
*Karen Brodeen* (FBN 512771)
SENIOR ASSISTANT ATTORNEY GENERAL
*Anita Patel* (FBN 70214)
SENIOR ASSISTANT ATTORNEY GENERAL
Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
james.percival@myfloridalegal.com
elizabeth.teegen@myfloridalegal.com
karen.brodeen@myfloridalegal.com
anita.patel@myfloridalegal.com

*Counsel for Attorney General Moody*

**RON DESANTIS**
**GOVERNOR**

*/s/ Colleen Ernst*
*Joe Jacquot* (FBN 189715)
GENERAL COUNSEL
*Colleen Ernst* (FBN 112903)
DEPUTY GENERAL COUNSEL
Executive Office of the Governor
The Capitol, PL-05
Tallahassee, Florida 32399-0001
Phone: (850) 717-9310
joe.jacquot@eog.myflorida.com
colleen.ernst@eog.myflorida.com

*Counsel for Governor DeSantis*

13

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed with the Court's

CM/ECF system, which provides notice to all parties, on this 15th day of September, 2020.


/s/ *James H. Percival*
James H. Percival
CHIEF DEPUTY SOLICITOR GENERAL