**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA**

**CITY OF SOUTH MIAMI**, *et al.*

      *Plaintiffs*,

v.                              CASE NO. 1:19-cv-22927-BB

**RON DESANTIS, IN HIS OFFICIAL
CAPACITY AS GOVERNOR OF THE
STATE OF FLORIDA**, *et al.*

      *Defendants*.

_____/

**DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS[1]**

Defendants respond to Plaintiffs' statement of material facts, ECF No. 114, as follows. Plaintiffs' paragraphs in many cases contain more than one fact. *See* L.R. 56.1(b)(1)(B). Defendants, as much as practicable, respond to each separate fact.

    **1.** Undisputed.

    **2.** Disputed as phrased. Undisputed that Plaintiffs are non-profit organizations. Disputed that all Plaintiffs are membership groups. *See, e.g.*, Plaintiffs' Ex. 19, 30(b)(6) Depo. of Americans for Immigrant Justice, at 8:10–11.[2] Disputed that this paragraph accurately and completely describes the mission of all nine Plaintiffs, but undisputed that their activities include those Plaintiffs describe.

    **3.** Disputed as phrased. A person cannot "lack immigration status." Moreover, because there are nine Organizational Plaintiffs, as phrased, this paragraph contains 54 distinct factual assertions. *See* L.R. 56.1(b)(1)(B). Generally, undisputed that there are Plaintiffs in this case that have members or serve constituents who are immigrants (both lawfully and unlawfully present) or who have parents who are immigrants (both lawfully and unlawfully present).

---

[1] Defendants do not concede that any of the facts discussed in this response are material.

[2] To avoid confusion, Defendants note that Plaintiffs refer to 30(b)(6) depositions based on the name of the designee, while Defendants refer to them based on the name of the corporate entity.

**4.**   Disputed as a legal conclusion. Plaintiffs do not define harm, nor do they show that SB 168—rather than federal immigration law—caused that alleged harm.

**5.**   Disputed as a legal conclusion. Plaintiffs do not define harm, nor do they show that SB 168—rather than federal immigration law—caused that alleged harm.

**6.**   Disputed as phrased. Undisputed that Plaintiffs have diverted resources in response to SB 168. But it is unclear what "to address . . . SB 168" means, and Defendants dispute any suggestion that Plaintiffs were required to divert resources, rather than that they chose to do so.

**7.**   Undisputed on the understanding that the phrase "[a]n immigration detainer may be triggered" means ICE may choose to issue a detainer request accompanied by an administrative warrant under the circumstances described where ICE determines that there is probable cause to do so. *See* ECF No. 19-1, at 4–5; ECF No. 19-2, at 22.

**8.**   Disputed as phrased. Undisputed that this is one of multiple requests that may be included in a detainer. *See* ECF No. 19-2, at 17.

**9.**   Undisputed that ICE fills out detainer forms and sends them to state or local law enforcement. Disputed insofar as this suggests that detainers do not also include an administrative warrant. ECF No. 19-2, at 22.

**10.** Undisputed on the understanding that this paragraph indicates that detainers are accompanied by administrative warrants rather than judicial warrants. *See* ECF No. 19-2, at 22.

**11.** Undisputed on the understanding that "not fixed" means a person's immigration status can change. For example, an unlawfully present person can obtain lawful status. Disputed insofar as this suggests that these changes occur frequently or that immigration status is "fluid." *See* ECF No. 38, at 39 (in which Plaintiffs argued that immigration status is "fluid").

**12.** Disputed because the only evidence identified is inadmissible hearsay. *See* ECF No. 108, at 2–3.

**13.** Disputed. The only evidence Plaintiffs identify is Dr. Lichtman's report. Dr. Lichtman, who is a history professor at American University, lacks personal knowledge of this alleged fact and so cannot testify to it. Even assuming Dr. Lichtman is permitted to rely on this third-party information as a basis for his opinion, that does not mean he can testify to it. *See* Defendants' Resp. to Plaintiffs' MSJ, at 7–8.[3] Further, it is unclear what Plaintiffs mean by "overrepresented."

---

[3] Insofar as Plaintiffs intend to seek admission of the underlying documents and data that Dr. Lichtman relies on, they have not included them as exhibits and so Defendants do not

**14.** Disputed. *See supra*, ¶ 13. Further, it is unclear what Plaintiffs mean by "underrepresented."

**15.** Disputed. *See supra*, ¶ 13. Further, Dr. Lichtman does not adequately explain why any differences are "statistically significant."

