IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CITY OF SOUTH MIAMI, ET AL.,

    *Plaintiffs*,

v.

                                        Civil Action File No. 1:19-cv-22927

RON DESANTIS, ET AL.,

    *Defendants*.

_____/

**PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Pursuant to this Court's Order Scheduling Trial and Order of Instructions Before Calendar Call (ECF No.152), Plaintiffs submit findings of fact and conclusions of law below.

**I.    PROPOSED FINDINGS OF FACT**

**A.    Discriminatory Intent – Historical Background and Sequence of Events Leading Up to Passage of SB 168 Involved Anti-Immigrant Groups Seeking and Securing Sponsorship for "Anti-sanctuary" and Anti-Immigrant Legislation.**

1.    Florida has a "deeply woven pattern of discrimination against minorities" that extends from Florida's history of discrimination in voting, education, housing, and law enforcement into the present legislative initiatives. *See* ECF No. 116-3 (Lichtman Report) at 23-55; ECF No. 121-1 (Bastien Dep.) at 14:1-6; ECF No. 114-12 (O'Laughlin Dep.) at 29:21-31:15.

2.    Floridians for Immigration Enforcement (FLIMEN) is a Florida corporation that "advocate[s] for legal immigration at reduced levels and oppose[s] illegal immigration," submits model bills to the Florida legislature, and works to advocate for and advance laws "ending sanctuaries" and requiring "cooperation of public officials with Federal Immigration Enforcement." *See* ECF No. 113-6 (Caulkett Dep.) at 15: 17-19, 17:14; 116-6; 116-7.

1

2. The Federation for American Immigration Reform (FAIR) is a national organization claiming it "fights for a stronger America with controlled borders, reduced immigration and better enforcement." *See* ECF No. 120-7.

3. David Caulkett founded FLIMEN and currently serves as its Vice-president; he has also served as the Florida State Advisor and on the Board of Advisors FAIR for approximately a decade; and runs a business that charges the public a fee to report suspected undocumented persons to immigration authorities. *See* ECF No. 113-6.

4. FAIR, FLIMEN, and the Center for Immigration Studies (CIS) are known to have anti-immigrant and xenophobic missions. See ECF Nos. 116-6; 116-9; 120-7; see also ECF No. 112 at pp. 4 n.1-2, 7 n.3, 8 n.4; ECF No. 116-3 (Lichtman Rep.) at pp. 11-13, 91-92, 92 n.129, n.131, 133-153.

5. Senate Bill 872 (2016) ("SB 872") was filed by Florida Senator Aaron Bean with the Florida Legislature on November 17, 2015, for consideration during the 2016 Legislative Session, but his bill died in committee on March 11, 2016. In December 2016, FLIMEN sought Sen. Bean's sponsorship to file an "anti-sanctuary" bill in the Florida legislature and shared model legislation with him, confirmed by Mr. Caulkett to be similar to SB 168, but the bill did not pass. *See* ECF Nos. 120-1; 116-8; 113-6 (Caulkett Dep.) at 60: 2-16.

6. FLIMEN admits to being in operation since 2003, having members serve as FAIR Advisors for "eight years, ten years" and documents their legislative activism since at least 2004 on their website. *See* ECF No. 113-6 at 15:2, 18:20-22.

7. FAIR boasts of FLIMEN's work around legislation "preempting local sanctuary polices" as far back as 2008 in the publicly available newsletters on their website archive. *See* Pls.' Resp. to Defs.' Statement of Facts, Ex. 2, 3.

8. FLIMEN met and corresponded with various state officials and legislators to request assistance in promoting and advocating for SB 168 prior to and during the legislative process, including the Executive Office of the Governor, and the Attorney General's Office. *See* ECF No. 116-16; ECF No. 117-1; ECF No. 113-6 (Caulkett Dep.) at 74:3-16; ECF No. 116-8; ECF No. 116-13; ECF No. 116-14; ECF No. 119-2; ECF No. 119-3; ECF No. 115-3, (Olson Dep.) at 24:8-22; ECF No. 120-2, (DeCerchio Dep.) at 31:4-25, 32:1-4; ECF No. 113-6, (Caulkett Dep.) at 37:5-9; 120-6.