**16.** Disputed. *See supra*, ¶ 13. Further, the stated information does not appear on the cited page.

**17.** Disputed. *See supra*, ¶ 13. Further, the cited document refers to individuals from "South and Central America and the Caribbean," whereas Plaintiffs refer to "minorities" in general.

**18.** Disputed. *See supra*, ¶ 13. Further, this sentence is confusingly worded. It is unclear if Plaintiffs are looking at ICE arrests, and 287(g) referrals as a percentage of total ICE arrests, or if the data set consists only of 287(g) referrals. Put differently, it is unclear if the denominator in Plaintiffs' number is all ICE arrests or only ICE arrests as a result of 287(g) referrals.

**19.** Disputed. *See supra*, ¶¶ 13, 18. Further, the cited pages contain bare assertions and cite no supporting documents or data.

**20.** Disputed. *See supra*, ¶¶ 13, 18. Further, the cited pages contain bare assertions and cite no supporting documents or data.

**21.** Disputed. *See supra*, ¶ 13. Further, the cited pages contain bare assertions and cite no supporting documents or data.

**22.** Disputed. *See supra*, ¶ 13. Further, this paragraph contains numerous distinct factual assertions, which are not easily responded to. *See* L.R. 56.1(b)(1)(B).

**23.** Disputed. *See supra*, ¶ 13; ECF No. 110, at ¶¶ 3–7. Further, the cited document does not support such a sweeping statement, and it is unclear what Plaintiffs mean by "less safe."

**24.** Disputed. *See supra*, ¶ 13. Further, one of the cited pages discusses incarceration rates, not crime rates as Plaintiffs indicate. Moreover, because immigration cooperation focuses on criminal aliens, an alternative explanation for lower incarceration rates in that population is that the unlawfully present persons most prone to criminal behavior are being removed, not that unlawfully present persons overall commit less crimes.

**25.** Disputed. *See supra*, ¶ 13. Further, Dr. Lichtman states, on the cited page, that the reduction is "not statistically significant."

---

specifically respond to whether those documents and data establish the stated facts. Further, Defendants believe those sources are also inadmissible. *See* ECF No. 108, at 2–3.

**26.** Disputed. *See supra*, ¶ 13; Defendants' Ex. DD, Depo. of Sheriff Robert Gualtieri, at 110:20–23 ("[W]hat we want people to know, and what I stress to them is, don't be afraid of us, don't be afraid of the police. Don't be afraid of law enforcement because we're not ICE."). Moreover, employees of the Organizational Plaintiffs lack personal knowledge to make these sorts of broad statistical claims.

**27.** Disputed. *See supra*, ¶ 13; *infra*, ¶¶ 75, 103; ECF No. 109, at 14 (discussing Dr. Lichtman's lack of qualifications in the areas of law enforcement and crime); Defendants' Ex. DD, at 104:4–12 ("It doesn't matter whether somebody is white or black, doesn't matter anything to do with race . . . . [W]hether you're black from Haiti, white from Haiti, black from Jamaica, white from Jamaica, black from the UK, white from the UK, it doesn't matter."). Further, Defendants note that this paragraph is difficult to understand, and so they have responded to the best of their ability.

**28.** Disputed as phrased. It is unclear what "makes no distinction" means, Dr. Lichtman is not the proper source for this claim (the text of SB 168 is), and this paragraph is a legal conclusion. Undisputed insofar as the paragraph indicates that ICE, not Florida, determines when to take immigration enforcement action, and that SB 168 does not authorize state and local law enforcement agencies to second-guess those decisions based on the severity of the underlying criminal conduct that caused that person to be in state or local custody. *See* ECF No. 19-1, at 4–5.

**29.** Disputed. Regarding Dr. Lichtman, *see supra*, ¶ 13. Regarding the cited declarations, employees of the Organizational Plaintiffs do not have personal knowledge of this sort of broad statistical claim. Further, Plaintiffs appear to conflate two distinct concepts when they discuss arrests of "persons with no criminal convictions or convictions for minor crimes." Presumably Plaintiffs are referring to the particular basis for the state law arrest that precipitated a transfer to ICE custody. But someone can end up in ICE custody based on a minor offense even when they have previously been convicted of a serious crime. *See* Defendants' Ex. DD, at 65:21–66:4 ("[Y]ou could have someone that . . . gets arrested on a disorderly conduct" where a detainer is issued "because the person was convicted of committing a lewd and lascivious battery on a child." State and local officials "don't know that" when they receive the detainer so "you can't judge that book by the cover.").

**30.** Disputed. *See supra*, ¶¶ 13, 29. Further, detainers are issued when someone is released. It is unsurprising that those convicted of serious crimes—some of which involve life in prison—are less frequently subject to a detainer.