9. FLIMEN and Mr. Caulkett also facilitated communication with officials and legislators regarding support for and substantive edits of SB 168, including Sen. Gruters, Rep. Byrd, and their respective offices. *See* ECF Nos. 116-13; 120-6.

10. In January 2019, FLIMEN representatives had meetings and frequent communication with Senators Gruters and Byrd to sponsor, support, advocate for, and edit bills FLIMEN wanted to promote in the Florida legislature. *See* ECF Nos. 113-6, (Caulkett Dep.) at 43-46:1-24; 116-13; 116-17; 117-1; 114-43; 116-15; No. 116-16; 120-6.

11. On March 5, 2019, Sen. Gruters, and co-introducers Senators Bean, Mayfield, Broxson, and Albritton, introduced Senate Bill 168 ("SB 168"). *SB 168: Federal Immigration Enforcement*, The Florida Senate (June 17, 2019), available at https://www.flsenate.gov/Session/Bill/2019/00168.

12. Representative Byrd introduced SB 168's companion bill, House Bill 527 (HB 527) on March 5, 2019. *HB 527: Federal Immigration Enforcement*, The Florida Senate (July 1, 2019), available at https://www.flsenate.gov/Session/Bill/2019/527.

**B.     Discriminatory Intent: Deviation from the Regular Legislative Process and Contemporary Statements and Actions of Key Legislators**

13.     In February 2019, Sen. Gruters' office prepared Representative Metz, Sen. Bean, and Judiciary Chair Sen. Simmons for a judiciary hearing on SB 168 using staff analysis citing to data from FAIR and CIS. *See* ECF No. 120-1.

14.     On March 12, 2019 Senator Cruz confronted Sen. Gruters with information that FAIR and CIS were designated hate groups during a senate committee hearing, asking how and why their data had been included in the judicial staff analysis. *See* Senate Committee Meeting at 1:27:48, March 12, 2019, available at http://www.flsenate.gov/media/VideoPlayer?EventID=2443575804_2019031164&Redirect=true (Statements by Sen. Cruz and Sen. Gruters at 1:27:48 min).

15.     On February 19, 2019, FLIMEN representatives communicated with Mr. Barnhill regarding amendments proposed by Sen. Annette Taddeo to minimize SB 168's discriminatory impact, referring to the amendments as "hostile." *See* ECF No. 116-14.

16.     Upon signing SB 168 into law on June 14, 2019, Governor Ron DeSantis made the following statement: "This is about public safety, not about politics. We must do everything within our power, and use all the tools available to us, to ensure that our communities are safe." *See* Gov. DeSantis Staff, *Governor Ron DeSantis Signs SB 168: Federal Immigration Enforcement*, News Releases (June 14, 2019), available at https://flgov.com/2019/06/14/governor-ron-desantis-signs-sb-168-federal-immigration-enforcement/.

17.     An analysis of FAIR's publication that included a list of Florida "sanctuary" jurisdictions shows that those localities experienced an 8.6% reduction in the average county crime rate in 2018 compared to other Florida localities, that there is no statistically discernable difference

4

in crime rates in cities that adopted sanctuary policies, and that crime in Florida has fallen steadily from 2000 to 2018. *See* ECF No. 116-3 (Lichtman Report) at pp. 15, 120, 191-193; 119-1; 120-5.

18. Mr. Caulkett sent this same FAIR publication to Mr. Barnhill on January 23, 2019, who forward it to Sen. Gruters' personal email address, which was then forward from Sen. Gruters' personal email to his Florida Senate email account on February 2, 2019. Florida Senate Judiciary Chair Sen. Simmons received the publication from Sen. Gruters' the same day. *See* ECF Nos. 117-1; 118-1; 119-1.