**31.** Disputed. *See supra*, ¶ 13.

**32.** Disputed. *See supra*, ¶ 13. Further, Plaintiffs are mistaken in characterizing driving without a license as a traffic violation, rather than a criminal offense, especially because they treat a DUI as a non-traffic criminal offense. *See* Defendants' Resp. to Plaintiffs' MSJ, at 8.

**33.** Undisputed.

**34.** Undisputed that this document states that FLIMEN is a non-profit. But it is unclear from the record whether FLIMEN "previously held itself out as a non-profit," or whether Mr. Caulkett simply misspoke when he said it is not now a non-profit. *See* Plaintiffs' Ex. 22, Depo. of David Caulkett, at 17:13–17.

**35.** Disputed as phrased. In the document Plaintiffs cite, Mr. Caulkett states, "Yes, we advocate for certain bills. Yes, we may have suggested model legislation."

**36.** Undisputed.

**37.** Disputed as phrased. In the document Plaintiffs cite, Mr. Caulkett states that he was *among* the founders of FLIMEN, not *the* founder. Undisputed that he is currently the Vice President, and that FLIMEN's website does not list a current President.

**38.** Undisputed.

**39.** Undisputed that Mr. Caulkett ran this website from 2003 to approximately 2014, as the document Plaintiffs cite indicates. Defendants note that there is no evidence that this website had any relationship to FLIMEN.

**40.** Undisputed.

**41.** Undisputed. Defendants note that there is no evidence that this website has any relationship to FLIMEN.

**42.** Disputed as phrased. The cited documents indicate that Mr. Caulkett was *a* state advisor for FAIR, not *the* state advisor. Moreover, they state that "State Advisors *do not* represent FAIR." *See* Plaintiffs' Ex. 37, FLIMEN News Alert, at PLS003990 (emphasis in original). Otherwise, undisputed.

**43.** Undisputed.

**44.** Undisputed.

**45.** Undisputed.

**46.** Undisputed.

5

**47.** Disputed as phrased. The email in question was sent to a person named Austin Nicklas. There is no evidence that it was sent to Senator Bean directly.

**48.** Undisputed.

**49.** Disputed as phrased. Defendants do not dispute what the face of the cited document shows. On January 28, 2019, Mr. Morrow sent an unsolicited email to Representative Byrd—which Representative Byrd did not respond to—discussing four categories of immigration-related bills. One of the four categories was anti-sanctuary bills, including SB 168. Towards the end of his email, Mr. Borrow stated, "We are also requesting that additional Representatives and Senators Sponsor or Cosponsor all legislation related to Immigration Enforcement." Plaintiffs cite no evidence indicating when Representative Byrd became a sponsor. They thus have not shown that he "*later* became the house sponsor." (emphasis added).

**50.** Undisputed.

**51.** Undisputed that Mr. Caulkett stated that "he believes" he met with Representative Byrd.

**52.** Undisputed that Mr. Morrow sent the email. Defendants note that there is no evidence that Senator Gruters solicited or responded to the email.

**53.** Undisputed with the caveat that Plaintiffs selectively quote the document.

**54.** Undisputed.

**55.** Disputed as phrased. There is no evidence that FLIMEN's communications were the cause of the amendments. Further, the cited document only confirms that the provision giving enforcement authority to State Attorneys was removed. In the document, Mr. Caulkett states that he could not recall whether the other changes he recommended were made.

**56.** Undisputed.

**57.** Undisputed.

**58.** Disputed as phrased. It is unclear what Plaintiffs mean by "forwarding concerns." Otherwise undisputed.

**59.** Disputed as phrased. Ms. Brill's job title is not clear from the document. Further, contrary to Plaintiffs' claim, the document appears to have been drafted only for Senator Bean and Representative Metz (not Senator Simmons). The email references Senator Simmons because of an amendment he proposed, not because the talking points were for him. Undisputed that the 45 pages of attachments include the Senate staff-level analysis, including its passing reference to the CIS and FAIR data.

**60.** Undisputed.

**61.** Disputed as phrased. It is unclear what "Attorney General Moody's office" means. Undisputed that members of FLIMEN met with Government Affairs Director Dan Olson and Senior Legislative Aide Elizabeth Guzzo.

**62.** Disputed as phrased. It is unclear what "Governor DeSantis's Office" means. Undisputed that members of FLIMEN met with Stephanie Kopelousos, the Governor's Director of Legislative Affairs.