19. Talking points for a judiciary hearing on SB 168 listed the anticipated questions and answers: Question - "Has there been data about crime because of undocumented immigrants?" Proposed Answer - "It does not matter because either way they are illegal" Question- "What is the actual problem we are trying to resolve?" Proposed Answer - "Nationally, there is an abundance of illegal aliens." *See* ECF No. 120-1.

20. In April 2019, FLIMEN and Rep. Byrd planned and co-hosted a press conference entitled "Victims of Illegal Immigration Day," to support SB 168, HB 527. *See* ECF No. 38-7. Sen. Gruters and Yvonne Larsen of the Remembrance Project, an organization known to "falsely preac[h] that undocumented immigrants are violent and dangerous," spoke at the press conference. See *Id; see also* Jerry Iannelli, *After Complaints About Hate-Group Ties, Florida GOP Chair Held Event With More Extremists,* Miami New Times (Apr. 24, 2019).

21. Florida legislators rejected over twenty amendments, including Senator Taddeo's proposed amendments that would have reduced SB 168's discriminatory effect. *See* ECF Nos. 116-3, Lichtman Report, pp. 162, 174-181, 216-7; *see also* 120-2; 120-3; 120-4; 116-14.

22. On May 2, 2019, the Florida Legislature passed SB 168 and signed into law on June 14, 2019 by Florida Governor Ron DeSantis, enacted as Chapter 908 of the Florida Statutes. The law went into effect on July 1, 2019 *See* ECF Nos. 90 at ¶ 1, 91 at ¶ 1.

**C.      The Foreseeable Discriminatory Impact of SB 168**

23. Plaintiffs are non-profit organizations throughout Florida whose missions are to empower and protect the rights of immigrant communities through their programming, services, and advocacy. *See* ECF Nos. 114-12 (O'Laughlin Dep.) at 21:6-11; 114-13 (Tovar Dep.) at 15:25-18; 113-4 (Pichardo-Cruz Dep.) at 29:7-10; 113-2 (Green Dep.) at 7:17-23, 8:1-8, 8:12-14, 9:13-15, 12:4-6.

24. Plaintiffs diverted resources after Chapter 908 went into effect in order to address increased requests for assistance due to fear and anticipated targeting by law enforcement that would lead to unnecessary immigration detention. *Id.*

25. Florida immigrants report increased intimidation and targeting by police during routine daily activities since Chapter 908 went into effect. *See* ECF Nos. 113-4 (Pichardo-Cruz Dep.) at 22:4-11, 23:10-19; 21-25, 24:1-4; 24:7-20; 25:1-2; 131-16; 121-2, (Cuevas Dep.) at 18:17-23, 23:10-18; 131-13; 114-13 (Tovar Dep.) at 19:2-12, 38:7-25, 39:1-7; 113-3 (Ortiz Dep.) at 23:17-24, 24:1-10, 33:14-22; 114-12 (O'Laughlin Dep.) at 24:3-12, 40:2-16, 41:4-16; 121-1 (Bastien Dep.) at 25:10-20, 26:3-9, 43:16-19; 114-14 (Rodriguez Dep.) at 27:19-21, 32:8-13. There has been a corresponding increase in detainees who are eligible for immigration relief who would not have been detained prior to SB 168. *See* ECF No. 113-3 (Ortiz Dep.) at 23:17-24, 24:1-10, 33:14-22; 131-12.

26. Since Chapter 908 was enacted, more U.S. citizen drivers have been stopped by law enforcement officers without a citation that resulted in undocumented vehicle passengers

6

being sent to ICE detention. *See* ECF Nos. 113-3, Ortiz Dep. 23:17-24, 30:19-23, 31:3-10; 114-14, Rodriguez Dep. 29:1-12; 113-1, Londoño Dep. 40:8-15. More people in federal immigration detention in Florida were stopped by law enforcement and charged only with driving without a license or an expired license. *See id.*

27. ICE has been called to the scene of a traffic stop by local law enforcement without an arrest or citation more often since Chapter 908 was enacted. *See* ECF No. 114-13 (Tovar Dep.) at 45:8-19; 114-14, (Rodriguez Dep.) at 28:8-18.