**63.** Undisputed with the caveat that Plaintiffs selectively quote the document.

**64.** Undisputed on the understanding that by "previously filed" Plaintiffs mean a bill filed "the previous year," which is what the cited document says.

**65.** Undisputed on the understanding that by "forwarded," Plaintiffs mean forwarded to legislative aide Josh Barnhill (and only him), as the cited document reflects.

**66.** Undisputed. The video link Plaintiffs included does not appear to be the right one, but the one in their amended complaint is. *See* ECF No. 38, at 28 n.10. Defendants also note that Plaintiffs reference Senator Cruz's question, but omit Senator Gruters's response, which appears in the video immediately after (and in which he expressly disavows any discriminatory intent).

**67.** Disputed as phrased. Dr. Lichtman's report is not a proper source for this statement. *See supra*, ¶ 13. Defendants, however, do not dispute the publicly available fact that a number of amendments were proposed, including two by Senator Taddeo discussing victims, witnesses, and education. Disputed insofar as Plaintiffs state what the amendments were "aimed at," since they have no evidence of the subjective motivations behind the amendments.

**68.** Undisputed with the caveat that Plaintiffs selectively quote the document.

**69.** Undisputed.

**70.** Disputed. *See* ECF No. 110, at ¶¶ 35–60.

**71.** Disputed as phrased. The referenced "document" is just the body of an email, and that email is an exchange between FLIMEN and FAIR regarding which jurisdictions in Florida are sanctuary jurisdictions. Undisputed that Mr. Windham forwarded the email to Representative Byrd and that he forwarded the email to Ms. Woodby (even though she was already on the CC line).

**72.** Undisputed. Defendants note that there is no evidence that Mr. Barnhill solicited this information.

**73.** Undisputed.

**74.** Disputed due to the use of the word "anticipated."

**75.** Disputed. *See supra*, ¶¶ 26, 27; *infra*, ¶ 103; Defendants' Ex. DD, at 105:2–5 ("[A]ll actions by sheriffs and by law enforcement officers in Florida have to be . . . done in the non-biased and racially neutral way. That's the law in Florida.").

**76.** Undisputed on the understanding that this paragraph makes the general point that law enforcement officials have enforcement discretion.

**77.** Disputed as phrased. It is unclear what "just by looking at them" means. Undisputed insofar as this paragraph states that racial profiling is an inappropriate method to determine immigration status.

**78.** Undisputed that at least one person has reported a subjective belief that these things are occurring. Disputed that Plaintiffs have presented evidence establishing that this is occurring in a material way. *See supra*, ¶¶ 26, 27, 75; *infra*, ¶ 103.

**79.** Disputed. *See supra*, ¶¶ 26, 27, 75; *infra*, ¶ 103.

**80.** Disputed. *See supra*, ¶¶ 26, 27, 75; *infra*, ¶ 103.

**81.** Disputed. *See supra*, ¶ 13.

**82.** Disputed. *See supra*, ¶¶ 13, 32.

**83.** Disputed. *See supra*, ¶¶ 26, 27, 75; *infra*, ¶ 103.

**84.** Disputed. Employees of the Organizational Plaintiffs do not have personal knowledge of this sort of broad statistical claim.

**85.** Disputed as phrased. It is unclear what "eligible for relief and release" or "minor violations" mean. Further, employees of the Organizational Plaintiffs do not have personal knowledge to support such a broad generalization.

**86.** Disputed. *See supra*, ¶¶ 13, 26, 27, 75; *infra* ¶ 103.

**87.** Undisputed except that Defendants dispute that Plaintiffs have completely and accurately described the proposed amendments. Undisputed that the amendments cover the topics of victims and educational institutions.

**88.** Disputed as a legal conclusion. Moreover, there is no evidence that these amendments would decrease any alleged "discriminatory effect," nor do Defendants concede that such an effect exists. At most, the amendments would have decreased the effect of SB 168 in general. *See* Defendants' Resp. to Plaintiffs' MSJ, as 11.

**89.** Disputed as phrased. *See supra*, ¶ 13. Undisputed that Plaintiffs have reported confusion regarding SB 168's victim exception. Disputed that the exception is confusing.

**90.** Disputed. *See supra*, ¶¶ 26, 27, 75; *infra*, ¶ 103.

**91.** Disputed. *See supra*, ¶ 26. It is also unclear what Plaintiffs mean by "were harmed."

**92.** Disputed. *See supra*, ¶¶ 26, 27, 75; *infra*, ¶ 103.

**93.** Disputed. *See supra*, ¶¶ 26, 27, 75; *infra*, ¶ 103.

**94.** Disputed as phrased. The evidence Plaintiffs cite is vague and anecdotal. Undisputed that there are officers who disagree with SB 168 as a policy matter, including officers that Plaintiffs have spoken with.