28. Since Chapter 908 passed, SB 168's victim exemption has led to the deterioration of partnerships between local law enforcement, immigrant communities, and advocates, and immigrants in Florida are more fearful of accessing healthcare, including going to the hospital, seeking help regarding domestic violence, trafficking, and other crimes out of fear of being reported to ICE. *See* ECF Nos. 116-3 (Lichtman Report) at pp. 96-97,162, 177-180, 216; 113-3 (Ortiz Dep.) at 17:16-23, 18:19-25, 20:22-25, 21:1-7, 33:6-11. 90; 114-14 (Rodriguez Dep.) at 27:25; 28:1; 121-2 (Cuevas Dep.) at 7-18, 26: 12-25, 27: 1-11, 12-25, 28: 1; 5- 11 ¶13; 131-19.

29. This deterioration of trust and increased fear of government and state entities harms immigrant communities, reduces public safety, and has led to hate crimes against immigrant communities. *See* ECF No. 113-3 (Ortiz Dep.) at 16:19-19:8; 37:23-38:11; ECF No. 114-12 (O'Laughlin Dep.) at 40:2-41:16; ECF No. 114-4 (Rodriguez Dep.) at 17: 15-25; 18:1; 28:2-7.

**D. SB 168 Transportation Clause**
**E.**

30. On September 9, 2019, this court preliminarily enjoined the Transport Requirement in § 908.104(4), Florida Statutes, finding that this section is conflict preempted. ECF No. 64 at 44-45 ("Therefore, the Court concludes that the Transport Requirement is conflict preempted because it frustrates the purpose of 1357(g)(1)"); ECF No. 83 at 28 ("Therefore, the Court concludes

Plaintiffs have sufficiently alleged facts to state a claim that the Transport Requirement is conflict preempted because it frustrates the purpose of § 1357(g)(1)"). No additional factual disputes or case law has arisen since September 9, 2019 that changes this result.

## II. PROPOSED CONCLUSIONS OF LAW

### A. Standing

31. Plaintiffs have Article III standing to bring the claims in this action because (1) they suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) their injuries are fairly traceable to conduct of the defendant; and (3) it is likely that the injury will be redressed by a favorable decision. *Kelly v. Harris*, 331 F.3d 817, 819-20 (11th Cir. 2003); *see also Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 980 (11th Cir. 2005).

### B. Equal Protection

32. The Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution provides that no "State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1.

33. The purpose of the Equal Protection Clause is to prevent states from purposefully discriminating between individuals on the basis of race. *Shaw v. Reno*, 509 U.S. 630, 642 (1993) (citing *Washington v. Davis*, 426 U.S. 229, 239 (1976).

34. Plaintiffs are required to show proof of racially discriminatory intent or purpose behind Florida Senate Bill 168, enacted as Chapter 908 of the Florida Statutes. *Vill. Of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977) (citing *Davis*, 426 U.S. 229).

35. A facially-neutral statute is unconstitutional when enacted to further unlawful discrimination in violation of the fourteenth amendment of the U.S. Constitution when (a)

8

discrimination was a substantial or motivating factor and (b) the government cannot show it would have been enacted absent such motive. *Young Apartments, Inc. v. Town of Jupiter*, Fla. 529 F.3d 1027 (11th Cir. 2008); *Hunter v. Underwood*, 471 U.S. 222 (1985).

36. Relevant evidence of intent to discriminate and actual discriminatory intent include: (1) impact of the challenged law; (2) historical background; (3) specific sequence of events leading up to its passage; (4) procedural and substantive departures; (5) contemporary statements and actions of key legislators; (6) foreseeability of disparate impact; (7) knowledge of the impact; and (8) availability of less discriminatory alternatives. *Arlington Heights v. Metro Hous. Dev. Corp.*, 429 U.S. 252, 267-68 (1977); *Greater Birmingham Ministries v. Sec'y of Stat for Ala.*, 966 F.3d 1202.