**95.** Undisputed on the understanding that this paragraph describes one Plaintiff's understanding of the legal effect of the law, not the actual legal effect of the law.

**96.** Disputed. Plaintiffs identify no evidence that SB 168 regulates their ability to "advocate[]" for anything.

## ADDITIONAL FACTS

**97.** The Governor's Office has never received a complaint regarding racial profiling caused by SB 168. Defendants' Ex. EE, 30(b)(6) Depo. of the Executive Office of the Governor, at 20:7–9, 29:12–18.

**98.** The Attorney General's Office has never received a complaint regarding racial profiling caused by SB 168. Defendants' Ex. GG, 30(b)(6) Depo. of the Department of Legal Affairs, at 54:9–15.

**99.** Plaintiffs have never reported an instance of racial profiling caused by SB 168 to the Governor's Office. Defendants' Ex. EE, at 20:7–9, 29:12–18.

**100.** Plaintiffs have never reported an instance of racial profiling caused by SB 168 to the Attorney General's Office. Defendants' Ex. GG, at 54:9–15.

**101.** A person can report a violation of SB 168, including the anti-discrimination provision, on the Attorney General's website. Ex. GG, at 46:6–25.

**102.** Talking points prepared for Florida legislators regarding SB 168 state the following: "Q. Is this going to target just black and brown people? Are we going to have racial profiling? A. No. Florida Statute 908.402 (part 5) [now 908.109] discrimination prohibited now in constitution. Racial profiling is not acceptable and or allowed. Targeting is not allowed." Plaintiffs' Ex. 47, Brill Email, at PLS003872.

103. In their depositions, the Organizational Plaintiffs provided few, if any, specific examples of racial profiling. *See* Plaintiffs' Ex. 19, 30(b)(6) Depo. of Americans for Immigrant Justice, at 22:12–15 (stating that "a local law enforcement officer will pull someone over typically with no basis other than racial profiling," but declining to provide specific examples); Plaintiffs' Ex. 13, 30(b)(6) Depo. of the Farmworker Association of Florida, at 46:15–23 (providing one example, but without much detail, and admitting that he did not know if the arrest was caused by SB 168 or "if [it was] a coincidence); Plaintiffs' Ex. 12, 30(b)(6) Depo. of the Guatemalan Maya Center, at 36:17–18 ("I might be lying if I tried to attribute it all to 168."); Plaintiffs' Ex. 15, 30(b)(6) Depo. of the Family Action Network Movement, at 25:7–11 ("I don't have specific cases [of racial profiling] to report."); Plaintiffs' Ex. 16, 30(b)(6) Depo. of QLatinx, at 36:4–7 ("We don't have a mechanism in which members can submit these kinds of reports.").

104. One Plaintiff equated entering a cooperation agreement with the federal government with racial profiling. Plaintiffs' Ex. 14, 30(b)(6) Depo. of the Florida Immigrant Coalition, at 31:11–24.

Respectfully submitted this 15th of September, 2020.

**ASHLEY MOODY**
**ATTORNEY GENERAL**

*/s/ James H. Percival*
*James H. Percival* (FBN 1016188)
CHIEF DEPUTY SOLICITOR GENERAL
*Elizabeth Teegen* (FBN 833274)
CHIEF ASSISTANT ATTORNEY GENERAL
*Karen Brodeen* (FBN 512771)
SENIOR ASSISTANT ATTORNEY GENERAL
*Anita Patel* (FBN 70214)
SENIOR ASSISTANT ATTORNEY GENERAL
Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
james.percival@myfloridalegal.com
elizabeth.teegen@myfloridalegal.com
karen.brodeen@myfloridalegal.com
anita.patel@myfloridalegal.com

*Counsel for Attorney General Moody*

**RON DESANTIS**
**GOVERNOR**

*/s/ Colleen Ernst*
*Joe Jacquot* (FBN 189715)
GENERAL COUNSEL
*Colleen Ernst* (FBN 112903)
DEPUTY GENERAL COUNSEL
Executive Office of the Governor
The Capitol, PL-05
Tallahassee, Florida 32399-0001
Phone: (850) 717-9310
joe.jacquot@eog.myflorida.com
colleen.ernst@eog.myflorida.com

*Counsel for Governor DeSantis*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed with the Court's

CM/ECF system, which provides notice to all parties, on this 15th day of September, 2020.


/s/ *James H. Percival*
James H. Percival
CHIEF DEPUTY SOLICITOR GENERAL