37. In this case, the Plaintiffs have demonstrated that xenophobic lobbying groups sought for years to introduce and pass legislation like Chapter 908 in Florida to serve their anti-immigrant agenda and were directly managing sponsors' proposal and drafting of the bill up until SB 168 was passed. *See Sailboat Bend Sober Living v. City of Ft. Lauderdale*, 2020 WL 4736211 (S.D. Fla. 2020). Such actions leading up to the passing of SB 168 and the regular coordination and communication with legislative staff is a departure from normal legislative procedures. *Arlington Heights*, 429 U.S. at 564.

38. Numerous contemporaneous statements by legislators regarding their intent to supplant and correct perceived failures of federal immigration law by giving local law enforcement agencies license to engage in immigration enforcement activities combined with statements that undermine the public safety rationale. This context provides the driving legislative purpose of discrimination rather than public safety. *Edwards v. Aguillard,* 482 U.S. at 594 (1987).

39. Historical background is an additional evidentiary source. *Vill. of Arlington Heights,* 429 U.S. at 267. Florida has a history of racial discrimination in numerous areas. *United States v. Marengo County Comm'n,* 731 F.2d 1546, 1567 (11th Cir. 1984); *Johnson v. Mortham*, 926 F. Supp. 1460, 1476–77 (N.D. Fla. 1996); *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 575 (1993); *Nipper v. Chiles*, 795 F. Supp. 1525, 1544 (M.D. Fla. 1992); *McMillan v. Escambia Cnty, Fla.,* 748 F.2d 1037, 1044 (5th Cir. 1984); *Johnson v. De Grandy*, 512 U.S. 997, 1013 (1994).

40. With this background, SB 168's historical context provides relevant evidence of intentional discrimination. *Miccosukee Tribe of Indians of Fla. v. United States*, 722 F. Supp.2d 1293, 1304, *aff'd*, 716 F.3d 535 (11th Cir. 2013); *Baker v. City of Kissimmee, Fla.*, 645 F.Supp.571, 587-588 (M.D. Fla. 1986).

41. Proof that discriminatory impact is the reasonably foreseeable consequence of the challenged action supports a finding that legislation was passed with a discriminatory purpose. *See Baker*, 645 F.Supp. at 587 (*citing Columbus Bd. of Ed. v. Penick*, 443 U.S. 449, 464–65, 99 (1979); *United States v. Texas Ed. Agency*, 564 F.2d 162, 168 (5th Cir.1977), cert. den., 443 U.S. 915 (1979).

42. Section 908.104(1) of the Florida Statutes requires law enforcement agencies to use their best efforts to support the enforcement of federal immigration law. There is no definition of "best efforts" in Chapter 908.

43. Florida Statute § 908.102's prohibition of sanctuary policies at a time when none existed, except according to the biased FAIR and CIS data, reflects that a discriminatory purpose "at least in some measure, shaped" SB 168. *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 276 (1979).

44. The anticipated and intended discretion afforded to local law enforcement agencies to determine when and how to use their "best efforts" to support the enforcement of federal immigration law has resulted in more immigrants of color experiencing intimidation and targeting by law enforcement during routine daily activities without any visible method of identifying an individual's immigration status. The public safety intent given by legislators has not had a similar impact on safety. Therefore, the data and reported incidents reflecting the prejudice against immigrants based on their color and national origin support a finding that SB 168 is unlawful due to its of discriminatory motives. *See, e.g., Adams v. Wainwright*, 709 F.2d 1443, 1449 (11th Cir. 1983); *see also Baker*, 645 F.Supp. 571 at 587; *see also Williams v. City of Dothan, Ala.* 745 F.2d 1406 (11th Cir. 1984) (citing *Columbus Bd. of Ed.,* 443 U.S. at 464.).

45. Because the fact that immigrants in Florida are more fearful of going to the hospital, seeking life-sustaining medication, driving, taking their children to school, and seeking assistance as a victim of domestic violence, trafficking, or crime out of fear of racial profiling by law enforcement that could result in detention or deportation has gone "uncontradicted" and "unqualified," these facts support the conclusion that SB 168 was enacted with discriminatory purpose. *Shaw v. Reno*, 509 U.S. at 645.

**C. Transportation Clause**

46. 8 U.S.C. § 1357(g)(1) allows for delegation of federal immigration agents' function to transport "aliens across state lines to detention centers" only through 287(g) Agreements. § 1357(g)(1) expressly lists transport across state lines as a power that can only be delegated to local officers pursuant to a 287(g).

47. Where possible, courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another.'" (*quoting Forsythe v. Longboat Key*

*Beach Erosion Control Dist.*, 604 So. 2d 452, 455 (Fla. 1992))). The Supremacy Clause mandates that federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, § 2.

48. Section 908.104(4) of the Florida Statutes permits local law enforcement agencies to transport individuals subject to an immigration detainer outside of their jurisdiction and across state lines.

49. Section 908.104(4) is conflict preempted because it frustrates the purpose of 1357(g)(1) by explicitly granting local law enforcement the discretionary power to transport aliens into federal custody "absent any request, approval, or other instruction from the Federal Government." *Arizona v. United States*, 567 U.S. 387, 410 (2012). Such unilateral conduct was expressly prohibited by the U.S. Supreme Court's *Arizona* opinion and can only be delegated to local officers pursuant to a 287(g) Agreement. *Id*.

Dated: December 7, 2020

Respectfully submitted,

By: /s/  Anne Janet Hernandez Anderson
Anne Janet Hernandez Anderson
(Fla. Bar No. 0018092)
E-mail: aj.hernandez@splcenter.org
Paul R. Chavez*
E-mail: paul.chavez@splcenter.org
Mich Gonzalez*
E-mail: mich.gonzalez@splcenter.org
Victoria Mesa-Estrada
(Fla. Bar No. 76569)
E-mail: victoria.mesa@splcenter.org
SOUTHERN POVERTY LAW CENTER
P.O. Box 12463
Miami, Florida 33101
Telephone: (786) 810-5673

Alana Greer (Fla. Bar No. 92423)
Email: alana@communityjusticeproject.com
Miriam Haskell (Fla. Bar No. 069033)
E-mail: miriam@communityjusticeproject.com
COMMUNITY JUSTICE PROJECT, INC.
3000 Biscayne Blvd. Suite 106
Miami, Florida 33145
Tel.: (305) 907-7697 ext. 1
*Counsel for Plaintiffs*

Fax: (786) 237-2949

Rebecca Sharpless (Fla. Bar No. 0131024)
E-mail: rsharpless@law.miami.edu
IMMIGRATION CLINIC UNIVERSITY OF
MIAMI SCHOOL OF LAW
1311 Miller Drive, E273
Coral Gables, FL 33146
Tel.: (305) 284-6092
Fax: (305) 284-6093

* Admitted pro hac vice

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the U.S. District Court for the Southern District of Florida's electronic filing system on December 7, 2020, on counsel for Defendants listed in the attached service list.

Dated: December 7, 2020

/s/   Anne Janet Hernandez Anderson

## **SERVICE LIST**

James H. Percival
Email: James.Percival@myfloridalegal.com
Colleen M. Ernst
Email: Colleen.ernst@eog.myflorida.com
Karen Brodeen
Email: karen.brodeen@myfloridalegal.com
Anita J. Patel
Email: Anita.Patel@myfloridalegal.com
OFFICE OF THE GENERAL COUNSEL
The Capitol, Suite 203
Tallahassee, Florida 32399-1050
Telephone: (850) 717-9310
*Counsel for Defendant Governor Ron DeSantis*

Elizabeth Teegen
Email: Elizabeth.Teegen@myfloridalegal.com; complexlitigation.eservice@myfloridalegal.com
James H. Percival
Email: James.Percival@myfloridalegal.com
Karen Brodeen
Email: karen.brodeen@myfloridalegal.com
Anita J. Patel
Email: Anita.Patel@myfloridalegal.com
OFFICE OF THE ATTORNEY GENERAL
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3300
Fax: (850) 410-2672
*Counsel for Defendant Attorney General Ashley Moody*